1

**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)

2

Sarah N. Westcot (State Bar No. 264916)
Annick M. Persinger (State Bar No. 272996)

3

Julia A. Luster (State Bar No. 295031)

4

1990 North California Blvd., Suite 940
Walnut Creek, CA 94596

5

Telephone: (925) 300-4455
Facsimile: (925) 407-2700

6

E-Mail:  ltfisher@bursor.com

7

swestcot@bursor.com
apersinger@bursor.com

8

jluster@bursor.com

9

*Counsel for Plaintiff*

10

11

**UNITED STATES DISTRICT COURT**

12

**EASTERN DISTRICT OF CALIFORNIA**

13

YESENIA MELGAR, on Behalf of Herself and
all Others Similarly Situated,

14

15

Plaintiff,

16

v.

17

ZICAM LLC and MATRIXX INITIATIVES,
INC.

18

Defendants.

Case No.

**CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT

Plaintiff Yesenia Melgar ("Plaintiff"), by her attorneys, makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF ACTION

1.     This is a class action against Zicam LLC and Matrixx Initiatives, Inc. (collectively "Defendants") for falsely representing that the over-the-counter ("OTC") homeopathic remedy Zicam, "The Pre-Cold Medicine," prevents, shortens, and reduces the severity of the symptoms of the common cold.  The Pre-Cold Medicine includes Zicam Pre-Cold RapidMelts Original, Zicam Pre-Cold RapidMelts Ultra, Zicam Pre-Cold Oral Mist, Zicam Pre-Cold Ultra Crystals, Zicam Pre-Cold Lozenges, Zicam Pre-Cold Lozenges Ultra, and Zicam Pre-Cold Chewables ("Pre-Cold Medicine," "Pre-Cold Products," or "Products").

2.     Defendants falsely represent on Pre-Cold Medicine product labels and in their nationwide advertising campaign that Zicam is "clinically proven to shorten cold," "reduces duration and severity of the common cold," and "reduces severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion."   According to the sales pitch: "That first sniffle, sneeze or throat tickle…you have a Pre-Cold™, the first sign a full blown cold is coming. Take Zicam® now – clinically proven to shorten a cold.  GO FROM PRE-COLD™ TO NO COLD FASTER™."  In fact, Zicam Pre-Cold Products have only highly diluted concentrations of the Products' so-called "active ingredients" and are nothing more than placebos.

3.     The dilution of the ingredients, zincum aceticum and zincum gluconicum, in Defendants' Pre-Cold Medicine renders those ingredients completely inactive.  Since the ingredients in the Pre-Cold Products have no pharmacological effect, the Products do not prevent the common cold, are not "clinically shown to shorten cold," do not "reduce[] duration of the common cold," and do not "reduce[] severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion."

4.    As a direct and proximate result of Defendants' false and misleading advertising claims and marketing practices, Plaintiff and the members of the Class, as defined herein, purchased Defendants' ineffective Products.  Plaintiff and the members of the Class purchased the Pre-Cold Products because they were deceived into believing that the Products prevent, shorten, and reduce the severity of the common cold.  As a result, Plaintiff and members of the Class purchased Zicam Pre-Cold Products that were not effective and have been injured in fact.  Plaintiff and the Class Members have suffered an ascertainable and out-of-pocket loss.  Plaintiff and members of the Class seek a refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

5.    Plaintiff seeks relief in this action individually and on behalf of all purchasers of Zicam Pre-Cold Products for violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, for breach of express and implied warranties, as well as for violation of the California Consumer Legal Remedies Act ("CLRA"), Civil Code §§ 1750, *et seq.*, California's Unfair Competition Law ("UCL"), Bus. & Prof. Code §§ 17200, *et seq.*, and California's False Advertising Law ("FAL"), Bus. & Prof. Code §§ 17500, *et seq.*

## THE PARTIES

6.    Plaintiff Yesenia Melgar is a California citizen.

7.    Zicam LLC is an Arizona Limited Liability Corporation with its principal place of business at 8515 E. Anderson Drive, Scottsdale, AZ 85255.  Zicam LLC is engaged in the business of manufacturing, mass marketing, and distributing homeopathic formulas, including the Pre-Cold Medicine, under the Zicam brand name.  Zicam LLC is a wholly owned subsidiary of Defendant Matrixx Initiatives, Inc.

8.    Matrixx Initiatives, Inc. is a privately held corporation organized under the laws of Delaware with its principal place of business located at 440 Rte. 22 East, 1 Grande Commons, Suite 130, Bridgewater, New Jersey, 08807.  Matrixx Initiatives, Inc. is engaged in the business of manufacturing, mass marketing, and distributing homeopathic formulas, including the Pre-Cold Medicine, under the Zicam brand name.  Every Pre-Cold Product package states "©2012

Distributed by Matrixx Initiatives, Inc."  Also, Matrixx Initiatives, Inc.'s website maintains that Matrixx Initiatives, Inc. has "continuously developed and introduced Zicam cold shortening and symptom-relieving products to the $6 billion cough/cold/allergy/sinus category."

9.     Defendants produce, market, and sell homeopathic products throughout the United States.  Defendants have long maintained substantial distribution and marketing operations in California, and in this District.

10.    Both of the Defendants acted jointly to perpetrate the acts described herein.  At all times relevant to the allegations in this matter, each Defendant acted in concert with, with the knowledge and approval of, and/or as the agent of the other Defendant within the course and scope of the agency, regarding the acts and omissions alleged.

## JURISDICTION AND VENUE

11.    This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question). This Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

12.    This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members, the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one Class Member is a citizen of a state different from at least one Defendant.

13.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do business throughout this District, Plaintiff purchased Zicam in this District, and the Products that are the subject of the present Complaint are sold extensively in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**A.     The Homeopathic Formulation Of Zicam "The Pre-Cold Medicine"**

14.    All of the Pre-Cold Products contain homeopathic dilutions of zincum aceticum ("zinc acetate") and zincum gluconicum ("zinc gluconate").

15.    Zicam Pre-Cold RapidMelts, Zicam Pre-Cold Rapid Melts Ultra, Zicam Pre-Cold Oral Mist, and Zicam Pre-Cold Crystals list zinc gluconate at a 1X dilution, which means that zinc

gluconate is diluted in water to a ratio of 1 to 10, or 1/10th its original strength.  Zinc acetate is listed at a 2X dilution, which means it is diluted in water to a ratio of 1 to 100, or 1/100th of its original strength.

16.     Zicam Pre-Cold "Liqui-Loz," Zicam Pre-Cold "Liqui-Loz," and Zicam Pre-Cold Chewables list both zinc acetate and zinc gluconate at a 2X dilution, meaning that the ingredients have been diluted in water to a ratio of 1 to 100, or 1/100th of the ingredients' original strength.

**B.     Zicam's False And Misleading Labels**

17.     On its Pre-Cold Product labels, depicted below, Defendants make numerous false and misleading marketing claims about the Products.  Every Pre-Cold Product label bears the misleading trademarked tagline: "GO FROM PRE-COLD™ TO NO COLD FASTER™."  The message to consumers is clear: Zicam prevents colds.

 

18.     The prefix "Pre" means "before."  Accordingly, the trademarked phrase "Pre-Cold" denotes *before*-Cold.  Indeed, the Products' labels define "Pre-Cold™" as "That first sniffle, sneeze or throat tickle…you have a Pre-Cold,™ the first sign a full blown cold is coming."  Thus,

consumers are told that with Zicam Pre-Cold, they will stop a cold before it starts, and will get "NO COLD."  However, Defendants' message is false and misleading.



19.     On the Product labels, Defendants also tell consumers to "Take Zicam® now – **clinically proven** to shorten a cold."  (emphasis added).  The Product labels further represent that the Pre-Cold Products "reduce[] the duration of a cold" or "shorten a cold." [1]  In fact, as discussed more fully below, Defendants' so-called "clinical proof" actually demonstrates that the diluted ingredients in Zicam *will not* shorten a cold.

20.     All of the Pre-Cold Product labels also represent that the Pre-Cold Medicine "reduces severity of cold symptoms:  ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion."  This claim is likewise provably false.

---

[1] *See* Find Your Zicam: Cold Remedy Products, http://www.zicam.com/our_products/ (including photos of the front packaging of each of the Pre-Cold Products and the Drug Facts contained on the back of the products).

21.     All of Defendants' labeling claims are false and misleading, because the Pre-Cold Products are nothing more than placebos.

22.     Defendants deliberately and intentionally made uniform false labeling claims about the Products.  Defendants spent a significant amount of time, thought, and money developing and implementing its marketing strategy to create a unified, homogenous look for its Pre-Cold Products.  Matrixx Initiatives partnered with design firm Beardwood&Co to design the packaging for Zicam products.  Julia Beardwood, a principal at Beardwood&Co, explained, "[Zicam] helped define [the pre-cold] segment… But to be successful, we had to help consumers quickly sort through this myriad of products in the cold aisle and understand what Zicam is and when to take it."  For example, "[t]o help educate consumers," the Zicam packaging was re-designed to feature a "Pre-Cold seal in the shape of a bulls-eye."  This serves as a "unifying element that communicates preparedness and reassurance."  Prominently displayed, directly below this is the "benefit statement: 'Reduces the Duration of a Cold.'"[2]

---

[2] *See* Michael Johnsen, "Matrixx Initiatives gives Zicam a makeover with design firm Beardwood&co," DRUG STORE NEWS (Feb. 22, 2013), http://www.drugstorenews.com/article/matrixx-initiatives-gives-zicam-makeover-design-firm-beardwoodco (last visited Jan. 6, 2014).

23.     Senior Vice President of Marketing at Zicam LLC, Leslie Malloy, also expressed that Pre-Cold seal is a "big advantage" for Defendants, she said, "It positions us as leaders in this category with a strong central unifying element that has badge value for consumers and empowers them to do something when they feel the first signs of a cold."  Defendants extended the Pre-Cold seal into all its marketing platforms, including online and in-store displays.  This indicates Zicam is well-aware that consumers rely on the representations asserted on product packaging when considering a cold product.[3]

## C.     Zicam's False And Misleading Television Commercials Featuring The "Cold Monster"

24.     Beginning in 2012, Defendants started running a series of commercials introducing the "Cold Monster," a "monster version of a cold personified."[4]  Defendants' Cold Monster commercials air on network and cable television nationwide.  In fact, Zicam maintains a YouTube channel consisting of Zicam Pre-Cold Product and "Cold Monster" Commercials.  Stills from the "Cold Monster" commercial are incorporated below.

25.     As shown below, the "Cold Monster" commercial depicts a consumer *preventing* the common cold by taking a Zicam Pre-Cold product "at the first sign of cold."

---

[3] *Id.*

[4] *Id.  See also* Allison Schiff, "Common Cold, Uncommon Marketing," DIRECT MARKETING NEWS (Jan.9, 2013), http://www.dmnews.com/common-cold-uncommon-marketing/article/275311/ (last visited Jan. 3, 2014).

26.     The commercial begins with a woman walking out of a building on an overcast day onto a crowded sidewalk.



27.     As she walks, she is interrupted by a sneeze, and a voiceover says, "That first sneeze, you have a pre-cold."



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

28.      The "Cold Monster," dripping in phlegm with blood-shot eyes, comes into the frame.  The "Cold Monster" exhibits signs of the common cold and wipes his nose with his hand as he sneezes, spewing phlegm and snot.



29.     The consumer looks back in terror as the "Cold Monster" begins to chase after her, and the voiceover says, "The first sign of full-blown cold is coming."





30.     As the consumer starts to run, the "Cold Monster" grabs for her arm.



31.     She narrowly escapes his grasp and runs into a dark, wet alley.



32.     The "Cold Monster" is close behind, and the music starts to crescendo as the "Cold Monster" corners her.



33.     There is a close up shot of the "Cold Monster," again exhibiting the external signs of the common cold: red eyes and dripping red nose.  The camera zooms in as he reaches for her.



34.     She pulls out her Zicam Pre-Cold Product, and the voiceover says, "Take Zicam now - the completely different kind of medicine that's clinically shown to shorten a cold."



35.     Its red eyes clearly visible, the "Cold Monster" fearfully backtracks into the street at the mere presence of the product.



36.     As she prepares to take the Pre-Cold Product, the "Cold Monster" is hit by a Zicam truck.



37.     Looking healthy with a bright complexion and a smile, she watches as the "Cold Monster" is taken away.  Notably, she is never "caught" by the "Cold Monster" and does not become ill.  Instead, she goes from "pre-cold" to "no cold" *without ever experiencing a cold*.



1
2
3
4
5
6
7
8
9
10
11
12



13      38.      The ad concludes, "Zicam: GO FROM **PRE-COLD**® TO **NO COLD**
14  FASTER™."
15
16
17
18
19
20
21
22



23
24
25
26
27
28

39.     The commercial explicitly portrays a consumer preventing her cold by taking Zicam Pre-Cold Products.  Although she exhibits signs of a "pre-cold," *one* sneeze at the start of the commercial, she encapsulates the most reasonable interpretation of the commercials tagline: she goes from pre-cold to no cold without experiencing illness.

40.     The representations in the Zicam commercial are false and misleading.  Zicam Pre-Cold products do not prevent the common cold as depicted in the commercial.  Furthermore, studies demonstrate that homeopathic drugs are no better than a placebo.  Thus, the Pre-Cold Products do not prevent, shorten, or reduce the severity of cold symptoms.

41.     Again, Defendants recognize the importance of marketing in capturing customer attention and creating customer reliance in the highly competitive OTC market.  In fact, Zicam was featured in a Direct Marketing News article entitled "Common Cold, Uncommon Marketing."[5] The article discusses Defendants' use of the "Cold Monster," a "monster version of a cold personified."  Using the "Cold Monster," Zicam engages in an aggressive marketing campaign integrated in mobile, social, print, and TV advertisements.  The CEO of Matrixx Initiatives, Inc. stated the goal of the marketing campaign is to "more engagingly" bring the brand's "promise" to life: the false and misleading claim that Zicam is clinically proven to reduce the duration of a cold when taken within the first 24 hours of feeling signs of a cold.[6]

42.     As part of its savvy marketing campaign to "own the 'pre-cold' category" of products, Defendants also redesigned and re-launched their website in August 2012 to include the "Cold Monster."[7]  This garnered significant traffic increases, resulting in page view increases of up

[5] Allison Schiff, "Common Cold, Uncommon Marketing," DIRECT MARKETING NEWS (Jan. 9, 2013), http://www.dmnews.com/common-cold-uncommon-marketing/article/275311/ (last visited Jan. 3, 2014).

[6] *See id.  See also* Andrew McCains, "Zicam Breaks Out the Achy Cold Monster," ADWEEK.COM (Oct. 8, 2012), http://www.adweek.com/news/advertising-branding/zicam-breaks-out-achy-cold-monster-144295 (last visited Dec. 30, 2013).

[7] Tanya Irwin, "Zicam Relaunches Website," MEDIAPOSTNEWS.com, http://www.mediapost.com/publications/article/185391/zicam-relaunches-web-site.html (last visited Dec. 30, 2013).

to 66%.  This also marked the introduction of Zicam's current tagline: "GO FROM PRE-COLD®

TO NO COLD FASTER™."

**D.**    **Homeopathy Is A Pseudoscience**

43.    Homeopathy is based on magical "principles."  Under the homeopathic "principle"

of "ultra-dilution," the more a substance is diluted, the more potent that substance supposedly

becomes at treating the symptom.  "Ultra-dilution" is accomplished by shaking the solutions,

termed "succussion."[8]

44.    To produce homeopathic remedies, homeopaths use a process called

"dynamisation," "potentisation," or "ultra-dilution."  In that process, a substance is diluted with

alcohol or, more commonly, distilled water.  Defendants use the decimal scale to describe the

dilution ratio of its "active ingredients."  Under the decimal scale, the active substance is diluted by

a factor of 10 at each stage and is expressed as #D or #X.  Dilution often continues until none of

the original substance remains.  For example, in Zicam Pre-Cold RapidMelts, the product contains

a 2X dilution of zinc acetate and a 1X solution of zinc gluconate.  This means the zinc acetate is

diluted to 1/100th of its original strength, and the zinc gluconate is diluted to 1/10th its original

strength.

45.    Homeopathic theory dictates that following each dilution, homeopathic remedies are

vigorously shaken by ten hard strikes against an elastic body.  Homeopaths term this process

---

[8] The other homeopathic "principle," not applicable here, is termed "Like-Cures-Like" or the "Law of Similars."  Under the "Like-Cures-Like" principle, a substance that *causes* symptoms to manifest in large doses will treat those same symptoms when administered in a diluted form. Adherents of homeopathy claim that homeopathy works by stimulating the body's healing mechanisms.  *See* House of Commons, Science and Technology Committee, Evidence Check 2: Homeopathy, Fourth Report, 2009-10, HC 45, ¶ 9 (U.K.).  Traditionally, homeopathy uses many animal, plant, mineral, chemical, and poisonous substances in its remedies.  Examples of substances used by homeopaths to prepare their remedies include arsenicum album (arsenic oxide), natrum muriaticum (sodium chloride or table salt), lachesis muta (the venom of the bushmaster snake), opium, and thyroidinum (thyroid hormone).

"succussion."  Each dilution followed by succussion is assumed to increase the effectiveness of the remedy.  Homeopaths call this process of ultra-dilution and succussion "potentization."

46.     Modern science refutes these principles.  The homeopathic contention that decreasing the concentration (or dosage) of a drug increases its therapeutic activity is contrary to modern medicine.  Time after time, properly conducted scientific studies have proved that homeopathic remedies work no better than simple placebos.  *See* Ben Goldacre, "What's wrong with homeopathy," THE GUARDIAN: SCIENCE (Nov. 15, 2007), *available at* http://www.theguardian.com/science/2007/nov/16/sciencenews.g2 (last visited Jan. 9, 2014).

47.     Because they are so heavily diluted, homeopathic remedies do not contain any pharmacologically active molecules.  The idea that such remedies actually have a pharmacological effect violates fundamental principles of science.  Modern homeopaths have proposed that water has a memory that allows homeopathic preparations to work without containing the original substance.  According to modern medical science, the notion that dilutions can maintain an imprint of substances previously dissolved in them is scientifically implausible.  *See* House of Commons, Science and Technology Committee, Evidence Check 2: Homeopathy, Fourth Report, 2009-10, HC 45, ¶ 61 (U.K.).

48.     The theory that homeopathic remedies are effective has been rejected repeatedly by medical science.  For example, in a study of homeopathic remedies commissioned by the British Government, medical scientists repeatedly expressed their criticisms of homeopathy and its proponents:

> We regret that advocates of homeopathy … choose to rely on, and promulgate, selective approaches to the treatment of evidence base as this risks confusing or misleading the public, the media and policy makers . . . .

*Id.* at ¶73.

> In our view, the systematic reviews and meta-analyses conclusively demonstrate that homeopathic products perform no better than placebos.

*Id.* at ¶70.

There has been enough testing of homeopathy and plenty of evidence showing that it is not efficacious . . . .

*Id.* at ¶77.

For patient choice to be real choice, patients must be adequately informed to understand the implications of treatments.  For homeopathy this would certainly require an explanation that homeopathy is a placebo.  When this is not done, patient choice is meaningless.  When it is done, the effectiveness of the placebo – that is, homeopathy – may be diminished.

*Id.* at ¶70.

49.     After its investigation, the British Government found that:

[T]he evidence base shows that homeopathy is not efficacious (that is, it does not work beyond the placebo effect) and that explanations for why homeopathy would work are scientifically implausible.  … The [Science and Technology] Committee concluded, given that the existing scientific literature showed no good evidence of efficacy, that further clinical trials of homeopathy could not be justified… In the Committee's view, homeopathy is a placebo treatment and the Government should have a policy on prescribing placebos. Prescribing of placebos is not consistent with informed patient choice, which the Government claims is very important, as it means patients do not have all the information needed to make choice meaningful… Beyond ethical issues and the integrity of the doctor-patient relationship, prescribing pure placebos is bad medicine. Their effect is unreliable and unpredictable and cannot form the sole basis of any treatment on the NHS.

*See* Press Release, Science and Technology Committee, MPS Urge Government to Withdraw NHS Funding and MHRA Licensing of Homeopathy (Feb. 22, 2010), *available at* http://www.parliament.uk/business/committees/committees-archive/science-technology/s-t-homeopathy-inquiry/ (last visited Jan. 6, 2014).

50.     In 2005, Dr. Matthias Egger and colleagues from the University of Berne in Switzerland analyzed 110 placebo-controlled homeopathy trials and compared the results to the same number of trials of conventional drugs.  Published in the British journal *The Lancet*, the study found that the benefits from the homoeopathic remedies were entirely compatible with the placebo effect.  The researchers continued: "the findings were less surprising than the fact that debate over homeopathy continues, despite 150 years of unfavorable findings . . . ."  Aijing Shang, *Are The Clinical Effects of Homoeopathy Placebo Effects? Comparative Study of Placebo-controlled Trials*

*of Homoeopathy and Allopathy,* The Lancet, Vol. 366, at 726-32 (Aug. 27, 2005), *abstract available at* http://www.thelancet.com/journals/lancet/article/PIIS0140-6736(05)67177-2/abstract.

51.      Michael Levy, director of the Food and Drug Administration's ("FDA's") division of new drugs and labeling compliance, stated that the FDA is "not aware of any evidence that shows homeopathic drugs are effective."  *See* FDA Online Label Repository Webpage, http://labels.fda.gov/.  Likewise, the American medical establishment has long rejected the science underlying homeopathic studies because the compounds are too diluted to retain any meaningful, measurable medicinal value. "Science tells us that most of these medicines aren't useful," said Dr. Wayne Yankus, a Midland Park pediatrician, discussing the efficacy of homeopathic remedies.  *See* Colleen Diskin, *Parents Look To Homeopathy As Alternative To Over-The-Counter Cold Medicines,* The Record (Dec. 19, 2010), http://www.northjersey.com/news/112144649_Over-the-counter_alternatives.html (last visited Jan. 6, 2014).

52.      As Professor David Colquhoun, Professor of Pharmacology at University College London, put it: "If homeopathy worked the whole of chemistry and physics would have to be overturned." *See* House of Commons, Science and Technology Committee, Evidence Check 2: Homeopathy, Fourth Report, 2009-10, HC 45 (U.K.).

53.      Furthermore, reliable clinical trials repeatedly demonstrate that homeopathic remedies are only as effective as placebos.  The authors of the Homeopathy Comparative Study, cited above, concluded that "*when analyses were restricted to large trials of higher quality there was no convincing evidence that homeopathy was superior to placebo.*" (emphasis added).

54.      The American Medical Association and the National Health Service have reached the same conclusion, and both have issued statements that no scientific evidence supports the use of homeopathic treatments in medicine.  Even homeopathy's own supporters, such as the National Center for Complementary and Alternative Medicine, have been forced to admit that "[t]here is [] no condition for which homeopathy has been proven effective."

**E.**     **The Study That Defendants Rely On Demonstrates That Zicam Is _Not_ "Clinically Proven" To Reduce The Duration And Severity Of The Common Cold**

55.     Defendants misleadingly claim that the highly diluted ingredients in Zicam Pre-Cold Products are "clinically proven to shorten a cold" and rely on a study that shows just the opposite. Zicam asserts on its website, "While the exact mechanism has not been determined, the efficacy of zinc in reducing the duration of a cold, when taken at the first sign of a cold, is supported by multiple clinical trials (Zinc for the Common Cold [Review], The Cochrane Collaboration, Singh, 2013)."  Zicam FAQs, www.zicam.com/faqs_zicam/.

56.     In fact, the clinical trials Defendants cite demonstrate that the highly diluted zinc acetic and zinc gluconate in the Products have no effect.[9]   The Cochrane Systematic Review identified 18 randomized controlled trials that enrolled 1781 participants and compared zinc lozenges or syrup with placebo.  The Review concluded that there is a reduction in the duration of cold symptoms "*at a dose of* $\geq$ *75 mg/day*…."  Zicam Pre-Cold Products contain *much less* than 75 milligrams of zinc.[10]   Therefore, even if there is some possibility that the duration of a cold may be reduced when *at least **75 milligrams*** of zinc is ingested each day, the diluted doses of zinc in Zicam Pre-Cold Products fail to meet this standard.

57.     Furthermore, the Cochrane Report concluded that even a milligram formulation of zinc *was not associated with a reduction of the severity of common cold symptoms*.  Thus, the Cochrane Report cited by Defendants demonstrates that Defendants' representation that the Products "reduce[] severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion" is affirmatively false.

---

[9] *See* Singh M, Das RR., "Zinc for the Common Cold", 12 Cochrane Database of Systematic Reviews 2013 CD001364, *abstract available at* http://onlinelibrary.wiley.com/doi/10.1002/14651858.CD001364.pub4/abstract (last visited Jan. 9, 2014).

[10] Sekula, Stephen, "Fake Medicine: Zicam" (Dec. 6, 2013), http://steve.cooleysekula.net/blog/2013/01/06/fake-medicine-zicam/ (estimating that the Products contain around 5 mg of zincum aceticum and 0.5 mg of zincum gluconicum) (last visited Jan. 10, 2014).

58.     Additionally, there is significant and persuasive scholarship *contradicting* the assertion that even a milligram formulation of Zinc reduces the duration of the common cold. According to WebMD, for every study showing a positive benefit zinc has on the common cold, there is another study showing no benefit at all.  "Zinc for Colds: Lozenges & Nasal Sprays," WEBMD.COM, http://www.webmd.com/cold-and-flu/cold-guide/zinc-lozenges-cold-remedy (last visited Jan. 6, 2014).  For example, WebMD points to studies where researchers "found no significant differences in cold symptoms between those who took zinc and those who took a placebo or sugar pill."  *Id.*

59.     Likewise, the Cochrane Report indicated that even with a milligram formulation of zinc, seven of the clinical studies conducted since 1984 showed that zinc provided "no benefit" for treatment of the common cold.  *See* Singh M, Das RR., Zinc for the Common Cold, 12 Cochrane Database of Systematic Reviews 2011 CD001364.

**F.**     **The National Advertising Division Previously Determined That Defendants Improperly Suggest That  Zicam Protect Users From Catching The Common Cold**

60.     In April 2013, the National Advertising Division of the Council of Better Business Bureaus ("NAD") found that Zicam's product packaging and advertising in print, television, and on the website "could reasonably be understood by consumers" to mean that Zicam Pre-Cold Products protect consumers from catching the cold.[11]

61.     The misrepresentation issues arose from the advertising campaign featuring the "Cold Monster" that encouraged consumers to treat their pre-cold using Zicam Pre-Cold Products. Among other things, the NAD looked at Zicam's title "The Pre-Cold Medicine," the claim "Take Zicam Now And Go From Pre-Cold To No Cold, Faster," and the claim Zicam is "clinically

---

[11] *See* ASRC Press Releases, "NAD Recommends Matrixx Discontinue Claims that Suggest 'Zicam' Products Protect Users from Catching Cold; Found Advertiser Could Support Certain Claims," ASRCREVIEWS.ORG (April 5, 2013), *available at* http://www.asrcreviews.org/2013/04/nad-recommends-matrixx-discontinue-claims-that-suggest-zicam-products-protect-users-from-catching-cold-found-advertiser-could-support-certain-claims/ (last visited Jan. 6, 2014).

proven [to reduce the duration of a cold]."  The NAD focused extensively on the context in which Zicam made the representations to determine if they were misleading to consumers.[12]

62.     The NAD concluded that taken in context, claims like "Don't let a monster of a cold catch you" could make consumers believe Zicam would prevent a cold or reduce the severity of the cold symptoms.  Despite this warning, Zicam continues to market its Pre-Cold Products to mislead consumers into thinking Zicam Pre-Cold Products prevent the common cold.  In the "Cold Monster" commercial, the Zicam consumer goes from pre-cold to no cold after escaping the clutches of the "Cold Monster."  It is a literal representation of Zicam preventing the occurrence of the common cold, a claim the NAD acknowledged as unsupported.[13]

63.     The NAD also recommended that Defendants discontinue the "clinically proven" claim in advertising featuring "non-tested products and non-cold remedy products."  Defendants have not done so.

## G.     The FDA Does Not Regulate Homeopathic Remedies

64.     To determine whether *non*-homeopathic OTC drugs are safe, effective, and not misbranded, the FDA subjects non-homeopathic OTC drugs to stringent evaluations and testing using a drug monograph system created by the FDA.  *See* 21 C.F.R. §§ 330.1, 330.10.  In drafting the monographs, the FDA divided the non-homeopathic OTC drugs into drug categories, which were then assigned an advisory review panel of qualified experts who evaluate the safety and effectiveness of the non-homeopathic OTC drugs.  The panel also reviews the drugs' labeling and advises the FDA Commissioner on the promulgation of monographs establishing conditions under which non-homeopathic OTC drugs listed within each monograph are generally recognized as safe, effective, and not misbranded.  *Id.* § 330.10(a).

65.     Under this system, a manufacturer seeking approval of a new, non-homeopathic OTC drug must submit a detailed new drug application, which must include:

[12] *See id.*

[13] *See id.*

> [E]vidence consisting of adequate and well-controlled investigations, including clinical investigations, by experts qualified by scientific training and experience to evaluate the effectiveness of the drug involved, on the basis of which it could fairly and responsibly be concluded by such experts that the drug will have the effect it purports or is represented to have under the conditions of use prescribed, recommended, or suggested in the labeling or proposed labeling thereof.

21 U.S.C. § 355.  Moreover, after the FDA approves a new drug application, any change in the drug's labeling requires a supplement to the application and further approval by the FDA either before or after the change.  21 C.F.R. §§ 314.70(b), (c), 314.71.

66.     In stark contrast, homeopathic OTC drugs, including the Zicam Pre-Cold Products, are neither approved nor authorized by the FDA.  As stated on the Zicam Pre-Cold Products' packaging, "This product is not required to go through the FDA's New Drug Application approval process."

67.     Furthermore, on the U.S. National Library of Medicine ("the NLM") website responsible for providing information about FDA drug listing information, the NLM specifically states the following about Zicam: "THIS HOMEOPATHIC PRODUCT HAS NOT BEEN EVALUATED BY THE FOOD AND DRUG ADMINISTRATION FOR SAFETY OR EFFICACY.  FDA IS NOT AWARE OF SCIENTIFIC EVIDENCE TO SUPPORT HOMEOPATHY AS EFFECTIVE."[14]

## H.   The Inventor Of Zicam Plead Guilty To Illegally Marketing And Distributing OTC Flu Medicine

68.     In June 2011, Zicam inventor Charles B. Hensley was arrested by the Southern California Import Task Force, which is composed of agents from the Food and Drug Administration's Office of Criminal Investigations and investigators from the Los Angeles Police

---

[14] *See* "ZICAM (zinc acetate and zinc gluconate) tablet, orally disintegrating [Matrixx Initiatives, Inc.]," National Library of Medicine, http://dailymed.nlm.nih.gov/dailymed/lookup.cfm?setid=ba3cfc70-cead-489c-bf79-59774cf22fee (last visited Jan. 6, 2014).

Department.[15]  The FDA noted that Hensley and his company, PRB Pharmaceuticals, attempted to sell a medicine called "Vira 28" in Hong Kong.  The marketing efforts in Hong Kong failed largely because the product lacked clinical data to demonstrate its efficacy.  After the product's failure in the Hong Kong market, Hensley started marketing the product and selling it to U.S. consumers over the internet as a medication to fight the H5N1 virus, commonly known as the bird flu.

69.     Despite a lack of clinical data to support the claims, Hensley's company stated in a press release that Vira 28 was an OTC medicine "known for its effectiveness in treating and preventing influenza."  The company continued, "VIRA 38 has recently been shown to contain compounds that inhibit the bird flu (H5N1) virus."

70.     Hensley was subsequently charged with a 12-count indictment following a hearing before a federal grand jury.  Amongst the four felony and eight misdemeanor charges, four of the misdemeanor charges involved introduction of a misbranded drug into interstate commerce.

71.     In July 2011, Hensley entered a plea of guilty to marketing misrepresentation of the unapproved preventative drug.[16]

### PLAINTIFF'S PURCHASE OF ZICAM PRE-COLD MEDICINE

72.     Plaintiff Yesenia Melgar purchased Zicam Pre-Cold RapidMelts at a Rite Aid in Davis, California.  Plaintiff purchased Zicam Pre-Cold RapidMelts after carefully reading the label on the product packaging.

73.     In purchasing Zicam Pre-Cold RapidMelts, Plaintiff relied upon the various representations Defendants made on the product's label, including that Zicam is "clinically proven to shorten a cold," "reduces the duration of a cold," and "reduces severity of cold symptoms ▪ sore

---

[15] *See* Press Release, "Inventor of Zicam Cold Remedy Arrested for Illegally Importing and Distributing of Unapproved 'Bird Flu' Drug," United States Attorney's Office (June 2, 2011), http://www.justice.gov/usao/cac/Pressroom/ pr2011/078.html (last visited Jan. 2, 2014).

[16] *See* Stuart Pfeifer, "Zicam inventor to plead guilty to marketing unapproved drug," LOS ANGELES TIMES (July 28, 2011), available at http://articles.latimes.com/2011/jul/28/business/la-fi-zicam-20110728 (last visited Jan. 6, 2014).

throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion." She also read that with Zicam she could "go from pre-cold to no cold faster."

74.     Plaintiff used the Pre-Cold Product as directed but did not obtain the advertised relief from these symptoms, nor any benefits, from using Zicam Pre-Cold RapidMelts. In fact, Plaintiff became much sicker because she forewent other treatment based on her belief that Zicam would prevent her from getting sick, reduce the duration of her cold, and decrease the severity of her symptoms. Plaintiff purchased the Zicam product for approximately $10.00 to $12.00.

75.     Plaintiff would not have purchased Zicam Pre-Cold RapidMelts if she had known that it was not effective for treating cold symptoms.

## CLASS ACTION ALLEGATIONS

76.     Plaintiff brings this action as a class action under Federal Rule of Civil Procedure 23 on behalf of a Class consisting of all persons in the United States who, within the relevant statute of limitations period, purchased Zicam Pre-Cold Products.

77.     Plaintiff also seeks to represent a subclass defined as all members of the Class who purchased mislabeled Zicam Pre-Cold Products in California ("the California Class").

78.     Excluded from the Class are the Defendants, the officers and directors of the Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which either Defendant has or had a controlling interest.

79.     Also excluded from the Class are persons or entities that purchased Zicam Pre-Cold Products for purposes of resale.

80.     Plaintiff is a member of the Class she seeks to represent.

81.     The Class is so numerous that joinder of all members is impractical. Although Plaintiff does not yet know the exact size of the Class, Zicam Pre-Cold Products are sold in over eighty major retailers across the United States, including stores such as Walmart, CVS Pharmacy,

Walgreens, Costco, and Target.[17]  Major online retailers include Amazon.com and Drugstore.com.

Consequently, Zicam hails itself as the "#1 cold shortening product in the USA."[18]  According to

Zicam, it enjoys the position as "the Pre-Cold medicine leader."  Upon information and belief and

based upon Defendants' statements, the Class includes more than one million members.

Accordingly, joinder is impracticable.

82.     The Class is ascertainable because the Class Members can be identified by objective

criteria.  Individual notice can be provided to Class Members "who can be identified through

reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).

83.     There are numerous questions of law and fact common to the Class which

predominate over any individual actions or issues, including but not limited to:

(a)     Whether Defendants violated the Magnuson-Moss Act, 15 U.S.C. § 201, *et seq.*;

(b)     Whether Defendants breached an express warranty made to Plaintiff and the Class;

(c)     Whether Defendants breached the implied warranties of merchantability and/or fitness for a particular purpose made to Plaintiff and the Class;

(d)     Whether Defendants' marketing of Pre-Cold Products is false, misleading, and/or deceptive;

(e)     Whether Defendants' marketing of Pre-Cold Products is unfair;

(f)     Whether Zicam Pre-Cold Products are efficacious, effective, and useful for the prevention of the common cold;

(g)     Whether Zicam Pre-Cold Products are efficacious, effective, and useful for reducing the duration of the common cold;

---

[17] *See* Zicam: Where to Buy, http://www.zicam.com/where_to_buy/.

[18] *See* Zicam: About Us, http://www.zicam.com/ about_zicam/.

(h)     Whether Zicam Pre-Cold Products are efficacious, effective, and useful for reducing the severity of the common cold;

(i)     Whether Defendants were unjustly enriched by their conduct;

(j)     Whether Defendants violated the CLRA;

(k)     Whether Defendants violated the UCL;

(l)     Whether Defendants violated the FAL;

(m)     Whether Class Members suffered an ascertainable loss as a result of Defendants' misrepresentations; and

(n)     Whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and the Class Members are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

84.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct.  Plaintiff has no interests antagonistic to the interests of the other members of the Class.  Plaintiff and all members of the Class have sustained economic injury arising out of Defendants' violations of common and statutory law as alleged herein.

85.     Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class Members she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of the Class Members will be fairly and adequately protected by Plaintiff and her counsel.

86.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the Class Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential

for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## COUNT I

### Violation of Magnuson-Moss Act

### (15 U.S.C. § 2301, *et seq.*)

87.     Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

88.     Plaintiff brings this claim individually and on behalf of the members of the Class.

89.     The Zicam Pre-Cold Products are consumer products as defined in 15 U.S.C. § 2301(1).

90.     Plaintiff and the Class Members are consumers as defined in 15 U.S.C. § 2301(3).

91.     Defendants are suppliers and warrantors as defined in 15 U.S.C. § 2301(4) and (5).

92.     In connection with the sale of the Zicam Pre-Cold Products, Defendants issued written warranties as defined in 15 U.S.C. § 2301(6), including that the products "reduce[] the duration of a cold," "get rid of your cold faster," "reduce[] the  severity of the symptoms of the common cold," are "clinically proven to shorten a cold," and help consumers "go from pre-cold to no cold faster."

93.     Defendants breached the written warranties because each of the express warranties is provably false and misleading.  The highly diluted ingredients in the Pre-Cold Products have no effect on the common cold.

94.     By reason of Defendants' breach of the express written warranties involving the Zicam Pre-Cold Products enumerated above, Defendants have violated the statutory rights due Plaintiff and the Class Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiff and the Class Members.

95.      Plaintiff and the Class Members were injured as direct and proximate result of Defendants' breach because they would not have purchased the Products if they had known the truth about them.

96.      Pursuant to 15 U.S.C. § 2310(d)(1), Plaintiff and the Class are entitled to recover the damages caused to them by Defendants' breaches of written warranties, which damages constitute the full purchase price of the Products.  In addition, pursuant to 15 U.S.C. § 2310(d)(2), Plaintiff and the Class are entitled to recover a sum equal to the aggregate amount of costs and expenses (including attorneys' fees based on actual time expended) determined by the Court to have been reasonably incurred by Plaintiff and the Class for and in connection with the commencement and prosecution of this action.

97.      Prior to filing this action, Ms. Melgar, by and through her counsel, provided Defendants with written notice of her claims pursuant to 15 U.S.C. § 2310(e) and also notified Defendants that she was acting on behalf of a Class defined as all persons in the United States who purchased Zicam Pre-Cold Products.

**COUNT II**

**Breach Of Express Warranty**

98.      Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

99.      Plaintiff brings this Count individually and on behalf of the members of the Class.

100.      In connection with the sale of the Products, Defendants issued Express Warranties including that the Pre-Cold Products are "clinically proven to shorten cold," "reduce[] severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion," and "GO FROM PRE-COLD™ TO NO COLD FASTER.™" Defendants expressly warranted that the Zicam Pre-Cold Products were effective and would prevent, reduce the duration, and reduce the severity of the common cold.

101.      Defendants' affirmations of fact and promises made to Plaintiff and the Class on the Product labels and in their television and print advertisements, became part of the basis of the

bargain between Defendants and Plaintiff and the Class Members, thereby creating express warranties that the Products would conform to Defendants' affirmations of fact, representations, promises, and descriptions.

102.    Defendants breached their express warranties because Zicam Pre-Cold Products do not in fact prevent, shorten, or reduce the severity of the common cold or cold symptoms.  In short, the Products do not perform as expressly warranted.

103.    Plaintiff and the Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased Zicam Pre-Cold Products if they had known the true facts; (b) they paid for the Products due to the mislabeling of Zicam Pre-Cold Products; and (c) Zicam Pre-Cold Products did not have the quality, effectiveness, or value as promised.   As a result, Plaintiff and the Class have been damaged in the full amount of the purchase price of the Products.

**COUNT III**

**Breach of Implied Warranty of Merchantability**

104.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

105.    Plaintiff brings this Count individually and on behalf of the members of the Class.

106.    Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers, impliedly warranted that the Pre-Cold Products would prevent, shorten, and reduce the severity of the symptoms of the common cold.

107.    Defendants, through their acts and omissions set forth herein, in their sale, marketing, and promotion of Zicam Pre-Cold Products, made implied representations to Plaintiff and the Class that their Pre-Cold Cold Products were effective at preventing, reducing the duration, and reducing the severity of the common cold.

108.    Defendants' Products were entirely useless for their ordinary purpose of preventing, reducing the duration of, and relieving the symptoms of the common cold.  The Products were not of fair and average quality within Defendants' description.  The Products were also not labeled as

required because the Product packaging contains numerous misrepresentations.  The Products do not conform with the promises on their labels.

109.    Defendants breached their implied warranties because the Pre-Cold Products did not and cannot prevent, reduce the duration, or reduce the severity of the common cold.  As a result of Defendants' conduct, Plaintiff and the Class did not receive the goods as impliedly warranted by Defendants to be merchantable or fit for the purpose they were sold.

110.    Plaintiff and the Class have sustained damages as a proximate result of the foregoing breach of implied warranty in an amount to be determined at trial.

## COUNT IV

### Breach of Implied Warranty of Fitness for a Particular Purpose

111.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

112.    Plaintiff brings this Count individually and on behalf of the members of the Class.

113.    Defendants marketed, distributed, and/or sold the Products with implied warranties that they were fit for the particular purpose of preventing, reducing the duration of, and relieving the symptoms of the common cold.  However, the highly diluted ingredients in the Products have no effect on the common cold.  At the time the Products were sold, Defendants knew or should have known that Plaintiff and the Class Members would rely on Defendants' skill and judgment regarding the efficacy of the Products.

114.    In reliance on Defendants' skill and judgment and the implied warranties of fitness for the purpose, Plaintiff and the Class Members purchased the Products for use in preventing and reducing the duration of the common cold, as well as for use in alleviating the severity of cold symptoms.

115.    The Products were not altered by Plaintiff or the Class Members.

116.    Plaintiff and the Class Members were injured as a direct and proximate result of Defendants' breach because: (a) they would not have purchased the Products if the true facts concerning their efficacy had been known; (b) they paid a price for the Products based on

Defendants' representations regarding the Products' efficacy; and (c) the Products did not have the characteristics, uses, or benefits as promised.  As a result, Plaintiff and the Class Members have been damaged in the full amount of the purchase price of the Products.

**COUNT V**

**Violation of the Consumer Legal Remedies Act ("CLRA")**

**(Civil Code §§ 1750, *et. seq.*)**

117.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

118.    Plaintiff brings this Count individually and on behalf of the California Class.

119.    Plaintiff and the California Class Members are consumers who purchased the Pre-Cold Products for personal, family, or household purposes.  Accordingly, Plaintiff and the California Class Members are "consumers" as that term is defined by the CLRA in Cal. Civ. Code § 1761(d).  Plaintiff and the California Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of the homeopathic Products.

120.    At all relevant times, Zicam Pre-Cold Products constituted "goods" as that term is defined in Cal. Civ. Code § 1761(a).

121.    At all relevant times, Defendants were "persons" as that term is defined in Civ. Code § 1761(c).

122.    At all relevant times, Plaintiff's purchase of Zicam Pre-Cold Products, and the purchases of other Class and Subclass members, constituted  "transactions" as that term is defined in Cal. Civ. Code § 1761(e).  Defendants' actions, representations, and conduct have violated, and continue to violate the CLRA, because they extend to transactions that intended to result, or which have resulted in, the sale of goods to consumers.

123.    The policies, acts, and practices described in this Complaint were intended to and did result in the sale of Zicam Pre-Cold Products to Plaintiff and the Class.  Defendants' practices, acts, policies, and course of conduct violated the CLRA §1750 *et seq.* as described above.

124.     Defendants represented that Zicam Pre-Cold Products have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have in violation of Cal. Civ. Code § 1770(a)(5).

125.     Defendants represented that the Products were of a particular standard, quality, and grade, when they were of another, in violation of California Civil Code § 1770(a)(7).

126.     Defendants violated California Civil Code §§ 1770(a)(5) and (a)(7) by representing that Zicam Pre-Cold Products were effective at preventing, reducing the duration, and reducing the severity of the common cold when, in fact, they were not.

127.     Defendants represented that Zicam Pre-Cold Products were of a particular standard or quality when Defendants were aware that they were of another in violation of § 1770(a)(7) of the CLRA.  Defendants maintained that the Products prevented, reduced the duration, and reduced the severity of the common cold when they did not.

128.     Defendants advertised Zicam Pre-Cold Products with the intent not to sell them as advertised in violation of § 1770(a)(9) of the CLRA.  Defendants did not intend to sell Zicam Pre-Cold Products as advertised because they knew that the homeopathic dilution of the ingredients in the Products would not effectively prevent, reduce the duration, or reduce the severity of the common cold.  Defendants knew that the Products' so-called active ingredients are ineffective and inactive homeopathic concentrations.

129.     Plaintiff and the California Class Members suffered injuries caused by Defendants' misrepresentations because: (a) Plaintiff and the Class Members would not have purchased Zicam Pre-Cold Products if they had known the true facts; (b) Plaintiff and the Class paid a price for the Products due to the mislabeling of the Pre-Cold Products; and (c) Zicam Pre-Cold Products did not have the level of quality, effectiveness, or value as promised.

130.     Prior to the filing of this Complaint, a CLRA notice letter was served on Defendants which complies in all respects with California Civil Code § 1782(a).  A true and correct copy of Plaintiff's letter is attached as Exhibit A.  In December 2013, Plaintiff sent Defendants a letter via certified mail, return receipt requested, advising Defendants that they are in violation of the CLRA

and must correct, repair, replace, or otherwise rectify the goods alleged to be in violation of § 1770. Defendants were further advised that in the event that the relief requested had not been provided within thirty (30) days, Plaintiff would bring an action for damages pursuant to the CLRA. Wherefore, Plaintiff seeks damages, restitution, and injunctive relief for this violation of the CLRA.  On December 17, 2013, Defendants received the letter.  On December 23, 2013, Defendants sent a letter acknowledging receipt of the CLRA notice letter.

131.    Plaintiff seeks damages, restitution, and injunctive relief for this violation of the CLRA.

## COUNT VI
### Violation of the False Advertising Law
### (Business & Professions Code §§17500 *et seq.*)

132.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

133.    Plaintiff brings this Count on behalf of the California Class.

134.    California's FAL (Bus. & Prof. Code §§17500, *et seq.*) makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state, . . . in any advertising device . . . or in any other manner or means whatever, including over the Internet, any statement, concerning . . . personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

135.    Throughout the Class Period, Defendants committed acts of false advertising, as defined by the FAL, by using false and misleading statements to promote the sale of Zicam Pre-Cold Products, as described above, and including, but not limited to, that the Products are "clinically proven to shorten cold," "reduce[] duration and severity of the common cold," "reduce[] severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion," and "GO FROM PRE-COLD™ TO NO COLD FASTER.™"

136.    Defendants knew or should have known, through the exercise of reasonable care, that their statements were untrue and misleading.

137.    Defendants' actions in violation of the FAL were false and misleading such that the general public is and was likely to be deceived.

138.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' FAL violation because: (a) Plaintiff and the Class would not have purchased Zicam Pre-Cold Products if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price due to the misrepresentations of Zicam Pre-Cold Products; and (c) Zicam Pre-Cold Products did not have the promised quality, effectiveness, or value.

139.    Plaintiff brings this action pursuant to Bus. & Prof. Code § 17535 for injunctive relief to enjoin the practices described herein and to require Defendants to issue corrective disclosures to consumers. Plaintiff and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

### COUNT VII

### Violation of the "Unlawful Prong" of the Unfair Competition Law

### (Bus. & Prof. Code §§ 17200 *et seq.*)

140.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

141.    Plaintiff brings this Count on behalf of the California Class.

142.    The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair,

deceptive, untrue or misleading advertising ….”  The UCL also provides for injunctive relief and restitution for UCL violations.

143.    “By proscribing any unlawful business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the UCL makes independently actionable.” *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal. 4th 163, 180 (1999) (citations and internal quotation marks omitted).

144.    Virtually any law or regulation – federal or state, statutory, or common law – can serve as a predicate for an UCL “unlawful” violation.  *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012).

145.    Defendants violated the “unlawful prong” by violating the CLRA, the FAL, and the Magnuson-Moss Warranty Act, as well as by breaching express and implied warranties as described herein.

146.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants’ UCL “unlawful prong” violation because: (a) Plaintiff and the Class would not have purchased Zicam Pre-Cold Products if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price due to the misrepresentations of Zicam Pre-Cold Products; and (c) Zicam Pre-Cold Products did not have the promised quality, effectiveness, or value.

147.    Pursuant to Bus. & Prof. Code §17203, Plaintiff and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff’s attorneys’ fees and costs pursuant to, *inter alia*, California Code of Civil Procedure §1021.5.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT VIII

## Violation of the "Fraudulent Prong" of the Unfair Competition Law

## (Bus. & Prof. Code §§ 17200 *et seq.*)

148.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

149.    Plaintiff brings this Count on behalf of the California Class.

150.    The UCL, Bus. & Prof. Code § 17200 *et seq.*, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising …."

151.    Defendants' conduct, described herein, violated the "fraudulent" prong of the UCL because Defendants represented that Zicam Pre-Cold Products prevent, reduce the duration, and reduce the severity of the common cold when, in fact, they do not.  As described above, Defendants misrepresented that the Zicam Pre-Cold Products are "clinically proven to shorten cold," "reduce[] duration and severity of the common cold," "reduce[] severity of cold symptoms ▪ sore throat ▪ stuffy nose ▪ sneezing ▪ coughing ▪ nasal congestion," and "GO FROM PRE-COLD™ TO NO COLD FASTER.™"

152.    Plaintiff and the California Class Members are not sophisticated experts with independent knowledge of the formulation or efficacy of the homeopathic Products, and they acted reasonably when they purchased Defendants' Products based on their belief that Defendants' representations were true.

153.    Defendants knew or should have known, through the exercise of reasonable care, that their representations about the Products were untrue and misleading.

154.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' UCL "fraudulent prong" violation because: (a) Plaintiff and the Class would not have purchased Zicam Pre-Cold Products if they had known the true facts regarding the effectiveness and contents of the Products; (b) Plaintiff and the Class paid a price due to the

misrepresentations of Zicam Pre-Cold Products; and (c) Zicam Pre-Cold Products did not have the promised quality, effectiveness, or value.

155.    Pursuant to Bus. & Prof. Code §17203, Plaintiff and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

**COUNT IX**

**Violation of the "Unfair Prong" of the Unfair Competition Law**

**(Bus. & Prof. Code §§ 17200 _et seq._)**

156.    Plaintiff repeats the allegations contained in the paragraphs above as if fully set forth herein.

157.    Plaintiff brings this Count on behalf of the California Class.

158.    The UCL, Bus. & Prof. Code § 17200 _et seq._, provides, in pertinent part: "Unfair competition shall mean and include unlawful, unfair or fraudulent business practices and unfair, deceptive, untrue or misleading advertising ...."

159.    Defendants' misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.  Defendants' conduct is unfair in that the harm to Plaintiff and the Class arising from Defendants' conduct outweighs the utility, if any, of those practices.

160.    Defendants' practices as described herein are of no benefit to consumers who are tricked into paying exorbitant prices for sugar pills.  Defendants' practice of injecting misinformation into the marketplace about homeopathy and the treatment of the common cold is unethical and unscrupulous.  Defendants' practices are also substantially injurious to consumers because, among other reasons, consumers may forego other necessary treatment for their illnesses

because of their mistaken belief that the Products will prevent, shorten, and alleviate the symptoms of the common cold.  For this reason, Defendants' sham medicine may be dangerous.

161.    As a direct and proximate result of these acts, consumers have been and are being harmed.  Plaintiff and members of the Class have suffered injury and actual out-of-pocket losses as a result of Defendants' UCL "unfair prong" violation because: (a) Plaintiff and the Class would not have purchased Zicam Pre-Cold Products  if they had known the true facts regarding the effectiveness and contents of the products; (b) Plaintiff and the Class paid a price due to the misrepresentations of Zicam Pre-Cold Products; and (c) Zicam Pre-Cold Products did not have the promised quality, effectiveness, or value.

162.    Pursuant to Bus. & Prof. Code §17203, Plaintiff, and the California Class are therefore entitled to: (a) an order requiring Defendants to cease the acts of unfair competition alleged herein; (b) full restitution of all monies paid to Defendants as a result of their deceptive practices; (c) interest at the highest rate allowable by law; and (d) the payment of Plaintiff's attorneys' fees and costs pursuant to, inter alia, California Code of Civil Procedure §1021.5.

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

A.    Determining that this action is a proper class action;

B.    For an order declaring that the Defendants' conduct violates the statutes referenced herein;

C.    Awarding compensatory and punitive damages in favor of Plaintiff, members of the Class, and the California Class against Defendants for all damages sustained as a result of the Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

D.     Awarding injunctive relief against Defendants to prevent Defendants from continuing their ongoing unfair, unconscionable, and/or deceptive acts and practices;

E.    For an order of restitution and/or disgorgement and all other forms of equitable monetary relief;

F.    Awarding Plaintiff and members the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

G.      Awarding such other and further relief as the Court may deem just and proper.

**<u>JURY DEMAND</u>**

Plaintiff hereby demands a trial by jury on all claims so triable in this action.

Dated:  January 21, 2014                         Respectfully submitted,

                                                 **BURSOR & FISHER, P.A.**


                                                 By:_____ */s/ Annick Persinger*_____
                                                         Annick M. Persinger

                                                 L. Timothy Fisher (State Bar No. 191626)
                                                 Sarah N. Westcot (State Bar No. 264916)
                                                 Annick M. Persinger (State Bar No. 272996)
                                                 Julia A. Luster (State Bar No. 295031)
                                                 1990 North California Blvd., Suite 940
                                                 Walnut Creek, CA  94596
                                                 Telephone: (925) 300-4455
                                                 Facsimile: (925) 407-2700
                                                 Email: ltfisher@bursor.com
                                                        swestcot@bursor.com
                                                        apersinger@bursor.com
                                                        jluster@bursor.com

                                                 *Counsel for Plaintiff*

**<u>CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)</u>**

I, Yesenia Melgar, declare as follows:

1.      I am a plaintiff in this action and a citizen of the State of California.  I have personal knowledge of the facts stated herein and, if called as a witness, I could and would testify competently thereto.

2.      The complaint filed in this action is filed in the proper place because I purchased Zicam Pre-Cold RapidMelts in this District.  I believe a significant amount of Zicam Pre-Cold Medicine has been sold in this District.

3.      I purchased Zicam Pre-Cold RapidMelts in Davis, California, for my personal use.  I purchased the product after I read the label on the bottle stating it would prevent, shorten, and reduce the severity of the common cold.  The marketing of Zicam Pre-Cold Products was a substantial factor influencing my decision to purchase Zicam Pre Cold RapidMelts.  I would not have purchased Zicam Pre-Cold RapidMelts had I known that the product would not prevent, shorten, or reduce the severity of the common cold.

I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct, executed on January  20 , 2014 at  Long Beach  , California.

_____
YESENIA MELGAR