UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

YESENIA MELGAR,

        Plaintiff,

   v.

ZICAM LLC, et al.,

        Defendants.

No. 2:14-cv-0160 MCE AC

ORDER

Plaintiff brings this action for false and misleading advertising and labeling against defendants Zicam LLC and Matrixx Initiatives, Inc., the makers and distributors of Zicam cold medicine, a homeopathic formula. Plaintiff sues on behalf of herself and all others similarly situated.

Defendant now moves to strike plaintiff's supplemental designation of rebuttal experts.

## I. THE DISCOVERY AT ISSUE

On June 8, 2015, the parties made their initial expert witness designations and disclosures. Plaintiff designated the following experts, as relevant to the current motion:

    (1) Noel R. Rose, M.D., Ph.D. ("Rose"):[1]

"the effectiveness of zinc for the treatment of the common cold and the placebo effect."

---

[1] The designation is reproduced at ECF No. 78-1 at 69-101 (Rose, redacted).

    (2) R. Barker Bausell, Ph.D. ("Bausell"):[2]

"the experimental design, methodology, data emanating from, and conclusions permitted by the randomized controlled trials commissioned by Matrixx Initiatives, and the scientific merit of any efficacy claims made by Defendants with respect to the Pre-Cold Medicine oral delivery forms."

ECF No. 38.

Simultaneously, defendant designated the following experts, as relevant to the current motion:

    (1) Harri Hemilä, M.D., Ph.D. ("Hemilä"):[3]

"Clinical research and evaluation of cold remedy treatments."

    (2) Ronald Eccles, B.Sc., Ph.D., D.Sc. ("Eccles"):[4]

"The study and scientific knowledge of the common cold and common cold treatments."

    (3) David Stewart, Ph.D. ("Stewart"):[5]

"Marketing and consumer perception."

    (4) Dr. Peter A.G. Fisher ("Fisher"):[6]

"Homeopathy and homeopathic medications."

    (5) Sabrina G. Sobel, Ph.D. ("Sobel"):[7]

"Chemistry and experimental and clinical research regarding zinc cold remedies."

ECF No. 36.

On July 8, 2015, plaintiff filed her Rebuttal Expert Designation and Disclosures. She designated the following to be rebuttal experts:

    (1) Elizabeth Howlett, Ph.D. ("Howlett"):[8]

////

---

[2] ECF No. 78-1 at 37-67 (Bausell, redacted).
[3] Id. at 288-363 (Hemilä, redacted).
[4] Id. at 279-86 (Eccles, redacted).
[5] Id. at 402-14 (Stewart, redacted).
[6] Id. at 387-402 (Fisher).
[7] Id. at 365-85 (Sobel).
[8] Id. at 192-206 (Howlett, redacted).

2

"marketing and consumer behavior. . . . Howlett responds to the Expert Report of Dr. David Stewart."

(2) Edzard Ernst, M.D., Ph.D. ("Ernst"):[9]

"alternative medicine, homeopathy, clinical research methodology, clinical trials, systematic reviews, and evidence-based medicine. . . . Ernst responds to the Expert Report of [Drs. Eccles, Hemilä, Fisher and Sobel.]"

ECF No. 50.

## II.  RULES AND COURT ORDERS

### A.  Fed. R. Civ. P.  26(a)(2)(D)(ii)

Rule 26(a)(2)(D), Fed. R. Civ. P., sets forth the timing and sequence for the disclosures of expert witnesses, including rebuttal experts.  Specifically, the rule provides that rebuttal expert disclosures must be made 30 days after the initial expert disclosures, or on a schedule determined by the court.  Rule 26(a)(2)(D)(ii).  The only substantive limitation contained in the rule is that the rebuttal evidence must be "intended solely to contradict or rebut evidence on the same subject matter identified by another party under Rule 26(a)(2)(B) [retained experts] or (C) [non-retained experts]."  In other words, "The rebuttal expert's testimony is only proper as long as it addresses the same subject matter that the initial experts address and does not introduce new arguments." Robinson v. HD Supply, Inc., 2013 WL 3816009 at *4, 2013 U.S. Dist. LEXIS 101690 at [12] (E.D. Cal. 2013) (Claire, M.J.).

### B.  Rule 37(c)(1)

Rule 37(c)(1), Fed. R. Civ. P., provides that as a sanction for failing to identify a witness under Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing or at a trial."  However, the sanction does not apply if "the failure was substantially justified or is harmless."  Rule 37(c)(1).  In addition, the Rule specifies alternate sanctions that may be imposed in addition to "or instead of this sanction."  Id.

////

---

[9]  Id. at 102-190 (Ernst, redacted).

3

C. Pretrial Scheduling Order

On May 29, 2014, the district judge presiding over this case issued the Pretrial Scheduling Order ("PTO").  ECF No. 15.  The order states:

> Within thirty (30) days after the designation of expert witnesses, *any party* may designate a supplemental list of expert witnesses who will express an opinion on a subject covered by an expert designated by an adverse party.  *The right to designate a supplemental expert for rebuttal purposes only shall apply to a party who has not previously disclosed an expert witness on the date set for expert witness disclosure by this Pretrial Scheduling Order.*

ECF No. 15 ¶ V (emphasis added).

## III.  ANALYSIS

### A.  Plaintiff's Initial Designation Of Experts Does Not Bar It From Designating Rebuttal Witnesses On Topics Raised For The First Time By Defendant's Experts

Defendants argue first that plaintiff's supplemental designation of rebuttal experts violates the plain language of the PTO.  As defendants read the order, once plaintiff designated *any* experts at the initial designation stage, regardless of topic, she was then precluded from designating *any* rebuttal experts, regardless of topic and regardless of whether they "contradict or rebut evidence on the same subject matter" identified by defendants.  Defendants' Motion To Strike (ECF No. 61) ("Motion") at 10.  Defendants' reading of the PTO cannot be sustained.

The PTO expressly provides that "any" party may designate a rebuttal expert witness within the time period specified:

> Within thirty (30) days after the designation of expert witnesses, *any party* may designate a supplemental list of expert witnesses who will express an opinion on a subject covered by an expert designated by an adverse party.

ECF No. 15 ¶ V at 2 (emphasis added).  Defendants contend that the very next sentence revokes the right granted to "any party" in the first sentence, and limits that right to "only" those parties who designated *no* experts at all at the initial designation stage:

> The right to designate a supplemental expert for rebuttal purposes *only* shall apply to a party who has not previously disclosed an

4

>     expert witness on the date set for expert witness disclosure by this
>     Pretrial Scheduling Order.

Id. (emphasis added).

The more natural reading of the second sentence is that the phrase "for rebuttal purposes only" modifies "supplemental expert," so that the paragraph as a whole (1) emphasizes that a party does not forfeit the right to designate rebuttal experts by failing to designate experts initially, and (2) cautions that rebuttal experts designated in that situation will be strictly limited to a rebuttal role.  Thus construed, the second sentence clarifies the first without contradicting it, and seeks to avoid the possibility that a party would withhold experts needed for its case-in-chief during initial disclosures, and then try to "back-door" them as rebuttal witnesses.  This reading of the PTO is consistent with the general rule that rebuttal witnesses are proper to the extent, and only to the extent, that they directly address and dispute matters raised for the first time by the opposing party's witnesses.  See Maionchi v. Union Pacific Corp., 2007 U.S. Dist. LEXIS 53169, 2007 WL 2022027 at *1 (N.D. Cal. 2007); Houle v. Jubilee Fisheries, Inc., 2006 U.S. Dist. LEXIS 1408, 2006 WL 27204 at *2 (W.D. Wash. 2006).

Alternatively, the language may fairly be read as specifying that supplemental witness may be specified, for rebuttal purposes, only where a party has not previously identified an expert witness *on that topic*.  Such a limitation would also serve the general purposes of Rule 26(a)(2)(D).  Where an expert witness has already been identified on a particular topic, after all, that witness may also be used at trial to rebut the opposing party's expert(s) on the same topic.  In such a situation, the use of supplemental designations could constitute unnecessary bolstering. This reading of the PTO is consistent with the general rule that a party may not use supplemental designations of "rebuttal" witnesses to introduce expert opinions that should be part of the party's own case in chief, or the need for which should have been anticipated as part of the opposing party's case in chief.  See In re Apex Oil Co., 958 F.2d 243, 245 (8th Cir. 1992) (if the purpose of expert testimony is "to contradict an expected and anticipated portion of the other party's case-in-chief, then the witness is not a rebuttal witness or anything analogous to one") (quoting Morgan v. Commercial Union Assur. Cos., 606 F.2d 554, 556 (5th Cir. 1979)).

Both these readings of the PTO limit supplemental witnesses to a strictly rebuttal function. Neither reading, however, supports defendants' position that rebuttal experts are categorically unavailable to a party who has initially disclosed experts.

In support of their interpretation of District Judge England's PTO, defendants cite an order issued by in another case, SierraPine v. Refiner Products Mfg., Inc., 2:08-cv-2144, 2010 WL 5288829, 2010 U.S. Dist. LEXIS 138081 (E.D. Cal. 2010) (England, J.). In a very brief order granting a motion to strike rebuttal experts in SierraPine, Judge England wrote:

> Rule 26(a)(2)(D), and this Court's Pretrial Scheduling Order (ECF No. 8), state that within twenty (20) days after the designation of expert witnesses, any party may designate a supplemental list of experts who will express an opinion on a subject covered by an expert from the adverse party. *This right is only available to a party who has not previously disclosed their expert witnesses*. The rule prevents parties from attempting to add additional witnesses onto their expert lists subsequent to the required and agreed-upon exchange date.
>
> Plaintiff's rebuttal witnesses *should have been originally filed with their other experts* on August 2, and are improper witnesses according to the Pretrial Scheduling Order.

SierraPine, ECF No. 80 at 2 (emphases added).

This language does not compel adoption of defendants' interpretation, any more than the PTO itself does. SierraPine repeats the PTO's statement that "any party" can designate rebuttal witnesses 30 days after the initial designation stage. Plaintiff in SierraPine sought to name a rebuttal expert after it had already designated experts in the initial round. Defendant moved to strike the rebuttal CPA designation. It interpreted the PTO to mean that "a rebuttal expert may be offered only if the disclosing party has not previously designated an expert *on that topic*." Id., ECF No. 69 at 14. Indeed, the defendant conceded that the rebuttal CPA "may properly testify to rebut RPM accountant Harry's opinion on SierraPine's lost profit margin due to down time and slow time." Id. at 16. Defendant moved to strike the rebuttal CPA solely "to the extent *it goes beyond pure rebuttal* of the opinion of RPM retained accountant Harry." Id. (emphasis added). Accordingly, the SierraPine motion to strike did not make the argument forwarded here, and the ruling on the motion cannot fairly be interpreted as endorsing a theory it did not consider. SierraPine is best understood as applying the usual rule that a party may not use rebuttal expert

designation to address matters already covered – or matters that should have been covered – by the party's initial expert disclosures, if any.

Judge England's comments on rebuttal expert designations and interpretation of his standard PTO in other cases confirm that he does not share defendants' view.  In <u>Large v. Regents of the University of California, et al.</u>, No. 2:08-cv-02835 MCE DAD, 2012 U.S. Dist. LEXIS 119265 (E.D. Cal. 2012), an employment case, Judge England granted a motion to modify a scheduling order in order to give the defendants – who had initially designated expert witnesses – additional time to consult with potential rebuttal experts on a topic raised for the first time by plaintiff's experts.  In <u>Kemper v. Fairmont Folsom, LLC</u>, No. 2:07-cv-00647, 2009 U.S. Dist. LEXIS 6826 (E.D. Cal. 2009), a disability rights case, plaintiff initially designated an accessibility expert, and defendant designated accessibility and medical experts.  Judge England denied plaintiff's untimely request for additional time to designate a rebuttal medical expert, but indicated that doing so within the original time limits would have been permissible.

In light of Judge England's own prior interpretations of his PTO, the undersigned concludes that the second sentence of paragraph 15 merely restricts designation of rebuttal experts "to a party who has not previously disclosed their expert witnesses" on a particular issue addressed by an opposing party's experts.  This is interpretation is consistent with Rule 26(a)(2)(D) and the cases holding that a party cannot designate a rebuttal expert on a topic if the party should have named an expert on that topic at the initial designation stage.

B.     Dr. Elizabeth Howlett

Plaintiff designated Dr. Elizabeth Howlett as an expert in marketing and consumer behavior, to rebut the opinion of defendants' expert Dr. David Stewart.  Plaintiff's initial disclosures did not include an expert on marketing and consumer behavior.  Because plaintiff did not designate an expert on the same topic at the initial designation stage, Howlett's designation is permitted by the PTO so long as she is designated for rebuttal purposes only -- that is, so long as the designation otherwise complies with Rule 26(a)(2)(D)(ii).

Defendants do not argue that Howlett's testimony goes beyond pure rebuttal of Stewart's testimony.  They contend rather that plaintiff should have anticipated the need for Howlett's

1  opinion, and therefore the failure to designate her at the initial designation stage precludes her

2  designation at the rebuttal stage.  Motion at 12-14.  Accordingly, the motion as to Dr. Howlett

3  turns on whether plaintiff should have anticipated the need for her testimony, and if so, whether

4  defendants are prejudiced by plaintiff's failure to name Howlett at the initial designation stage.

5        Defendants assert that plaintiff should have anticipated needing an expert on marketing

6  and consumer behavior.  Defendants argue first that plaintiff should have known that she would

7  need a marketing expert to establish her case-in-chief.  Specifically, "Plaintiff cannot establish

8  that the 'Cold Monster' advertising and 'pre-cold' advertising and labeling was false and

9  misleading to Zicam Pre-Cold Product purchasers without expert evidence related to marketing

10 and consumer behavior."  Motion at 13.  Plaintiff counters that her case-in-chief is not dependent

11 on an expert's view of marketing and consumer behavior.  Rather, she argues, she "has built a

12 solid evidentiary foundation that shows that the Products are no more effective than a placebo and

13 that consumers expect the Products to be effective."  Plaintiff's Opposition (ECF No. 78)

14 at 25-26.  In light of the non-expert evidence plaintiff identified in support of this issue for her

15 case-in-chief – including admissions from defendants' employees, plaintiff's own testimony, and

16 testimony from other consumers – the undersigned agrees that plaintiff could reasonably conclude

17 that her case-in-chief did not require an expert to prove that consumers read and rely on the labels

18 of products that purport to cure illness.  See Plaintiff's Opposition at 10; Plaintiff's Motion for

19 Class Certification (ECF No. 24) at 10-14.

20       Defendants argue second, that plaintiff should have anticipated that she would need an

21 expert on marketing and consumer behavior because defendants submitted the declaration of

22 Stewart on that topic as part of their opposition to plaintiff's motion for class certification.  As

23 part of that opposition, Stewart opined:

24
> Research has consistently demonstrated that most consumers pay little attention to the information on product labels and that such
25 information has little impact on consumers' purchase decisions.

26 Expert Report of David Stewart, Ph.D. ("Stewart Report") (ECF No. 78-1) ¶ 8(D).

27       However, no case cited by defendants, nor any known to this court, has relied on the use

28 of an expert to contest class certification as a basis for determining the "anticipation" issue.

Instead, every case cited by defendants reasons that plaintiff should have anticipated the expert if the expert was to testify on a topic essential to plaintiff's case-in-chief, or necessary to oppose defendant's case-in-chief. See Downs v. River City Grp., LLC, 2014 WL 814303 at *2-3, 2014 U.S. Dist. LEXIS 26056 at *7 (D. Nev. 2014).[10] The use of an expert to defeat class certification, as here, does not necessarily put plaintiff on notice that the same expert – or even the subject on which he opined – will be a part of defendants' case-in-chief, after the class certification motion has been decided.[11]

Even if plaintiff should have designated Howlett in her initial disclosure, defendants have failed to show any harm in the failure to do so. Defendants knew about Howlett on June 10, 2015, only two days after the initial expert disclosure deadline of June 8, 2015. They assert that they are harmed because now they have to depose Howlett, and go to Arkansas to do so. But this is not "harm," as this is exactly what they would be required to do even if plaintiff had disclosed Howlett in the initial disclosures. In addition, both sides knew that rebuttal experts were possible, as they are specifically provided for by the rules and the PTO, so having to depose them when disclosed, either at the initial stage or the rebuttal stage, does not constitute "harm" within the meaning of Rule 37.

   C.  Dr. Edzard Ernst

Plaintiff designated Dr. Edzard Ernst as an expert in "alternative medicine, homeopathy, clinical research methodology, clinical trials, systematic reviews, and evidence-based medicine," to rebut the opinions of defendants' experts, Drs. Eccles, Hemilä, Fisher and Sobel. Defendants argue that Ernst is not a proper rebuttal expert because plaintiff previously disclosed expert

---

[10] See also, Clear-View Technologies, Inc. v. Rasnick, 2015 WL 3509384 (N.D. Cal. 2015) (rejecting defendant's designation of expert as rebuttal where "the sum and substance of Dr. McCune's Report, that The BarMaster did not work, speaks directly to Defendants' affirmative defenses and counterclaims, on which Defendants bear the burden of proof"); Morgan v. Commercial Union Assur. Cos., 606 F.2d 554, 556 (5th Cir. 1979) ("a defense witness whose purpose is to contradict an expected and anticipated portion of the plaintiff's case in chief can never be considered a 'rebuttal witness'").

[11] The clearest example of that in this case is the expert report of Dr. Hemilä, who opined on plaintiff's assertion of "commonality," an issue specific to class certification and not relevant to liability. See Hemilä ¶ 5.14

1  witnesses on the same topics.  Motion at 10-11.  Defendants further argue that to the extent Ernst

2  opined on a topic plaintiff did not previously disclose, he should be precluded from testifying

3  because plaintiff should have designated an expert on those topics at the initial designation stage.

4               1.  <u>Defendants' initial designations</u>

5      Defendants designated Dr. Ronald Eccles to address "[t]he study and scientific knowledge

6  of the common cold and common cold treatments."  ECF No. 36 ¶ 2.  Eccles' six-page, redacted

7  expert report consisted entirely of (1) a brief, one-paragraph description of the nature and

8  complexity of the common cold, (2) a brief, one-paragraph defense of his own study finding

9  Zicam to be effective, and (3) a three-page criticism, on methodological grounds, of a study not

10 finding Zicam to be effective.  ECF No. 36-2.

11     Defendants designated Dr. Harri Hemilä to address "[c]linical research and evaluation of

12 cold remedy treatments."  ECF No. 36, ¶ 1.  Hemilä's redacted report first criticizes reports

13 submitted by plaintiff's experts, Drs. Rose and Bausell, apparently referring to reports they

14 submitted in support of class certification.  Hemilä then opines on an issue relevant to class

15 certification, namely commonality.  Hemilä concludes that based on the available studies of

16 Zicam's efficacy (the same studies discussed by Dr. Eccles) and other evidence of the efficacy of

17 zinc, "there is no basis to assume . . . that the effect of Zicam zinc cold remedy products is so

18 small that the effect is insignificant on average and that consumers universally cannot benefit."

19 ECF No. 36-1, ¶ 5.16.

20     Defendants designated Dr. Peter A.G. Fisher to address "[h]omeopathy and homeopathic

21 medications."  ECF No. 36 ¶ 4.  Fisher's report (which is not redacted), opines at some length on

22 the theory behind homeopathy, its history, objections to its use, research on its effectiveness,

23 analogies to other areas such as nanotechnology, and recent discoveries in the field.  ECF No. 36-

24 4.  The report does not address the efficacy of zinc-based medications on the common cold.

25     Defendants designated Dr. Sabrina Sobel to address "[c]hemistry and experimental and

26 clinical research regarding zinc cold remedies."  ECF No. 36 ¶ 5.  Sobel's report (which is not

27 redacted), opined at length on several studies regarding zinc, the chemical properties of zinc, her

28 own theory about why zinc medications could be effective at treating the common cold, and the

1  deficiencies of reports filed by Bausell and Rose.  ECF No. 36-5.

2          2.  <u>Plaintiff's initial designations</u>

3  Plaintiff designated Drs. Bausell and Rose as experts, and disclosed their expert reports.
4  ECF No. 38.  Both experts opined on the same studies discussed by defendants' experts, one of
5  which defendants rely on to demonstrate the efficacy of their product and the other which fails to
6  support efficacy claims.  Bausell's redacted report focuses on the design and methodologies of the
7  competing studies, and also reviews research regarding the efficacy of zinc in treating colds.  He
8  concludes that Zicam is no more effective than a placebo.  Rose's redacted report discusses and
9  defends the study which failed to demonstrate any beneficial effect from use of Zicam, and
10 criticizes the study that purportedly demonstrates otherwise.  Rose also opined on homeopathy
11 and the placebo effect.  He criticized homeopathy as scientifically unsound, and opined that the
12 placebo effect may be amplified in relation to zinc products such a Zicam which have a
13 noticeable bad taste.

14         3.  <u>Plaintiff's Rebuttal designation – Dr. Ernst</u>

15 On July 8, 2015, plaintiff designated Ernst as a rebuttal expert to address the reports of
16 Drs. Eccles, Hemilä, Fisher, and Sobel.  ECF No. 50 at 2.

17 In his rebuttal report, Ernst criticizes the study that defendants rely on to demonstrate
18 efficacy.  His criticisms directly echo those in plaintiff's initial disclosures.  Like Rose, Ernst
19 addresses the connection between zinc's noticeable taste and operation of the placebo effect.
20 Ernst ¶ 50.  Like Bausell, he criticizes the study as being sponsored by Matrixx for marketing
21 purposes.  Ernst ¶ 51.  Like both Rose and Bausell, Ernst criticizes the study's use of statistical
22 analysis. Ernst ¶ 52.  In these several ways, the Ernst report is largely duplicative of plaintiff's
23 initial expert opinions and thus not proper rebuttal.  To the extent that Ernst launches new
24 criticisms of the efficacy study which are not responsive to Eccles, e.g. ¶ 53, the opinion similarly
25 does not constitute rebuttal.

26 With a single exception, nothing in Ernst's report is an actual rebuttal of anything that
27 Eccles said in his expert report.  Instead, Ernst principally criticizes the efficacy study itself, just
28 as Rose and Bausell did.  The only point on which Ernst directly rebuts an assertion made by

1    Eccles involves the respective number of sites used in the competing studies.[12]

2    Ernst then opines on the redacted report of Hemilä. Ernst discusses Hemilä's report in
3    light of a review which was previously discussed by Bausell. Ernst criticizes Hemilä for using
4    anecdotes rather than evidence. Ernst also states that Hemilä's report confirms his own opinion
5    regarding the ineffectiveness of the low dosage of zinc, another subject covered by Bausell. See
6    Ernst ¶¶ 62-65.

7    Ernst then opines on the expert report of Sobel. Ernst principally offers his interpretation
8    of Sobel's opinion, rather than contradicting or rebutting it. See Ernst ¶¶ 68 (Sobel "confirms"
9    Ernst's point that Zicam is not really homeopathic), 70 (Sobel makes it clear that these are
10   theories rather than accepted knowledge), 71 (even Sobel admits the zinc concentration is of
11   paramount importance). The closest Ernst comes to rebutting Sobel's report is in his discussion
12   of "p-values," Ernst ¶ 69, an area extensively covered in Bausell's report. See generally, Bausell
13   ¶¶ 22-23, 28-34.

14   Finally, Ernst opines on the report of Fisher. Fisher's report opines on homeopathy. Ernst
15   criticizes Fisher's reviews of clinical trials, his use of anecdotes rather than evidence, and argues
16   that the report is irrelevant because Zicam products are not homeopathic. Ernst ¶¶ 76-82.
17   Plaintiff's affirmative expert, Rose, opined on homeopathy. Thus, Ernst's report includes the
18   entirely new criticism that Zicam is not even based on homeopathy.

19   The overwhelming bulk of Ernst's rebuttal report is (1) merely descriptive of the reports it
20   is supposed to be rebutting, (2) covered in the reports of experts previously disclosed by plaintiff,
21   or (3) makes entirely new arguments on a topic previously covered in an affirmative expert's
22   report. For all these reasons, Ernst is not a proper rebuttal expert.

23           4. Harm

24   Defendants assert the same harm for Ernst as they do for Howlett, namely, that they will
25   have to depose him, and also, his testimony would need to be reviewed by defendants' other

---

[12] Ernst spends much of his report attempting to show that Eccles' deposition testimony contradicts assertions in his report. This allegedly contradictory deposition testimony is fodder for a cross-examination of Eccles on the witness stand, but it is not an instance of Ernst using his own expertise and opinions to rebut or contradict Eccles' report.

experts. Here, the harm is more plausible. In this case, Ernst is not a proper rebuttal expert at all. Therefore, allowing the designation will result in defendants' having to depose an additional expert even though they have already deposed plaintiff's affirmative experts on the same topics. Since Ernst principally covers ground already covered by plaintiff's affirmative experts, it is appropriate to simply strike him as a rebuttal expert, the only sanction defendants have requested.

### III.  CONCLUSION

For the foregoing reason, IT IS HEREBY ORDERED THAT defendants' motion to strike the supplemental expert designation (ECF No. 61), is GRANTED IN PART, and DENIED IN PART, as follows.

1. Defendants' motion to strike the supplemental designation of Dr. Howlett as a rebuttal expert is DENIED;

2. Defendants' motion to strike the supplemental designation of Dr. Ernst as a rebuttal expert is GRANTED.

DATED: September 8, 2015

_/s/ Allison Claire_
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE