1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10

11   YESENIA MELGAR,                              No.  2:14-cv-00160-MCE-AC

12              Plaintiff,

13        v.                                      **MEMORANDUM AND ORDER**

14   ZICAM LLC and MATRIXX
     INITIATIVES, INC.,
15
                Defendants.
16

17

18        This putative class action proceeds on Plaintiff Yesenia Melgar's ("Plaintiff") First

19   Amended Complaint ("FAC") against Zicam LLC and Matrixx Initiatives, Inc., (collectively

20   "Defendants").  Presently before the Court are:  (1) Plaintiff's Motion for Class

21   Certification (ECF No. 24); (2) Defendants' first Motion for Summary Judgment (ECF

22   No. 33); (3) Defendants' second Motion for Summary Judgment (ECF No. 69); and

23   (4) Defendants' Motions to Exclude Opinion Testimony of Plaintiff's Experts, Noel R.

24   Rose, M.D., Ph.D., and R. Barker Bausell, Ph.D (ECF Nos. 70, 71).  For the following

25   reasons, Plaintiff's Class Certification Motion and Defendants' first Motion for Summary

26   Judgment are GRANTED, and the remaining motions are DENIED.[1]

27   _____

28        [1] Because oral argument would not have been of material assistance, the Court ordered these
     matters submitted on the briefs.  E.D. Cal. Local R. 230(g).

                                            1

1

**BACKGROUND**[2]

2

3      On January 21, 2014, Plaintiff initiated this action challenging the efficacy of

4  Defendants' over-the-counter ("OTC") homeopathic[3] cold remedy Zicam.[4]  By way of the

5  instant litigation, Plaintiff alleges that Defendants "falsely represent[ed] . . . Zicam, 'The

6  Pre-Cold Medicine,' prevents, shortens, and reduces the severity of the symptoms of the

7  common cold."  FAC, ECF No. 10, at ¶ 1.  More specifically, Plaintiff contends:

8
> Defendants falsely represent on Pre-Cold Medicine product
> labels and in their nationwide advertising campaign that
9
> Zicam is 'clinically proven to shorten cold,' 'reduces duration
> and severity of the common cold,' and 'reduces severity of
10
> cold symptoms · sore throat · stuffy nose · sneezing ·
> coughing · nasal congestion.'

11

12  Id., ¶ 2.  "According to the sales pitch:  'That first sniffle, sneeze or throat tickle . . . you

13  have a Pre-Cold$^{TM}$, the first sign a full blown cold is coming.  Take Zicam® now –

14  clinically proven to shorten a cold.  GO FROM PRE-COLD$^{TM}$ TO NO COLD FASTER$^{TM}$.'"

15  Id.

16      Despite these claims, however, Plaintiff alleges that "Zicam Pre-Cold Products

17  have only highly diluted concentrations of the Products' so-called 'active ingredients' and

18  are nothing more than placebos."  Id.  To the contrary, Plaintiff maintains that "[t]he

19  dilution of the ingredients, zincum aceticum and zincum gluconicum, in Defendants'

20  Pre-Cold Medicine renders those ingredients completely inactive."  Id., ¶ 3.  "Since the

21

22      [2]  This litigation is proceeding pursuant to a protective order intended to prevent disclosure of
Defendants' confidential, proprietary, or private information.  ECF No. 17.  The Court therefore includes
23  below only those facts that are absolutely necessary for resolution of the pending motions.  All of those
facts are set forth in the unredacted portions of the parties' briefs and supporting documents and thus
24  have already been made part of the public record.

25      [3]  Plaintiff explains that "[u]nder the homeopathic 'principle' of 'ultra-dilution,' the more a substance
is diluted, the more potent that substance supposedly becomes at treating the symptom."  FAC at ¶ 43.
26  "'Ultra-dilution' is accomplished by shaking the solutions, termed "succession.'"  Id.

27      [4]  According to the FAC, use of the phrase "the Pre-Cold Medicine" includes reference to all of the
following products:  Zicam Pre-Cold RapidMelts Original, Zicam Pre-Cold RapidMelts Ultra, Zicam
28  Pre-Cold Oral Mist, Zicam Pre-Cold Ultra Crystals, Zicam Pre-Cold Lozenges, Zicam Pre-Cold Lozenges
Ultra, and Zicam Pre-Cold Chewables.  FAC at ¶ 1.

1   ingredients in the Pre-Cold Products have no pharmacological effect, the Products do

2   not prevent the common cold, shorten the cold or reduce its duration, or reduce the

3   severity of symptoms."  Id.

4        Plaintiff's FAC sets forth the following causes of action on behalf of both a

5   nationwide class and a California class:  (1) violation of the Magnuson-Moss Act, 15

6   U.S.C. § 2301, et seq.; (2) breach of express warranty; (3) breach of the implied

7   warranty of merchantability; (4) breach of the implied warranty of fitness for a particular

8   purpose; (5) violation of California's Consumer Legal Remedies Act ("CLRA"), California

9   Civil Code § 1750, et seq.; (6) violation of California's False Advertising Law, California

10  Business and Professions Code § 17500, et seq.; (7) violation of the "unlawful prong" of

11  California's Unfair Competition Law ("UCL"), California Business and Professions Code

12  § 17200, et seq.; (8) violation of the "fraudulent prong" of California's Unfair Competition

13  Law ("UCL"), California Business and Professions Code § 17200, et seq.; and

14  (9) violation of the "unfair prong" of California's Unfair Competition Law ("UCL"),

15  California Business and Professions Code § 17200, et seq.  By way of relief, Plaintiff

16  seeks declaratory and injunctive relief, compensatory and punitive damages, an order of

17  restitution and an award of costs and expenses.

18       Defendants have filed two motions for summary judgment.  The first, which is

19  unopposed, attacks Plaintiff's request for injunctive relief.  Defendants' second summary

20  judgment motion attacks the merits of the remainder of Plaintiff's claims.  Success on

21  that motion is largely dependent on the exclusion of Plaintiff's expert testimony.  To that

22  end, Defendants have moved this Court to exclude the testimony of Noel R. Rose, M.D.,

23  Ph.D., and R. Barker Bausell, Ph.D.  ECF Nos. 70, 71.

24  ///

25  ///

26  ///

27  ///

28  ///

3

1

**ANALYSIS**

2

3   **A.   Plaintiff's Motion for Class Certification**

4   Plaintiff moves the Court to certify the following two classes:

5           [1] Purchasers who bought RapidMelts Original, RapidMelts
            Ultra, Oral Mist, Ultra Crystals, Liqui-Lozenges, Lozenges
6           Ultra, and Chewables ("the Products") after February 15,
            2011 in California, Delaware, D.C., Kansas, Missouri, New
7           Jersey, Ohio, Utah, Virginia and West Virginia.

8           [2] All members of the Class who purchased the Products in
            California.
9

10  Pl.'s Reply, ECF No. 41, at 5-6.[5]  A court may certify a class if a plaintiff demonstrates

11  that all of the prerequisites of Federal Rule of Civil Procedure 23(a)[6] have been met and

12  that at least one of the requirements of Rule 23(b) have been met.  See Fed. R. Civ. P.

13  23; see also Valentino v. Carter-Wallace, Inc., 97 F.3d 1227, 1234 (9th Cir. 1996).

14  Before certifying a class, the trial court must conduct a "rigorous analysis" to determine

15  whether the party seeking certification has met the prerequisites of Rule 23.  Id. at 1233.

16  While the trial court has broad discretion to certify a class, its discretion must be

17  exercised within the framework of Rule 23.  Zinser v. Accufix Research Inst., Inc.,

18  253 F.3d 1180, 1186 (9th Cir. 2001).

19          Rule 23(a) provides four prerequisites that must be satisfied for class certification:

20  (1) the class must be so numerous that joinder of all members is impracticable,

21  (2) questions of law or fact exist that are common to the class, (3) the claims or defenses

22  of the representative parties are typical of the claims or defenses of the class, and

23  (4) the representative parties will fairly and adequately protect the interests of the class.

24  See Fed. R. Civ. P. 23(a).  Rule 23(b) requires a plaintiff to establish one of the

25  ───────────────────

26          [5]  Plaintiff narrowed the classes on whose behalf she seeks certification when she filed her Reply
    brief.  Cf. ECF No. 24, Pl.'s Mot. for Class Certification, at 2.  Accordingly, these definitions differ from
27  those Plaintiff proposed in her initial Motion.

28          [6]  Unless otherwise noted, all subsequent references to "Rule" are to the Federal Rules of Civil
    Procedure.

4

1   following:  (1) that there is a risk of substantial prejudice from separate actions; (2) that

2   declaratory or injunctive relief benefitting the class as a whole would be appropriate; or

3   (3) that common questions of law or fact predominate and the class action is superior to

4   other available methods of adjudication.  See Fed. R. Civ. P. 23(b).

5               **1.       The putative classes meet the requirements of Rule 23(a).**

6                       **a.       Numerosity**

7         The numerosity requirement of Rule 23(a)(1) is established if "the class is so

8   numerous that joinder of all members is impracticable."  The geographical disbursement

9   of class members outside of one district increases the impracticability of joinder, and

10  "when the class is large, numbers alone are dispositive."  Riordan v. Smith Barney,

11  113 F.R.D. 60, 62 (N.D. Ill. 1986).  At the same time, courts have been inclined to certify

12  classes of fairly modest size.  See, e.g., Jordan v. Los Angeles Cty., 669 F.2d 1311,

13  1319 (9th Cir. 1982) (willing to find numerosity for classes with thirty-nine, sixty-four, and

14  seventy-one people), vacated on other grounds, 459 U.S. 810 (1982).

15        Plaintiff notes that "[s]ince 2010, Defendants have sold approximately 25,349,439

16  units of the Pre-Cold Products to consumers across the United States."  ECF No. 24,

17  Pl.'s Mot. for Class Certification, at 11.  Although Plaintiff has not provided any specific

18  estimates as to the size of the proposed classes themselves, and without endorsing

19  such an oversight, the Court finds that the class is so numerous that joinder of all

20  members of both classes is impracticable.  See also Defs.' Opp'n, ECF No. 30, at 6

21  ("Defendants do not challenge satisfaction of Rule 23(a)(1) and (2).").

22                      **b.       Commonality**

23        Under Rule 23(a)(2), commonality is established if "there are questions of law or

24  fact common to the class."  This requirement is construed permissively and can be

25  satisfied upon a finding of "shared legal issues with divergent factual predicates . . . ."

26  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

27        Plaintiff has established that there are questions of law and fact common to the

28  classes.  Every class member has the same basic claim:  they purchased Defendants'

1   products because of Defendants' statements in advertisements and on the packaging of

2   the products, and those statements were false because the products are no more

3   effective than a placebo.  Resolution of those common claims depends on a critical

4   common question of fact:  whether Defendants' statements were in fact false.  As

5   Plaintiff explains, answering the common question of fact "will resolve issues central to

6   the validity of Plaintiff's and class members' claims in a single stroke[.]"  Pl.'s Mot. for

7   Class Certification, ECF No. 24 at 12.  Accordingly, the Court finds Plaintiff has

8   established that there are questions of law and fact common to the classes.  See also

9   Defs.' Opp'n, ECF No. 30, at 6 ("Defendants do not challenge satisfaction of Rule

10   23(a)(1) and (2).").

11                              c.      **Typicality**

12          Typicality under Rule 23(a)(3) is satisfied if "the claims or defenses of the

13   representative parties are typical of the claims or defenses of the class."  Typicality does

14   not require the claims to be identical.  Hanlon, 150 F.3d at 1020.  Rather, the Ninth

15   Circuit has found typicality if the requisite claims "'share a common issue of law or

16   fact' . . . and are 'sufficiently parallel to insure a vigorous and full presentation of all

17   claims for relief.'"  Cal. Rural Legal Assistance, Inc. v. Legal Servs. Corp., 917 F.2d

18   1171, 1175 (9th Cir. 1990) (citations omitted), amended, 937 F.2d 465 (9th Cir. 1991).

19          With respect to typicality, Plaintiff notes that she is a member of the proposed

20   classes because she purchased RapidMelts in Davis, California, in 2012 based on

21   Defendants' allegedly false statements on the packaging.  Defendants, on the other

22   hand, emphasize Plaintiff's deposition testimony, in which Plaintiff conceded that she

23   never saw the advertisements (as opposed to the packaging) described in the operative

24   complaint and that she did not interpret the logo on the packaging as other members of

25   the class purportedly did.  In addition, as to the efficacy claims, Defendants suggest that

26   Plaintiff is "an outlier among the classes" because "[t]he vast majority of purchasers are

27   satisfied with the product[.]"  Defs.' Opp'n, ECF No. 30, at 15.

28   ///

1    The Court finds that Plaintiff's claims are typical of the proposed classes.  Plaintiff

2    contends that she purchased one of Defendants' products in California based on

3    Defendants' misrepresentations.  That basic claim is sufficiently parallel, and shares

4    common issues of law and fact, to that of the proposed classes of fellow purchasers.

5    Defendants' arguments to the contrary essentially boil down to the position that Plaintiff's

6    specific claims are not <u>identical</u> to the claims of other class members.  That argument,

7    however, is not persuasive.  As noted above, Rule 23(a)(3) does not require identical

8    claims; rather, it requires only that the representative plaintiff's claim be typical of the

9    class.  Furthermore, Defendants' argument that Plaintiff's dissatisfaction with their

10   products is an anomaly among purchasers fails to account for the fact that class

11   members may not be aware of Plaintiff's evidence suggesting Defendant's products are

12   nothing more than placebos; the placebo effect ensures that purchasers will think they're

13   satisfied.  Regardless, given the common issues of law and fact between Plaintiff's

14   claims and those of the putative class, Plaintiff has satisfied the typicality requirement of

15   Rule 23(a)(3).

16                          **d.    Adequacy of Representation**

17   The last requirement of Rule 23(a) is that "the representative parties will fairly and

18   adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  In <u>Hanlon</u>, the

19   Ninth Circuit identified two issues for determining the adequacy of representation:

20   (1) whether the named plaintiffs and their counsel have any conflicts of interest with

21   other class members, and (2) whether the named plaintiffs and their counsel will

22   "prosecute the action vigorously on behalf of the class."  150 F.3d at 1020.

23   Defendants challenge the adequacy of Plaintiff's representation, but not the

24   adequacy of class counsel.  The Court first finds that class counsel will fairly and

25   adequately protect the interests of the class.  <u>See generally</u> ECF No. 21 (Memorandum

26   and Order appointing interim class counsel).

27   As to Plaintiff's representation of the class, Defendants point to the following

28   factors in support of their attack on Plaintiff:

1
2
3
4

> Plaintiff's credibility on key issues, her close relationship with class counsel, her lack of involvement and ceding of the reigns to class counsel, her standing problems and her willingness to subordinate the interests of the class members to enhance counsel's potential recovery and settlement leverage . . . .

5  Defs.' Opp'n, ECF No. 30, at 18.

6          Defendants' arguments are not persuasive.  Defendants can only speculate as to

7  how Plaintiff's credibility will adversely affects her ability to protect the interests of the

8  class.  Moreover, as to the "close relationship" between Plaintiff and one of the attorneys

9  representing her, such a relationship could arguably enhance the quality of the

10 representation that class counsel provides (and best further the interest of the class).

11 The Court also finds that the "close relationship" label is an overstatement.  Plaintiff and

12 the attorney in question were apparently law school classmates and remain friends.

13 That relationship does not preclude certification of the proposed classes.  Cf. Drimmer v.

14 WD-40 Co., 343 F. App'x 219, 221 (9th Cir. 2009) (finding district court did not abuse its

15 discretion in denying class certification based on "the combination of a personal

16 relationship [and] landlord-tenant relationship" between the representative plaintiff and

17 class counsel); London v. Wal-Mart Stores, Inc., 340 F.3d 1246, 1255 (11th Cir. 2003)

18 ("we conclude that the district court abused its discretion by ignoring London and Ader's

19 significant personal and financial ties.").  Lastly, Defendants' allegations regarding

20 Plaintiff's "standing problems" and "willingness to subordinate the interests of the class

21 members" are forced, unsubstantiated and not compelling.  The Court finds that Plaintiff,

22 who has a claim typical of the class, will fairly and adequately protect the interests of the

23 proposed classes.

24          Accordingly, Plaintiff has satisfied all four elements of Rule 23(a).

25          **2.      The putative class meets the requirements of Rule 23(b).**

26          The Court also finds that certification is proper under Rule 23(b)(3), which permits

27 class certification when (1) common questions of law and fact predominate over any

28 ///

1    individual claims and (2) a class action is the superior method to fairly and efficiently

2    adjudicate the matter.

3                              a.    **Predominance**

4          The "predominance inquiry tests whether proposed classes are sufficiently

5    cohesive to warrant adjudication by representation." Amchem Prods., Inc. v. Windsor,

6    521 U.S. 591, 623 (1997). "This calls upon courts to give careful scrutiny to the relation

7    between common and individual questions in a case." Tyson Foods, Inc. v.

8    Bouaphakeo, No. 14-1146, ___ U.S. ___, 2016 WL 1092414 (Mar. 22, 2016).

9               An individual question is one where members of a proposed
                class will need to present evidence that varies from member
10              to member, while a common question is one where the same
                evidence will suffice for each member to make a prima facie
11              showing [or] the issue is susceptible to generalized, class-
                wide proof.   The predominance inquiry asks whether the
12              common, aggregation-enabling, issues in the case are more
                prevalent or important than the non-common, aggregation-
13              defeating, individual issues.

14   Id. at *7 (citations and internal quotation marks omitted).

15         Here, the common question is whether Defendants' statements in its

16   advertisements and on the packaging of its products are accurate and whether the

17   products are effective.  The answer to that common question is "more prevalent or

18   important" than the individual issues, which in this case include the appropriate

19   calculation of damages or the potential variance in the specific effect of the alleged

20   misrepresentations on individual class members.  The Court finds that the common

21   questions in this case predominate over the individual questions.  See also id. at *7

22   ("When 'one or more of the central issues in the action are common to the class and can

23   be said to predominate, the action may be considered proper under Rule 23(b)(3) even

24   though other important matters will have to be tried separately . . . .'") (quoting 7AA C.

25   Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778, pp. 123-24 (3d ed.

26   2005)).

27   ///

28   ///

1

### b.   Superiority of Class Action

2    Plaintiff must also establish that the proposed class action is the superior method

3    of resolving the dispute in comparison to available alternatives.  "A class action is the

4    superior method for managing litigation if no realistic alternative exists."  <u>Valentino v.</u>

5    <u>Carter-Wallace, Inc.</u>, 97 F.3d 1227, 1234-35 (9th Cir. 1996).  The Ninth Circuit has

6    recognized that a class action is a plaintiff's only realistic method for recovery if there are

7    multiple claims against the same defendant for relatively small sums.  <u>Local Joint Exec.</u>

8    <u>Bd. Culinary/Bartender Trust Fund v. Las Vegas Sands, Inc.</u>, 244 F.3d 1152, 1163 (9th

9    Cir. 2001).

10    The Court finds that this class action is superior to alternative methods of

11    adjudication.  As Plaintiff notes, Defendants' products cost between $10 and $13;

12    without a class action, most class members will not expend either the time or the

13    resources to attempt to recover for Defendants' alleged wrongdoing. Pl.'s Mot. for Class

14    Certification, ECF No. 24, at 16.  The Court agrees that "[b]ecause it would not be

15    economically feasible to obtain relief for each class members given the small size of

16    each class member's claim and the alternative for class members is no recovery, a class

17    action is unquestionably the superior method of adjudication."  <u>Id.</u> at 16-17.

18    Defendants' arguments to the contrary are not persuasive.  Defendants again

19    suggest that only a small percentage of the class members are actually dissatisfied with

20    Defendants' products, and that there are refunds available to those purchasers.  As

21    previously noted, however, Defendants fail to appreciate that many of the "high

22    percentage of class members" currently satisfied with Defendants' products might

23    become dissatisfied upon learning of Plaintiff's evidence suggesting that the products

24    are nothing more than placebos.  Furthermore, Defendants have not established that the

25    "availability of refunds" to purchasers is superior to a class action.  <u>See</u> <u>Forcellati v.</u>

26    <u>Hyland's Inc.</u>, No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *12 (C.D. Cal.

27    Apr. 9, 2014) (explaining that "Defendants' refund program does not defeat superiority"

28    ///

1  because "it does not comport with the plain language of Rule 23, which directs courts to

2  consider other available methods of adjudication.").

3       The same conclusion is reached after consideration of the superiority factors set

4  forth in Rule 23(b)(3).  First, because it is likely that each individual class member could

5  only pursue relatively small claims, and because they wish to remain anonymous, "class

6  members have no particular interest in individually controlling the prosecution of

7  separate actions."  Rule 23(b)(3)(A); see also Zinser v. Accufix Research Inst., Inc.,

8  253 F.3d 1180, 1190 (9th Cir. 1991) ("Where damages suffered by each putative class

9  member are not large, this factor weighs in favor of certifying a class action.").  When the

10  individual claims of class members are small, the class action "facilitates the spreading

11  of the litigation costs among the numerous injured parties" and encourages recovery for

12  unlawful activity.  See In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 534 (3rd Cir.

13  2004).

14       The second relevant factor under Rule 23(b)(3) is whether, and to what extent,

15  other class members have begun litigation concerning the controversy.  Rule

16  23(b)(3)(B).  This factor counsels against certification if, despite the class action, a

17  multiplicity of suits will continue through judicial proceedings.  Zinser, 253 F.3d at 1191

18  (citing to 7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice

19  and Procedure § 1780 at 568-70 (2d ed. 1986)).  Neither the parties nor the Court are

20  aware of any other similar suit raising similar issues.  Accordingly, the Rule 23(b)(3)(B)

21  concern regarding the multiplicity of litigation does not weigh against certification.

22       Under Rule 23(b)(3)(C), the Court may also consider "the desirability or

23  undesirability of concentrating the litigation of the claims in a particular forum."  There

24  appears to be no reason why concentrating the litigation in this Court would be

25  undesirable considering the substance of the challenge under California law.  Lastly,

26  under Rule 23(b)(3)(D), the Court may consider "likely difficulties in managing a class

27  action."  In this case, the overwhelming benefits that inhere in litigating this matter as a

28  class action outweigh any difficulties that might arise in the management of the litigation.

1    Thus, the proposed class action is the superior method of resolving the dispute, and the

2    requirements of Rule 23(b)(3) are met.

3              **3.      Ascertainability**

4         Plaintiff and Defendants have also briefed the issue of "ascertainability."  While

5    the parties seem to agree that ascertainability is a concept that this Court must examine

6    at this stage of the litigation, they disagree as to whether it bars certification of Plaintiff's

7    proposed classes.  The Court finds that the proposed classes are sufficiently

8    ascertainable, such that certification is appropriate.  The proposed classes include

9    individuals that purchased certain products (RapidMelts Original, RapidMelts Ultra, Oral

10   Mist, Ultra Crystals, Liqui-Lozenges, Lozenges Ultra and Chewables), in certain

11   jurisdictions (nine states and the District of Columbia), after a certain date (February 15,

12   2011).  Because the objective class definitions allow prospective plaintiffs to determine

13   whether they are class members with a potential right to recover, the class is

14   ascertainable.

15        The proposed classes satisfy Rule 23(a) and Rule 23(b)(3) and are ascertainable.

16   Plaintiff's Motion for Class Certification (ECF No. 24) is therefore GRANTED.

17        **B.     Defendants' Motions to Exclude Plaintiff's Experts**

18        Next, Defendants seek to exclude "certain opinion testimony" from two of

19   Plaintiff's designated experts, R. Barker Bausell, Ph.D ("Bausell"), and Noel R. Rose,

20   M.D., Ph.D ("Rose").  ECF Nos. 70, 71.[7]  For the reasons that follow, Defendants'

21   Motions to Exclude are DENIED.

22        Bausell's and Rose's testimony is admissible under Federal Rule of Evidence

23   702, which states:

24              A witness who is qualified as an expert by knowledge, skill,
              experience, training, or education may testify in the form of
25              an opinion or otherwise if:

26   ///

27   _____

28        [7]  Plaintiff opposed the Motions to Exclude (ECF No. 96), and Defendants filed replies to Plaintiff's
     Opposition (ECF Nos. 110, 111).

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Under Federal Rule of Evidence 702, "the trial court must assure that the expert testimony 'both rests on a reliable foundation and is relevant to the task at hand.'" Primiano v. Cook, 598 F.3d 558, 564 (9th Cir. 2010) (quoting Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 597 (1993)). "Expert opinion testimony is relevant if the knowledge underlying it has a valid connection to the pertinent inquiry. And it is reliable if the knowledge underlying it has a reliable basis in the knowledge and experience of the relevant discipline." Primiano, 598 F.3d at 565 (citation and internal quotation marks omitted). "Shaky but admissible evidence is to be attacked by cross examination, contrary evidence, and attention to the burden of proof, not exclusion." Id. at 564 (citation omitted).

Basically, the judge is supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable. The district court is not tasked with deciding whether the expert is right or wrong, just whether his testimony has substance such that it would be helpful to a jury.

Alaska Rent-A-Car, Inc. v. Avis Budget Grp., 738 F.3d 960, 969-70 (9th Cir. 2013).

Bausell and Rose are qualified as experts, and their opinions are relevant, sufficiently reliable, and will assist the trier of fact in understanding a critical fact in the case (i.e., whether Defendants' products are effective). Bausell, a biostatistician with a doctorate in Educational Research and Evaluation, believes that Defendants' products

///

///

///

13

1   are "no more effective than placebo."  Pl.'s Opp'n, ECF No. 96, at 1.[8]  That opinion is

2   based on his evaluation of the statistical analysis performed in studies that Defendants

3   conducted in 2007 and 2013, as well as his review of other studies on zinc and the

4   common cold.  Id.  Rose is a medical doctor and professor of immunology at Johns

5   Hopkins University; he has published more than 800 articles, reviews and chapters in

6   medical and scientific literature.  Id. at 2.  Like Bausell, Rose believes Defendants'

7   products are "not efficacious beyond the placebo effect," an opinion that is based on his

8   review of studies that Defendants conducted in 2007 and 2013 and other studies on zinc

9   and the common cold.  Id. at 1.  The Court finds that Bausell's and Rose's opinions are

10   the product of reliable principles and methods, specifically an analytical review of

11   relevant studies (and, in Bausell's case, performing statistical analysis of the data

12   underlying those studies).  Because the opinions of Bausell and Rose rest on a reliable

13   foundation and are relevant, their testimony is admissible under Federal Rule of

14   Evidence 702.

15       Defendants' arguments do not mandate a contrary conclusion.  Defendants first

16   suggest that neither Bausell nor Rose qualify as experts under Federal Rule of Evidence

17   702 because they lack experience in treating, studying, or testing colds, cold remedies,

18   Defendants' products, or the active ingredient in Defendants' products.   While their lack

19   of such experience is relevant, it does not preclude Bausell or Rose—who are qualified

20   as experts by way of their knowledge, skill, experience, training, and education—from

21   testifying in this case.  And, of course, a ruling that Bausell's and Rose's opinions are

22   admissible does not preclude Defendants from raising their lack of direct experience

23   later in this litigation.  See Primiano, 598 F.3d at 564 ("Shaky but admissible evidence is

24   ///

---

25       [8]  In moving to exclude Bausell's testimony, Defendants differentiate between Bausell's "zinc
26   efficacy" opinion (i.e., that only total daily doses of oral zinc equal to or greater than seventy-five milligrams
    are effective to reduce the duration of the common cold) and his "ultimate opinion" that Defendants'
    studies fail to adequately demonstrate that Defendants' products are effective.  Defs.' Mot. to Exclude
27   Bausell, ECF No. 71, at 1-2.  The Court notes that both of these opinions, which are also relevant and
    admissible under Federal Rule of Evidence 702, are different from Bausell's conclusion that Defendants'
28   products are no more effective than a placebo.

1  to be attacked by cross examination, contrary evidence, and attention to the burden of

2  proof, not exclusion").

3      Defendants' other arguments simply nitpick at Bausell's and Rose's analytical

4  review of studies.  For example, Defendants complain that the experts' review included a

5  2013 review paper that "has been sharply criticized as flawed" and was subsequently

6  "withdrawn by the publishing journal."  Defs.' Mot. to Exclude Bausell, ECF No. 71, at 1.

7  But the experts' review was not limited to that 2013 review paper.  See, e.g., id. at 2

8  (paraphrasing Bausell's ultimate opinion:  "that the published literature and [Defendants']

9  two unpublished studies fail to support efficacy of the Zicam products . . . .") (emphasis

10  added).  Moreover, to the extent that Defendants fault the experts for "substituting the

11  analysis of the [2013 review paper's authors] for [their] own," ECF No. 70 at 7,

12  Defendants fail to appreciate a critical distinction between lay and expert witnesses.

13  See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 592 (1993) ("[A]n

14  expert is permitted wide latitude to offer opinions, including those that are not based on

15  firsthand knowledge or observation.").

16      The Court does note that Defendants' Motions to Exclude contain several

17  legitimate criticisms of Bausell and Rose.  See, e.g., Defs.' Mot. to Exclude Rose, ECF

18  No. 70, at 7 (suggesting Bausell and Rose should have "conduct[ed] a thorough,

19  independent systematic review of the clinical studies in the published scientific

20  literature.").  However, those criticisms do not render the experts' opinions inadmissible

21  under Federal Rule of Evidence 702.  See Primiano, 598 F.3d at 564 ("Shaky but

22  admissible evidence is to be attacked by cross examination, contrary evidence, and

23  attention to the burden of proof, not exclusion.").   Although they may be impeachable,

24  the opinions of Bausell and Rose are sufficiently reliable and would be helpful to a jury.

25  Alaska Rent-A-Car, Inc., 738 F.3d at 969-70.  Accordingly, Defendants' Motions to

26  Exclude the Opinion Testimony of Bausell and Rose (ECF Nos. 70, 71) are DENIED.

27  ///

28  ///

1

### C.  Defendants' Motions for Summary Judgment

Defendants' first motion for summary judgment seeks judgment on Plaintiff's request for injunctive relief.  Plaintiff filed a Statement of Non-Opposition in response to that motion.  ECF No. 51.  Accordingly, Defendants' first Motion for Summary Judgment (ECF No. 33) is GRANTED as unopposed.

Defendants' second motion for summary judgment attacks the merits of the remainder of Plaintiff's claims, which Defendants contend turn on three core factual claims:

> (1) That Defendants' advertising claim that the Zicam Oral Cold Remedy Products at issue are capable of reducing the duration and severity of a cold if taken at the first sign of cold symptoms is false or misleading (hereafter "therapeutic efficacy claim");

> (2) that through certain advertisements depicting a character described as the "Cold Monster" Defendants make a false or misleading implied advertising claim that the Zicam Oral Cold Remedy Products at issue are capable of preventing colds from occurring (hereafter "cold monster prophylactic claim"); and

> (3) that through the use of the term "pre-cold" in advertisements and on product packaging Defendants make a false or misleading implied advertising claim that the Zicam Oral Cold Remedy Products at issue are capable of preventing colds from occurring (hereafter "pre-cold prophylactic claim").

Defs.' Mot. for Summ. J., ECF No. 69, at 1.  Defendants argue that, based on the undisputed facts, they are entitled to judgment as a matter of law on each of these claims as follows:

> (1) The therapeutic efficacy claim fails as a matter of law because the expert testimony adduced by Plaintiff through her experts amounts to a contention that therapeutic efficacy is not adequately supported, and liability under this theory is barred by California law pursuant to California Business and Professions Code 17508 and interpretive case law, such as National Council Against Health Fraud, Inc. v. King Bio Pharm. Corp., 107 Cal. App. 4th 1336 (2003).

> (2) The therapeutic efficacy claim also fails as a matter of law because the testimony of Plaintiff's experts (i) is inadmissible under Rule 702 (experts Drs. Bausell and Rose), (ii) improper rebuttal (Dr. Ernst), as set forth in Defendants' pending

16

1
2
3

> Motion to Strike (Ernst) and Motions to Exclude (Drs. Bausell and Rose); in addition, the claim fails because (iii) Plaintiff's evidence is insufficient to raise a genuine issue of material fact that the therapeutic efficacy claim is provably false.

4
5
6

> (3) The cold monster prophylactic claim fails as a matter of law because there is no evidence generating a genuine issue of material fact that a reasonable consumer would infer that the product prevents colds, and the advertisement is not false or misleading as a matter of law, and

7
8
9

> (4) The pre-cold prophylactic claim fails as a matter of law because there is no genuine issue of material fact that a reasonable consumer would infer that the product prevents colds, and the advertisement is not false or misleading as a matter of law.

10  Id. at 1-2. As explained below, factual issues preclude summary judgment across the

11  board.

12            **1.    Standard**

13        The Federal Rules of Civil Procedure provide for summary judgment when "the

14  movant shows that there is no genuine dispute as to any material fact and the movant is

15  entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v.

16  Catrett, 477 U.S. 317, 322 (1986).

17        In a summary judgment motion, the moving party always bears the initial

18  responsibility of informing the court of the basis for the motion and identifying the

19  portions in the record "which it believes demonstrate the absence of a genuine issue of

20  material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial

21  responsibility, the burden then shifts to the opposing party to establish that a genuine

22  issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith

23  Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S.

24  253, 288-89 (1968).

25        In attempting to establish the existence or non-existence of a genuine factual

26  dispute, the party must support its assertion by "citing to particular parts of materials in

27  the record, including depositions, documents, electronically stored information,

28  affidavits[,] or declarations . . . or other materials; or showing that the materials cited do

1    not establish the absence or presence of a genuine dispute, or that an adverse party

2    cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).  The

3    opposing party must demonstrate that the fact in contention is material, i.e., a fact that

4    might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby,

5    Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and

6    Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987).  The opposing party must also

7    demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is

8    such that a reasonable jury could return a verdict for the nonmoving party." Anderson,

9    477 U.S. at 248.

10        In resolving a summary judgment motion, the evidence of the opposing party is to

11   be believed, and all reasonable inferences that may be drawn from the facts placed

12   before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at

13   255.  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's

14   obligation to produce a factual predicate from which the inference may be drawn.

15   Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd,

16   810 F.2d 898 (9th Cir. 1987).

17              **2.    Plaintiff's therapeutic efficacy claim is not barred under
                       California law.**
18

19   Defendants first contend that that Plaintiff's therapeutic efficacy claim is based on the

20   alleged lack of substantiation for Defendants' advertising claims and is thus barred under

21   California law.  The crux of Defendants' argument is that there is no admissible evidence

22   showing that Zicam does not work; rather, at best the evidence in the record supports

23   only the finding that Zicam's effectiveness has not been adequately demonstrated.

24   Plaintiff disagrees, of course, pointing to evidence that studies have shown that

25   "concentrations of zinc similar to the amount provided by the Products . . . show no

26   significant difference from placebo."  Pl.'s Opp. at 1 (citing Pl.'s SSUF 8-9).

27

28   ///

1    Defendants' emphasis on King Bio is misplaced and their suggestion that Plaintiff

2    is simply alleging a lack of substantiation is inaccurate.  This case is distinguishable from

3    King Bio, in which the plaintiffs "proceeded on the theory that there [was] no scientific

4    basis for the advertised efficacy of King Bio's products" and "performed no tests to

5    determine the efficacy of King Bio's products and presented no anecdotal evidence."

6    107 Cal. App. 4th at 1341.  As such, the California Court of Appeal's rejection of those

7    plaintiffs' request to "shift the burden" of proving a products' efficacy in false advertising

8    cases is not applicable to this case.  Id. at 1342.  Instead, this Court adopts the

9    reasoning of the district court in Forcellati:

10
11    > Unlike the plaintiff in King Bio, Plaintiffs are not arguing that
> Defendants have the burden to prove that their products are
> effective or that they must conduct tests showing their
> products are effective; Plaintiffs argue that they can
12   > affirmatively prove that the Class Products do nothing.
> Plaintiffs' argument relies on studies and expert evidence–but
13   > that is appropriate under King Bio.  The state court in King
> Bio explicitly acknowledged that plaintiffs may, without
14   > resorting to any impermissible substantiation argument,
> establish "[t]he falsity of [ ] advertising claims . . . by testing,
15   > scientific literature, or anecdotal evidence."

16    Forcellati v. Hyland's Inc., No. CV 12-1983-GHK (MRWx), 2014 WL 1410264, at *14

17    (C.D. Cal. Apr. 9, 2014) (quoting King Bio, 107 Cal. App. 4th at 1348).

18    Similarly, here Plaintiff maintains that she can affirmatively prove Defendants'

19    products are no more effective than a placebo (i.e., that they do nothing).  The evidence

20    that Plaintiff offers in support of that claim, such as the opinions of Bausell and Rose, are

21    sufficient to create a genuine issue of material fact.  Thus, Defendants' second Motion

22    for Summary Judgment is DENIED to the extent it mischaracterizes Plaintiff's therapeutic

23    efficacy claim as an allegation of lack of substantiation and seeks judgment on that

24    claim.

25    **3.    There is a genuine issue of material fact as to the therapeutic
        efficacy claim.**
26

27    Defendants' second challenge to the therapeutic efficacy claim also fails.  As

28    explained above, the testimony of Bausell and Rose is admissible under Federal Rule of

19

1   Evidence 702.  That testimony is also sufficient to raise a genuine issue of material fact

2   as to the therapeutic efficacy claim.  Specifically, both Bausell and Rose opine that

3   Defendants' products are no more effective than placebos; a jury crediting that evidence

4   could find in favor of the Plaintiff and the classes on the therapeutic efficacy claim.

5   Thus, Defendants' Motion for Summary Judgment is DENIED as to Plaintiff's therapeutic

6   efficacy claim.

7            **4.      There is a genuine issue of material fact as to the cold
                       prophylactic claims.**[9]

8

9        Defendants argue that they are entitled to summary judgment on Plaintiff's implied

10  prophylactic claims because Plaintiff has not produced sufficient evidence to establish

11  that a reasonable consumer would think Defendants' products prevent the cold.

12  Defendants' argument is not persuasive, as Plaintiff has produced sufficient evidence

13  showing "a likelihood of confounding an appreciable number of reasonably prudent

14  purchasers exercising ordinary care."  Clemens v. DaimlerChrysler Corp., 534 F.3d

15  1017, 1026 (9th Cir. 2008) (quoting Brockey v. Moore, 107 Cal. App. 4th 86, 99

16  (2003)).[10]

17       The Court first notes that the term "Pre-Cold," at least in isolation, suggests that

18  the product prevents the cold.  Furthermore, as Plaintiffs note, Defendants own

19  consumer research indicates consumers of Defendants' products "have shortening cold,

20  reducing severity and preventing cold in mind when they purchase it."  Pl.'s Opp'n, ECF

21  No. 99, at 20.  Plaintiff's evidence also suggests that consumers believed the products

22  would reduce both the duration of a cold and the severity of the symptoms.  See Decl. of

23  Yesenia Melgar, ECF No. 99-4 at 15:3-8 ("What I read on the label made me to decide

24  to purchase Zicam," and the label indicated that "it was clinically proven to reduce the

25  _____

26       [9]   For the sake of efficiency, the Court refers to both the "cold monster prophylactic" claim and the
         "pre-cold prophylactic" claim as the "cold prophylactic claims" and analyzes them together.

27       [10]  See also Clemens, 534 F.3d at 1026 ("Surveys and expert testimony regarding consumer
         assumptions and expectations may be offered but are not required; anecdotal evidence may suffice,
28       although 'a few isolated examples' of actual deception are insufficient.")

1   duration of my cold and . . . the severity of my symptoms."). The Court finds that the

2   Plaintiff has produced sufficient evidence to survive summary judgment on her cold

3   prophylactic claims. Accordingly, Defendants' Motion for Summary Judgment is

4   DENIED as to Plaintiff's cold prophylactic claims as well.

5

6                                         **CONCLUSION**

7

8         Plaintiff's Motion for Class Certification (ECF No. 24) and Defendants' first Motion

9   for Summary Judgment (ECF No. 33) are GRANTED. Defendants' second Motion for

10  Summary Judgment (ECF No. 69) and Motions to Exclude Opinion Testimony of

11  Plaintiff's Experts, Noel R. Rose, M.D., Ph.D., and R. Barker Bausell, Ph.D., (ECF

12  Nos. 70, 71) are DENIED.

13        IT IS SO ORDERED.

14  Dated: March 30, 2016

15

16

17  _____

18  MORRISON C. ENGLAND, JR., CHIEF JUDGE
    UNITED STATES DISTRICT COURT

19

20

21

22

23

24

25

26

27

28