1

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)

2

L. Timothy Fisher (State Bar No. 191626)
Thomas A. Reyda (State Bar No. 312632)

3

1990 North California Blvd., Suite 940
Walnut Creek, CA 94596

4

Telephone: (925) 300-4455
Facsimile: (925) 407-2700

5

E-Mail:   scott@bursor.com
          ltfisher@bursor.com

6

          treyda@bursor.com

7

*Class Counsel*

8

9

## UNITED STATES DISTRICT COURT

10

## EASTERN DISTRICT OF CALIFORNIA

11

12

YESENIA MELGAR, on Behalf of Herself and
all Others Similarly Situated,

Case No.  2:14-cv-00160-MCE-AC

13

                                        Plaintiff,

Hon. Morrison C. England, Jr.

14

            v.

**PLAINTIFF'S MOTIONS IN LIMINE**

15

Date:  January 25, 2018
Time:  2:00 p.m.

16

ZICAM LLC and MATRIXX INITIATIVES,
INC.

Courtroom: 7

17

                                        Defendants.

18

19

20

21

22

### REDACTED

23

### PURSUANT TO JUNE 5, 2014 STIPULATED PROTECTIVE ORDER

24

25

26

27

28

**TABLE OF CONTENTS**

**PAGE**

I.      PLAINTIFF'S MIL NO. 1: TO EXCLUDE 72 IRRELEVANT HEARSAY PUBLICATIONS ..................................................................................................1

II.     PLAINTIFF'S MIL NO. 2: TO EXCLUDE TESTIMONY OR EVIDENCE CONCERNING SATISFIED CUSTOMERS ...........................................................2

III.    PLAINTIFF'S MIL NO. 3: TO EXCLUDE DEFENDANTS' EXPERT HARRI J. HEMILÄ ...................................................................................................5

IV.     PLAINTIFF'S MIL NO. 4: TO EXCLUDE DEFENDANTS' EXPERT RONALD ECCLES ......................................................................................................6

V.      PLAINTIFF'S MIL NO. 5: TO EXCLUDE DEFENDANTS' EXPERT PETER A.G. FISHER ..................................................................................................8

VI.     PLAINTIFF'S MIL NO. 6: TO EXCLUDE DEFENDANTS' EXPERT SABRINA SOBEL ...................................................................................................10

VII.    PLAINTIFF'S MIL NO. 7: TO EXCLUDE DEFENDANTS' EXPERT DAVID STEWART ..................................................................................................11

VIII.   PLAINTIFF'S MIL NO. 8: TO EXCLUDE EVIDENCE OF THE FTC INVESTIGATION, AND THE NAD AND NARB PROCEEDINGS ..............................13

# TABLE OF AUTHORITIES

**PAGE**

**CASES**

*Daubert v. Merrell Dow Pharm., Inc.*,
   43 F.3d 1311 (9th Cir. 1995) ................................................................................ 11

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
   509 U.S. 579 (1993) ................................................................................. passim

*Ellis v. Costco Wholesale Corp.*,
   657 F.3d 970 (9th Cir. 2011) .................................................................................. 9

*Estate of Barabin v. AstenJohnson, Inc.*,
   740 F.3d 457 (9th Cir. 2014) ................................................................................ 11

*F.T.C. v. Pantron I Corp.*,
   33 F.3d 1088 (9th Cir. 1994) ........................................................................ 3, 4, 5

*F.T.C. v. QT, Inc.*,
   512 F.3d 858 (7th Cir. 2008) ................................................................................... 3

*Federal Trade Commission v. Health Formulas, LLC*,
   2015 WL 2130504 (D. Nev. May 6, 2015) ............................................................. 4

*Forcellati v. Hyland's, Inc.*,
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) .......................................................... 5

*Gilmore v. Augustus*,
   2015 WL 3419172 (E.D. Cal. May 27, 2015) ...................................................... 17

*Humphreys v. Regents of the Univ. of Cal.*,
   2006 WL 1867713 (N.D. Cal. July 6, 2006) ........................................................ 12

*In re Neurontin Marketing and Sales Practices Litig.*,
   712 F.3d 21 (1st Cir. 2013) ........................................................................... 3, 4, 5

*In re Rezulin Prods. Liab. Litig.*,
   309 F. Supp. 2d 531 (S.D.N.Y. 2004) .................................................................. 12

*Kumho Tire Co. v. Carmichael*,
   526 U.S. 137 (1999) ................................................................................................. 9

*Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*,
   290 F. Supp. 2d 1083 (C.D. Cal. 2003) ......................................................... 13, 15

*Orr v. Bank of Am., NT & SA*,
   285 F.3d 764 (9th Cir. 2002) ................................................................................ 16

*Padilla v. Terhune*,
   309 F.3d 614 (9th Cir. 2002) ................................................................................ 16

*Summit Tech., Inc. v. High-Line Med. Instruments Co.*,
   922 F. Supp. 299 (C.D. Cal. 1996) ....................................................................... 15

*U.S. Gypsum Co. v. Lafarge N. Am. Inc.*,
670 F. Supp. 2d 748 (N.D. Ill. 2009) ........................................................................ 13

*United States v. An Article ... Acu-Dot*,
..., 483 F.Supp. 1311 (N.D. Ohio 1980) .................................................................... 3

*United States v. McLennan*,
563 F.2d 943 (9th Cir. 1977) ............................................................................. 16, 17

*United States v. Satterfield*,
572 F.2d 687 (9th Cir. 1978) .................................................................................. 16

**RULES**

FRE 401 .................................................................................................................. passim

FRE 402 .................................................................................................................. passim

FRE 403 .................................................................................................................. passim

FRE 702 .................................................................................................................. passim

FRE 703 .................................................................................................................. passim

FRE 801(c) ................................................................................................................... 16

FRE 802 .................................................................................................................. passim

**OTHER AUTHORITIES**

*Reference Manual on Scientific Evidence* ............................................................. 3, 4

## I.  PLAINTIFF'S MIL NO. 1: TO EXCLUDE 72 IRRELEVANT HEARSAY PUBLICATIONS

Pursuant to FRE 402, 403 and 802, Plaintiff Yesenia Melgar moves to exclude 72 hearsay publications[1] from Defendants' proposed list of exhibits that have nothing to do with the Zicam Products[2] in this case.  Many of these publications are studies on zinc products with dramatically different formulations, dosages and delivery methods.  Others are obviously irrelevant articles such as "The Effect of Vitamin C on Upper Respiratory Infections in Adolescent Swimmers," "Circulation, Cardiovascular Quality & Outcomes," "Social Ties and Susceptibility to the Common Cold," and "Applied Survival Analysis."  All of these publications are irrelevant to the efficacy of the Zicam Products for the treatment of cold symptoms.  Plaintiff moves *in limine* to exclude those documents under FRE 802 because they are hearsay, under FRE 401 because they are irrelevant, and under FRE 403 because whatever minimal probative value they may have is substantially outweighed by the danger of unfair prejudice, confusion of issues, and waste of time.

Defendants intend to have their experts testify regarding these articles and publications, but none of these publications reviewed the formulation and dosage specific to the Zicam Products.  Defendants intend to argue that if some other zinc treatments can work, the Zicam Products could theoretically have efficacy for class members' cold symptoms.  ██████████ ████████████████████████████████████████████████████████████████████ ████████████████████  ████████████████████████████████████████████████ █████████████  Defendants will seek to trick the jury into believing the Zicam Products could work because some other zinc product with a different dosage and formulation might be effective.  Defendants' theory is that if zinc could be effective in some other formulation or dosage then the Zicam Products could also be effective.  ████████████████████████████████████████████

---

[1] This is the list of 72 hearsay publications included in Defendants' exhibit list: Exs. Nos. PPP, QQQ, RRR, SSS, TTT, UUU, WWW, XXX, ZZZ, (4A), (4B), (4C), (4D), (4E), (4F), (4G), (4H), (4I), (4K), (4L), (4M), (4N), (4O), (4P), (4Q), (4R), (4S), (4T), (4U), (4V), (4W), (4X), (4Y), (4Z), (5A), (5B), (5C), (5D), (5E), (5F), (5G), (5H), (5I), (5J), (5K), (5L), (5M), (5N), (5O), (5P), (5Q), (5R), (5S), (5T), (5U), (5V), (5W), (5Y), (5Z), (6A), (6B), (6C), (6D), (6E), (6F), (6G), (6H), (6I), (6J), (6K), (6L), (6M).

[2] Zicam Products means "(i) Zicam RapidMelts Original, (ii) Zicam RapidMelts Ultra, (iii) Zicam Oral Mist, (iv) Zicam Ultra Crystals, (v) Zicam Liqui-Lozenges, (vi) Zicam Lozenges Ultra, and (vii) Zicam Chewables.  Joint Pretrial Conference Statement ("JPCS") Undisputed Fact No. 2.

████████████████████████████████████████████████████████████

████████████████████████████████████████████ That is the relevant

evidence on the question of the efficacy of the Zicam Products at issue in this case.  Defendants'

attempt to introduce more than 70 hearsay publications concerning other products would be a

waste of time that could only distract and confuse the jury with irrelevant scientific material.  The

probative value of those materials is clearly outweighed by the dangers of unfair prejudice,

confusing the issues, misleading the jury, causing undue delay and wasting time.

Accordingly, pursuant to Rules 402, 403, and 802, the Court should enter an *in limine* order

precluding the admission of Defendants' 72 hearsay publications because the probative value of

Defendants' irrelevant articles is clearly outweighed by the dangers of unfair prejudice, confusing

the issues, misleading the jury, causing undue delay, and wasting time.

## II.  PLAINTIFF'S MIL NO. 2: TO EXCLUDE TESTIMONY OR EVIDENCE CONCERNING SATISFIED CUSTOMERS

Pursuant to FRE 401, 403 and 802, Plaintiff moves *in limine* to exclude any evidence

related to satisfied customers.  Even though controlling authority establishes that customer

satisfaction evidence is "obviously flawed," Defendants will use this evidence to confuse the jury

that (1) customer satisfaction indicates the Zicam Products are more effective than a placebo, and

(2) that satisfied customers are not entitled to damages.  Specifically, Defendants intend to offer

five witnesses (Carol Arola, Verna Hillstrom, Steven Lewis, Robert Miller, and Kathryn Parano-

Friesen) who used the Zicam Products and believe that the Zicam Products were effective in

treating their colds.  JPCS, Addendum 6.  Additionally, Defendants intend to offer the testimony of

three witness (David Stewart Ph.D., Mary Lou Arnett, and Lori Norian) regarding consumer

satisfaction surveys and their purported meaning.  *Id.* at Addendum 2.  Defendants also intend to

offer ███████████████████████████████████████████████████

████████████████████████████████████████. Any such evidence is

hearsay, irrelevant and poses a significant danger of unfair prejudice, confusion of issues, and

waste of time.

Defendants' evidence concerning satisfied customers is flawed, irrelevant, and inadmissible because none of this evidence "takes the placebo effect into account." *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1098 (9th Cir. 1994). The Ninth Circuit's decision in *Pantron I Corp.* is controlling and directly on point. In *Pantron I Corp.*, the Ninth Circuit explained that:

> *None* of Pantron's evidence of effectiveness takes the placebo effect into account. **Pantron's evidence of consumer satisfaction is the most obviously flawed.** The substantial placebo effect indicates that consumers simply cannot tell whether over-the-counter baldness cures are effective, inherently or otherwise. This is especially true in light of the irregular procession of hair loss - what an individual reports as the product's effectiveness in arresting hair loss may simply be the natural course of baldness.

*Id.* (emphasis added). *See also In re Neurontin Marketing and Sales Practices Litig.*, 712 F.3d 21, 49 (1st Cir. 2013) (stating that double blind randomized controlled trials indicating that a drug is ineffective "provide[] powerful scientific evidence of inefficacy, *particularly as compared to anecdotal experiences, which can be tainted by the placebo effect*") (emphasis added); Federal Judicial Center, *Reference Manual on Scientific Evidence*, at 218 (3d ed. 2011) ("Anecdotal evidence usually amounts to reports that events of one kind are followed by events of another kind. Typically, the reports are not even sufficient to show association, because there is no comparison group.").

In other words, duping consumers into paying for a cold treatment product that works "no better than a dummy pill is a form of fraud" because "[m]edicine aims to do better than the placebo effect, which any medieval physician could achieve by draining off a little of the patient's blood." *See F.T.C. v. QT, Inc.*, 512 F.3d 858, 863 (7th Cir. 2008). *See also United States v. An Article ... Acu-Dot ...*, 483 F.Supp. 1311, 1315 (N.D. Ohio 1980) (stating that Acu-dot did indeed provide a positive result but that that result was the result of the placebo effect and that "A kiss from mother on the affected area would serve just as well to relieve pain, if mother's kisses were marketed as effectively as the Acu-dot device"). Consumer satisfaction evidence merely confirms that Defendants successfully deceived consumers – nothing more.

███████████████████████████████████████████████

███████████████████████████

1

2

3

4 Bursor Decl., Ex. B, 6/16/2015 Ronald Eccles Dep at 168:3-13.  *See also In re Neurontin*, 712

5 F.3d at 48 (stating that double blind placebo controlled trials "are widely accepted as 'ideally

6 suited' for showing causation and as a 'good measure of the treatment effect.'") (*quoting* Federal

7 Judicial Center, *Reference Manual on Scientific Evidence* (3d ed. 2011).  *See also* Federal Judicial

8 Center, *Reference Manual on Scientific Evidence* at 218 ("Randomized controlled experiments are

9 ideally suited for demonstrating causation.").

10         Defendants' customer satisfaction evidence is particularly unreliable in light of the self-

11 limiting nature of colds.  Thus, what individuals report as the Zicam Products' effectiveness at

12 shortening the duration of a cold, and relieving cold symptoms is simply the natural course of

13 illness, or the placebo effect.  *See Pantron I Corp.*, 33 F.3d at 1098.

14         Since Defendants' consumer satisfaction evidence does not take the placebo effect into

15 account, it is irrelevant to the central question in this case - whether the Zicam Products are no

16 more effective than a placebo.  *See* Federal Judicial Center, *Reference Manual on Scientific*

17 *Evidence*, at 220 ("In summary, data from a treatment group without a control group generally

18 reveal very little and can be misleading.").  Indeed, this Court already rejected Defendants'

19 argument that satisfied customers would render Plaintiff Melgar atypical because such consumer

20 satisfaction evidence fails to address the central question of this case:

21             Defendants' argument that Plaintiff's dissatisfaction with their
              products is an anomaly among purchasers fails to account for the
22             fact that class members may not be aware of Plaintiff's evidence
              suggesting Defendant's products are nothing more than placebos;
23             the placebo effect ensures that purchasers will think they're
              satisfied.
24
   Order Granting Class Certification (Dkt. No. 116) at 7.  *See also Federal Trade Commission v.*
25
   *Health Formulas, LLC*, 2015 WL 2130504, at *13 (D. Nev. May 6, 2015) ("A claim that a product
26
   is effective is 'false … if evidence developed under accepted standards of scientific research
27
   demonstrates that the product has no force beyond its placebo effect.'  *Pantron I Corp.*, 33 F.3d at
28

---

1097.  In such a case, a claim that the product is effective constitutes a false advertisement 'even though some consumers may experience positive results.'  *Id.* at 1100.").

Defendants will also attempt to confuse the jury by arguing that satisfied customers are not entitled to damages.  But that is not the law.  *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) (concluding that "Defendants' argument that any satisfied customers would not be entitled to restitution" was "without merit" because of the placebo effect) (citing *Pantron I Corp.*, 33 F.3d at 1100).  If the Zicam Products are placebos, as Plaintiff contends, then purchasers are entitled to a refund regardless of their purported "satisfaction."

Accordingly, pursuant to Rules 402 and 403, and 802, the Court should enter an *in limine* order precluding Defendants from confusing the central issues in this case by introducing irrelevant and unreliable consumer satisfaction evidence.

### III.   PLAINTIFF'S MIL NO. 3: TO EXCLUDE DEFENDANTS' EXPERT HARRI J. HEMILÄ

Pursuant to FRE 402, 403, 702 and 703, Plaintiff moves to exclude the testimony of Defendants' expert Dr. Harri Hemilä.  Dr. Hemilä is a doctor from Helsinki, Finland.  Among other things, he intends to testify regarding "the scientific literature pertaining to the efficacy of oral zinc cold remedies" and that "the clinical studies and scientific data show that oral zinc and Zicam Cold Remedies are effective in shortening the duration of a cold."  Dr. Hemilä has never tested any of the Zicam Products for efficacy.

In 2011, Dr. Hemilä conducted an analysis of studies regarding the efficacy of zinc cold remedies.  He analyzed 13 placebo-controlled comparisons of the effect of zinc lozenges on the common cold, with doses ranging from 30 to 207 mg per day, with 5 of those trials using doses less than 75 mg per day.  *See* Ex. 113 at 53, Table 1.  Dr. Hemilä concluded that "None of the five comparisons that used less than 75 mg/day of zinc found an effect of zinc lozenges."  *Id.* at 53; *see also id.* at 54 ("[T]he benefit of zinc is restricted to trials where the dose was greater than 75 mg/day.  …  [A]ll the low-dose comparisons are consistent with no effect of zinc lozenges."); *id.* at 55 ("No effect of zinc lozenges was seen in trials where the total daily dose of zinc was less than

75 mg.").  The maximum daily dose of Zicam RapidMelts is 52.5 mg., and the maximum daily dose of Zicam Ultra RapidMelts is 56 mg.  *See* Ex. 9.

Despite this evidence, Dr. Hemilä now seeks to testify as an expert witness on behalf of Defendants.  The Court should preclude Dr. Hemilä from testifying in any manner that contradicts his 2011 analysis of studies concerning zinc cold remedies.  Nor should the Court allow him to testify about zinc formulations, dosages, or delivery methods that are different than those found in the Zicam Products at issue in this case.  Defendants hope to prevail in this trial by tricking the jurors into believing that the Zicam Products could work because some other zinc product might be effective.  Dr. Hemilä's testimony is central to that gambit.  The Court should restrict Dr. Hemilä to testifying regarding his 2011 analysis concerning zinc cold remedies and not let him attempt to confuse the jury by talking about other zinc products that might be effective because they have a larger dosage, or different formulation or delivery method.

To the extent Dr. Hemilä testifies that the Zicam Products are effective, his testimony fails to satisfy FRE 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) as it does not rest on a reliable foundation. ███████████████████████████

████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████████

██████████████████████████

## IV.  PLAINTIFF'S MIL NO. 4: TO EXCLUDE DEFENDANTS' EXPERT RONALD ECCLES

Pursuant to FRE 402, 403, 702 and 703, Plaintiff moves to exclude the testimony of Defendants' expert Dr. Ronald Eccles.  Dr. Eccles is a doctor from Cardiff, Wales. ██████

███████████████████████████████████████

███████████████████████████████████████

██████████████████████████████████

████████████████████████████████████████

█████████████████████████████████



Ex. 109 (underlining added).

Since refusing to sign Zmuda's draft report, Dr. Eccles has mysteriously changed his tune. Now, he intends to testify that "the study does show benefit of RapidMelts above placebo." Eccles Report at ¶ 8.

*Id.* Now, he intends to tell the jury that the Cardiff Study showed that "Zicam is effective to shorten the duration of a cold."

The Court should preclude Dr. Eccles from testifying in any manner that conflicts with his prior statements in Ex. 109. Such testimony would be prejudicial and confusing to the jury and has

---

[3] A statistical analysis of a study includes a "p-value" as a measure of statistical significance. Ordinarily a p-value of 0.05 or less indicates a statistically significant result. *See* 4/3/15 Expert Report of R. Barker Bausell ¶¶ 22-23. But this is not the case when multiple data points are tested. By chance alone 5 of 100 statistical comparisons would produce a p-value of 0.05 or less. Statisticians call this the problem of multiplicity. Reputable statisticians apply some form of statistical correction to data to eliminate the problem of multiplicity.

no legitimate scientific basis. ████████████████████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████████

████████████████████   The Court should preclude any testimony from Dr. Eccles that contradicts

his prior statements regarding the results of the Cardiff Study.

## V. PLAINTIFF'S MIL NO. 5: TO EXCLUDE DEFENDANTS' EXPERT PETER A.G. FISHER

Pursuant to FRE 402, 403, 702 and 703, Plaintiff moves to exclude the expert testimony of Dr. Fisher as it fails to satisfy the requirements of FRE 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Dr. Fisher intends to offer opinions about "homeopathy and the efficacy of homeopathic products generally and to respond to the opinions of plaintiff's expert witness on the subject of homeopathy." Expert Report of Dr. Peter Fisher at 2-3.

Pursuant to FRE 402 and 403, Dr. Fisher should be precluded from testifying regarding "homeopathy and the efficacy of homeopathic products generally." None of the research in Dr. Fisher's report relates to the Zicam Products at issue in this action. In fact, Dr. Fisher does not even mention the Zicam Products in his report. His report concerns homeopathy and whether it is effective generally. His report does not mention any of the Zicam Products. It does not mention any of the testing of the Zicam Products. It does not even mention colds or zinc or the product name "Zicam." It does not appear that Dr. Fisher knows anything about the Zicam Products at issue in this case.

The only portion of his report that has anything to do with this case is that he challenges one statement by Plaintiff's expert Dr. Noel Rose of Johns Hopkins in his report regarding homeopathy. Plaintiff, however, does not intend to offer any testimony from Dr. Rose or any other witness regarding homeopathy. Plaintiff's evidence and witnesses will be focused on the effectiveness of the Zicam Products and the testing done by Defendants on the Zicam Products. Plaintiff has no intention to mention the word "homeopathy" at any point during this trial.

1    Under Rules 402 and 403, Dr. Fisher should also be precluded from using the terms

2  "nanotechnology" and "nanoparticles"  *See, e.g.* Fisher Report at 7-8 ("Recent discoveries in the

3  area of nanotechnology, a rapidly advancing area of science which involves the use of extremely

4  small particles (of the order of nanometers), are relevant to the homeopathic production process of

5  trituration.  Procedures used to prepare are very similar to trituration, involving long periods of

6  grinding.").  There is no scientific basis for asserting that the Zicam Products in this case contain

7  "nanoparticles" or that "nanotechnology" has any application here.

8    Dr. Fisher's testimony also fails to satisfy the requirements of Rules 702, 703, and *Daubert*.

9  Rule 702 "assign[s] to the trial judge the task of ensuring that an expert's testimony both rests on a

10  reliable foundation and is relevant to the task at hand."  *Daubert*, 509 U.S. at 597.  Under *Daubert*,

11  "the trial court must act as a 'gatekeeper' to exclude junk science that does not meet [Rule 702's]

12  reliability standards by making a preliminary determination that the expert's testimony is reliable."

13  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 982 (9th Cir. 2011) (citing *Kumho Tire Co. v.*

14  *Carmichael*, 526 U.S. 137, 147 (1999)).  To be admissible, an expert's "inference or assertion must

15  be derived by the scientific method."  *Daubert*, 509 U.S. at 590.  Further, "[w]idespread acceptance

16  [in the scientific community] can be an important factor in ruling particular evidence admissible,

17  and a known technique which has been able to attract only minimal support within the community,

18  may properly be viewed with skepticism."  *Id.* at 594 (internal citations omitted).

19    Dr. Fisher's opinion that homeopathy "resulted in better outcomes for patients" is not

20  derived from the scientific method, is not based on reliable data, and is "not consistent with

21  established laws of science."  Fisher Report at 12.  In fact, Dr. Fisher concedes that the mechanism

22  of action of homeopathic remedies "is not fully understood."  *Id.*at 5; *see also id.* at 6

23  (acknowledging that how homeopathic remedies "causes changes in brain chemistry … is, at

24  present, not fully understood").

25    Furthermore, as an expert witness, Dr. Fisher may not rely on his "personal experience" to

26  show that "the use of homeopathy in an integrated manner is safe and effective."  *Id.* at 14.

27  Instead, his opinions must be derived from the scientific method.  *See Daubert*, 509 U.S. at 590

28  (establishing the rule that, to be admissible, an expert's "inference or assertion must be derived by

the scientific method"). Dr. Fisher's anecdotal, subjective impressions from the use of homeopathy in his practice have not been tested against a placebo-control – or indeed tested at all. As such, Dr. Fisher's testimony regarding his own experience should be precluded pursuant to Rule 702 because it is not "based on sufficient facts or data" and is not "the product of reliable principles and methods" that can be reliably applied to the facts of the case.

For each of the foregoing reasons, pursuant to Rules 402, 403, 702 and 703, the Court should enter an *in limine* order precluding Dr. Fisher's expert testimony.

## VI. PLAINTIFF'S MIL NO. 6: TO EXCLUDE DEFENDANTS' EXPERT SABRINA SOBEL

Pursuant to FRE 702 and 703, Plaintiff moves to exclude the expert testimony of Dr. Sabrina Sobel as it fails to satisfy the requirements of FRE 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Additionally, Plaintiff moves to preclude her testimony pursuant to Federal Rules of Evidence 402 and 403 to the extent it relates to products other than those at issue in this lawsuit.

First, Dr. Sobel ignores



Instead of analyzing the actual testing conducted on Defendants' Products, Dr. Sobel intends to offer a variety of opinions irrelevant to the Zicam Products at issue in this case. First, Dr. Sobel's report includes an extensive discussion about the bioavailability of zinc ions. Sobel

Report at 2-5.  Dr. Sobel makes no effort whatsoever to connect zinc bioavailability to the Zicam

Products ███████████████████████.  Her discussion exists entirely in a vacuum with no

connection drawn to the Zicam Products or the issues in this case.  Dr. Sobel also discusses 21

different studies on zinc products, none of which are at issue in this case or even contain the same

amount of zinc as is found in the Zicam Products.  *Id.* at 11-14.  Dr. Sobel even concedes that "the

mechanism by which zinc ions combat the viruses responsible for the common cold is not well

understood."  *Id.* at 10.  Accordingly, Dr. Sobel's proposed testimony is not helpful and will not

assist the trier of fact and should therefore be excluded under FRE 702.  Testimony about a bunch

of studies on products other than those at issue in this case is also prejudicial in that it will drown

evidence related to the Zicam Products ██████████████████████  Since Dr.

Sobel's report contains absolutely no discussion of the Zicam Products at issue in this case, the

Court should exclude her from testifying.  *See Daubert v. Merrell Dow Pharm., Inc.*, 43 F.3d 1311,

1315 (9th Cir. 1995) (quoting *Daubert I*, 509 U.S. at 597) (holding that the proposed expert

testimony must be "relevant to the task at hand," meaning that it "logically advances a material

aspect of the proposing party's case").

## VII.  PLAINTIFF'S MIL NO. 7: TO EXCLUDE DEFENDANTS' EXPERT DAVID STEWART

Pursuant to FRE 402, 403, 702, 703, and 802, Plaintiff moves to exclude the expert

testimony of Professor Stewart as it fails to satisfy the requirements of FRE 702 and *Daubert v.*

*Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).   Professor Stewart's intended expert

testimony is flawed and should be excluded for several reasons.

As an initial matter, Professor Stewart is expected to testify that "that the advertising for

Zicam Cold Remedy Products was not deceptive or misleading with respect to the Pre-Cold

message or the Cold Monster advertisements."  JPCS Addendum 2, at 1.  This testimony is

irrelevant to the claims advanced by Plaintiff under and fails to satisfy the requirements of FRE

702.  Specifically, under Rule 702, an expert's testimony is relevant only if it "logically advance[s]

a material aspect of the party's case."  *Estate of Barabin v. AstenJohnson, Inc,* 740 F.3d 457, 464–

65 (9th Cir. 2014).  While Defendants' "Pre-Cold" and "Cold Monster" were mentioned in

1    Plaintiff's complaint, the case that will be presented at trial will narrowly focus on the claims that

2    the Zicam Products are ineffective.  It is undisputed that the Zicam Products were uniformly

3    represented to "reduce the duration of a cold" and "reduce the severity of symptoms."  JPCS,

4    Undisputed Facts 9 and 10.  Plaintiff does not intend to present evidence concerning any

5    advertising other that the claims that appeared on the packaging for the Zicam Products, as set forth

6    in Undisputed Facts 9 and 10.  Accordingly, Professor Stewart's interpretations of the "Pre-Cold"

7    and "Cold Monster" advertisements are irrelevant because they fail to logically advance a material

8    aspect of Defendants' case.

9          To the extent that Professor Stewart intends to offer opinions about how consumers

10   understand Defendants' uniform representations that the Zicam Products "reduce the duration of a

11   cold" and "reduce the severity of symptoms" such testimony should be excluded under Rule 702.

12   An expert witness testifying to "simple inferences drawn from uncomplicated facts that serve only

13   to buttress [a] theory of the case ... does no more than counsel [] will do in argument, *i.e.*, propound

14   a particular interpretation of [defendant's] conduct."  *In re Rezulin Prods. Liab. Litig.*, 309 F. Supp.

15   2d 531, 551 (S.D.N.Y. 2004) (internal quotation marks omitted) (alteration in original).  To allow

16   Professor Stewart to testify as to how a reasonable consumer understands the plain language of

17   Defendants' uniform representations would impermissibly infringe on the role of the trier of fact.

18   *Humphreys v. Regents of the Univ. of Cal.*, 2006 WL 1867713, at *4 (N.D. Cal. July 6, 2006)

19   (finding the expert's conclusion, which "consists of little more than a recitation of plaintiff's

20   evidence, combined with her conclusion that the evidence demonstrates that plaintiff was

21   discriminated against[,]" would "greatly infringe upon the role of the [the fact-finder]").

22         Defendants also intend to have Professor Stewart "testify regarding the testing of the Zicam

23   advertising and the research conducted regarding consumer satisfaction with Zicam."  JSPC

24   Addendum 2, at 1.  While the "obviously flawed" nature of such consumer satisfaction evidence is

25   discussed above (Plaintiff's MIL No. 2), Professor Stewart's testimony on the subject matter is

26   specifically flawed because he does not bring any "scientific, technical, or other specialized

27   knowledge" regarding these surveys and documents that will "help the trier of fact."  Fed. R. Evid.

28   702.  Indeed, Defendants will use this evidence to mislead the jury that customer satisfaction

indicates the Zicam Products are more effective than a placebo.  *See supra* Plaintiff's MIL No. 2.

But Professor Stewart is not a medical doctor and therefore cannot offer expert opinion as to whether consumer satisfaction evidences that the Zicam Products are more effective than a placebo.

Faced with similar circumstances, other courts have recognized that Rule 702 does not permit expert testimony based on nothing but the expert's perception of the evidence.  For example, in *U.S. Gypsum Co. v. Lafarge N. Am. Inc.*, 670 F. Supp. 2d 748 (N.D. Ill. 2009), the court struck the testimony of an expert who reviewed certain consumer complaints and internal communications and rendered opinions about the quality of the product at issue based on that information.  The court struck the opinions after determining that the expert's conclusions about the quality of the product were "essentially based on anecdotal data with little or no governing method of analysis."  *Id.* at 755.

Finally, under Rule 802, Defendants cannot put on inadmissible hearsay obtained from the ███████████████████████████████████████████████ through the testimony of Professor Stewart.  Unless the underlying evidence is admitted at trial, any testimony about Stewart's analysis based ██████████████████████████ should be excluded as inadmissible hearsay.  *Matrix Motor Co. v. Toyota Jidosha Kabushiki Kaisha*, 290 F. Supp. 2d 1083, 1086 (C.D. Cal. 2003) (expert reports "irrelevant" where they "merely recite hearsay statements, often verbatim, culled from a variety of Internet websites").

## VIII.   PLAINTIFF'S MIL NO. 8: TO EXCLUDE EVIDENCE OF OTHER REGULATORY OR QUASI-JUDICAL ACTIONS

Pursuant to FRE 401, 402, 403 and 802, Plaintiff moves *in limine* to exclude any argument, testimony or evidence concerning "the Federal Trade Commission investigation of the clinical support for the efficacy and advertising claims of Zicam Oral Cold Remedy products and the National Advertising Division of the Better Business Bureau review of Zicam Cold Remedies."  *See* JPCS Addendum 2, at 2 (description of Mr. Clarot's proposed testimony).  Specifically,

Defendants seek to introduce at least 18[4] such exhibits into evidence regarding these topics, and has identified Timothy Clarot to testify regarding these third party communications.  JPCS Addendum 2 and 6.   The views of the Federal Trade Commission ("FTC") or the Better Business Bureau ("BBB") are not relevant to this action, and any minimal probative value they might have is substantially outweighed by the danger of unfair prejudice, confusion, and waste of time. Defendants apparently want Mr. Clarot to testify that the FTC and the BBB investigated the Zicam advertising, but took no enforcement action.  The obvious inference they wish the jury to draw is that if the FTC and the BBB took no action, the claims about the Zicam Products' efficacy are truthful, or perhaps, lawful.  But that would not be a proper inference.  Plaintiff was not a party to any of those proceedings, and neither Plaintiff nor this Court is bound by any finding of those bodies.  Any opinion those bodies expressed would be hearsay.  The failure of those organizations to take action against the Zicam Products could be the result of many factors that have nothing to do with the efficacy of the Zicam Products or the truthfulness of their claims.  Permitting Defendants to present this evidence would send the trial off on a tangent about why the FTC and the BBB did what they did, or failed to take action, what procedures were employed, what evidence they considered or did not consider.

The jury should decide this case based on the evidence presented in court.  Their decision should not be influenced by some other action or inaction by the FTC, the BBB, or anyone else.

### A. The FTC Correspondence And BBB Proceedings Are Irrelevant To This Case

Evidence related to the 2006 FTC correspondence has no possible relevance to this case and, therefore, all exhibits and testimony related thereto are inadmissible under FRE 401 and 402. The Court held that the common question in this case is whether Defendants' statements about the Zicam Products "were false because the products are no more effective than a placebo."  Order Granting Class Certification (Dkt. No. 116), at 6.  The FTC correspondence fails to address this central question because it does not set forth an official position of the FTC regarding the efficacy

---

[4]Plaintiff has identified the following Exhibits that concern these third party communications with the FTC and the Better Business Bureau: U, V, W, X, Y, Z, AA, BB, CC, DD, EE, FF, GG, HH, II, JJ, KK, LL, and MM.

of the Zicam Products, and the FTC decision to not pursue enforcement against Defendants could be the result of many factors that have nothing to do with the efficacy of the Zicam Products or the truthfulness of Defendants' claims.

Indeed, the FTC never reached any recorded conclusion as to the efficacy of the Zicam Products.  JPCS Defendants Disputed Fact 84.  Instead, an unnamed representative of the FTC apparently "notified Matrixx by phone that it was no longer pursuing inquiry into the advertising and promotion of Zicam products."  *Id.*  The FTC never concluded the Zicam Products were more effective than a placebo, nor did the FTC conclude that Defendants' claims were lawful.  This was an incomplete investigation, not a determination that the Zicam Products are more effective than a placebo.  *See, e.g., Summit Tech., Inc. v. High-Line Med. Instruments Co.*, 922 F. Supp. 299, 306 (C.D. Cal. 1996) (noting that the existence of warning letters does not establish that the FDA has completed an investigation or that they are the final opinion of the agency).  Because the evidence related to Defendants' 2006 FTC correspondence will not prove or disprove any issue in this case, it is irrelevant and should be excluded.

Furthermore, evidence arising from the 2009 National Advertising Division ("NAD") of the BBB proceeding has no possible relevance to this case and, therefore, all exhibits and testimony related thereto are inadmissible under FRE 401 and 402.  The NAD's opinions, or conclusions, or actions or inactions cannot answer the central issue of this case.

Evidence arising from the 2012 NAD proceeding, and the eventual appeal to the National Advertising Review Board, also has no possible relevance to this case and, therefore, all exhibits and testimony related thereto are inadmissible under FRE 401 and 402.  There, the BBB concluded that Defendants' use of the "Pre-Cold" and "Cold Monster" did not convey a claim of prophylactic treatment of colds.  JPCS, Defendants' Disputed Facts 88-91.  The claims to be tried here are whether the Zicam Products "reduce the duration of a cold" and "reduce the severity of symptoms."  *Id.*., Undisputed Facts 9 and 10.  Whether the "Pre-Cold" and "Cold Monster" advertisements conveyed a prophylactic claim has no relevance, and would waste time by distracting the jury with irrelevant materials.

### B.   The FTC Correspondence And BBB Proceedings Are Prejudicial To Plaintiff

The non-existent probative value of the proceedings discussed above is substantially outweighed by the unfair prejudice, risk of confusion, and waste of time.  Therefore, all such exhibits and testimony related thereto are inadmissible under FRE 403.

Defendants want to introduce this evidence to distract and confuse the jury into deferring to the purported conclusions of absent third parties.  Even worse, the record indicates that the FTC and the BBB each made their respective decisions after review of ████████████████████ ████████████████████████████████.  *See* JPCS, Defendants' Disputed Facts 82-91.  Plaintiff will not have access to representatives of either the FTC or the BBB to examine for deficiencies in their respective investigations.  Instead, Plaintiff will be forced to waste the Court's time addressing significant tangents about what happened during the FTC correspondence and the BBB proceedings.  Plaintiff was not a party to any of those proceedings, and neither Plaintiff nor this Court is bound by their results.  Accordingly, pursuant Rule 403 this Court should enter an *in limine* order precluding evidence related to the FTC correspondence and the BBB proceedings.

### C.   The FTC Correspondence And BBB Proceedings Constitute Inadmissible Hearsay

The Federal Rules of Evidence define hearsay as "a statement, other than one made by a declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."  Fed. R. Evid. 801(c).  Such statements are presumptively inadmissible.  *See* Fed. R. Evid. 802 ("Hearsay is not admissible unless any of the following provides otherwise: a federal statute; these rules; or other rules prescribed by the Supreme Court."); *see also Orr v. Bank of Am., NT & SA*, 285 F.3d 764, 778 (9th Cir. 2002).  "Hearsay statements are usually excluded because the declarant is unsworn and unavailable for cross-examination and because the jury cannot evaluate his demeanor."  *Padilla v. Terhune,* 309 F.3d 614, 620 (9th Cir. 2002) (*quoting United States v. Satterfield,* 572 F.2d 687 (9th Cir. 1978).  Such out-of-court statements cannot be tested by the trial process (most notably through cross examination by an adversary) and are therefore inherently untrustworthy.  *See United States v. McLennan,* 563 F.2d 943, 953 (9th Cir. 1977)

1    (Choy, J., concurring) (because they are not subject to the "safeguards" of trial, hearsay statements

2    are presumptively unreliable and inadmissible).

3        In this instance, all exhibits and testimony concerning the FTC correspondence and the

4    BBB proceedings fall squarely within the definition of hearsay, and are not covered by any

5    exceptions.  In particular, Defendants' hearsay testimony concerning the FTC's decision to not

6    pursue enforcement is laughable.  Apparently, the FTC indicated it was no longer investigating

7    Defendants during a phone call between Gary Yingling and an unnamed FTC representative.  JPCS

8    Defendants' Disputed Fact 84.  Defendants do not offer the FTC representative as a witness.  *See*

9    JPCS, Addendum 2.  Defendants do not offer Gary Yinling as a witness.  *See id.*  Instead,

10   Defendants offer Mr. Clarot, several layers of hearsay removed, to testify regarding the FTC's

11   decision to discontinue its investigation.  *See id.  See also Gilmore v. Augustus*, 2015 WL 3419172,

12   at *5 (E.D. Cal. May 27, 2015) ("Plaintiff's assertions that his ex-fiancee, posing as a Department

13   of Veterans' Affairs employee, called and spoke to Mrs. Torres, who confirmed that she was the

14   administrator of her husband's estate, are based on multiple layers of hearsay and therefore are not

15   admissible evidence.").

16       These out-of-court statements are introduced for the truth of the matter asserted, namely

17   that the FTC and the BBB investigated Defendants and took no enforcement action.  Because this

18   evidence is inadmissible hearsay, it is properly excluded under FRE 802.

19

20   Dated: December 18, 2017                    **BURSOR & FISHER, P.A.**

21                                               By*:     /s/ Scott A. Bursor*
                                                          Scott A. Bursor

22
                                                Scott A. Bursor (State Bar No. 276006)
23                                              L. Timothy Fisher (State Bar No. 191626)
                                                Thomas A. Reyda (State Bar No. 312632)
24                                              1990 North California Boulevard, Suite 940
                                                Walnut Creek, CA  94596
25                                              Telephone: (925) 300-4455
                                                E-Mail: scott@bursor.com
26                                                        ltfisher@bursor.com
                                                        treyda@bursor.com
27
                                                *Class Counsel*
28