**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Thomas A. Reyda (State Bar No. 312632)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  scott@bursor.com
          ltfisher@bursor.com
          treyda@bursor.com

*Class Counsel*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| YESENIA MELGAR, on Behalf of Herself and all Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ZICAM LLC and MATRIXX INITIATIVES, INC.<br>Defendants. | Case No. 2:14-cv-00160-MCE-AC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:  May 31, 2018<br>Time:  2:00 p.m.<br>Courtroom 7, 14th Floor<br><br>Hon. Morrison C. England, Jr. |

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT** on May 31, 2018 at 2:00 p.m., or as soon thereafter as the matter may be heard by the above-captioned Court, located at the Robert T. Matsui United States Courthouse, 501 I Street. Sacramento, CA 95814, courtroom 7, 14th floor, in the courtroom of the Honorable Morrison C. England, Jr., Plaintiff Yesenia Melgar will and hereby does move, pursuant to Fed. R. Civ. P. 23(e), for the Court to: (i) grant preliminary approval of the proposed Stipulation of Settlement, (ii) provisionally certify the Settlement Class[1] for the purposes of preliminary approval, designate her as the Class Representative, and appoint Bursor & Fisher, P.A. as counsel for the Settlement Class, (iii) establish procedures for giving notice to members of the Settlement Class, (iv) approve forms of notice to Settlement Class Members, (v) mandate procedures and deadlines for exclusion requests and objections, and (vi) set a date, time, and place for a final approval hearing.

This motion is made on the grounds that preliminary approval of the proposed class action settlement is proper, given that each requirement of Rule 23(e) has been met. This motion is based on the attached Memorandum of Points and Authorities, the accompanying Declaration of Scott A. Bursor, the pleadings and papers on file herein, and any other written and oral arguments that may be presented to the Court.

Dated:  May 3, 2018

**BURSOR & FISHER, P.A.**

By: ___*/s/ Scott A. Bursor*___
        Scott A. Bursor

Scott A. Bursor (State Bar No. 276006)
L. Timothy Fisher (State Bar No. 191626)
Thomas A. Reyda (State Bar No. 312632)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile: (925) 407-2700
E-Mail:  scott@bursor.com
            ltfisher@bursor.com
            treyda@bursor.com

*Class Counsel*

---

[1] All capitalized terms herein that are not otherwise defined have the definitions set forth in the Stipulation of Settlement, filed concurrently herewith. *See* Bursor Decl. Ex. 1.

# TABLE OF CONTENTS

**PAGE(S)**

I.     INTRODUCTION ................................................................................................. 1

II.    PROCEDURAL BACKGROUND......................................................................... 3

    A.    Litigation.................................................................................................. 3

    B.    Settlement ............................................................................................... 5

III.   THE LEGAL STANDARD FOR PRELIMINARY APPROVAL........................ 5

IV.   THE STIPULATION OF SETTLEMENT IS FAIR, ADEQUATE, AND
     REASONABLE ................................................................................................... 7

    A.    Strength of Plaintiff's Case and the Specific Risks of This Litigation .................... 8

    B.    Risk of Maintaining Class Action Status ............................................... 9

    C.    The Amount Offered in Settlement........................................................ 10

    D.    The Extent of Discovery and Status of Proceedings.............................. 10

    E.    Experience and Views of Counsel .......................................................... 11

V.    THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT
     CLASS FOR THE PURPOSES OF PRELIMINARY APPROVAL ................. 11

    A.    Numerosity.............................................................................................. 12

    B.    Commonality and Predominance ............................................................ 12

        1.    Commonality.................................................................................. 12

        2.    Predominance ................................................................................. 13

    C.    Typicality ................................................................................................ 17

    D.    Adequacy ................................................................................................ 17

    E.    Superiority .............................................................................................. 18

VI.   THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE
     AND SHOULD BE APPROVED ...................................................................... 18

VII.  CONCLUSION ................................................................................................... 21

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Alaniz v. California Processors, Inc.*,
   73 F.R.D. 269 (N.D. Cal. 1976)............................................................................ 5

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997).............................................................................. 12, 13

*Beerman v. Toro Mfg. Corp.*,
   1 Haw. App. 111 (1980) .................................................................................... 15

*Boyd v. Bechtel Corp.*,
   485 F. Supp. 610 (N.D. Cal. 1979) .................................................................... 7

*Chavez v. Blue Sky Nat. Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010)...................................................................... 13

*Chen v. L.A. Truck Centers, LLC*,
   7 Cal. App. 5th 757 (Ct. App. 2017).................................................................. 16

*Churchill Village, L.L.C. v. Gen. Elec.*,
   361 F.3d 566 (9th Cir. 2004) .............................................................................. 7

*Clothesrigger, Inc. v. GTE Corp.*,
   191 Cal. App. 3d 605 (1987) ....................................................................... 15, 16

*Curtis-Bauer v. Morgan Stanley & Co., Inc.*,
   2008 WL 4667090 (N.D. Cal. Oct. 22, 2008)..................................................... 8

*Dunk v. Ford Motor Company*,
   48 Cal. App. 4th 1794 (1996) ............................................................................. 6

*Forcellati v. Hyland's, Inc.*,
   876 F. Supp. 2d 1155 (C.D. Cal. 2012) ............................................................ 13

*Forcellati v. Hyland's, Inc.*,
   2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) ..................................................... 13

*Fulford v. Logitech, Inc.*,
   2010 U.S. Dist. LEXIS 29042 (N.D. Cal. Mar. 5, 2010)................................... 10

*Garner v. State Farm. Mut. Auto. Ins. Co.*,
   2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............................................... 8, 10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ................................................................ 6, 7, 11, 12

*Heritage Vill. Owners Ass'n, Inc. v. Golden Heritage Inv'rs, Ltd.*,
   89 P.3d 513 (Colo. App. 2004) ......................................................................... 15

*Holmes v. LG Marion Corp.*,
   258 Va. 473 (1999) ........................................................................................... 15

*Hurtado, v. Superior Court,*
  11 Cal. 3d 574 (1974) ................................................................................. 16

*In re Apple Computer Sec. Litig.,*
  1991 WL 238298 (N.D. Cal. Sept. 6, 1991) .................................................. 9

*In re Bluetooth Headset Products Liab. Litig.,*
  654 F.3d 935 (9th Cir. 2011) ...................................................................... 11

*In re Hyundai & Kia Fuel Econ. Litig.,*
  881 F.3d 679 (9th Cir. 2018) ................................................................. 13, 14

*In re Mego Fin. Corp. Sec. Litig.,*
  213 F.3d 454 (9th Cir. 2000) ...................................................................... 10

*In re Netflix Privacy Litig.,*
  2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ............................................... 9

*In re Omnivision Techs., Inc.,*
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................................................... 11

*In re Pac. Enters. Sec. Litig.,*
  47 F.3d 373 (9th Cir. 1995) ..................................................................... 6, 11

*In re Syncor ERISA Litig.,*
  516 F.3d 1095 (9th Cir. 2008) ...................................................................... 6

*In re Tableware Antitrust Litig.,*
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ...................................................... 5, 6

*Mazza v. Am. Honda Motor Co.,*
  666 F.3d 581 (9th Cir. 2012) ............................................................. 13, 14, 16

*Milford Lumber Co. v. RCB Realty, Inc.,*
  147 N.H. 15, 780 A.2d 1259 (2001) ............................................................ 15

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.,*
  221 F.R.D. 523 (C.D. Cal. 2004) .................................................................. 9

*Officers for Justice v. Civil Serv. Comm'n,*
  688 F.2d 615 (9th Cir. 1982) ................................................................. 6, 7, 8

*Pokorny v. Quixtar, Inc.,*
  601 F.3d 987 (9th Cir. 2010) ...................................................................... 16

*Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson,*
  390 U.S. 414 (1968) .................................................................................... 7

*Rodriguez v. West Publ'g Corp.,*
  563 F.3d 948 (9th Cir. 2009) ............................................................. 8, 10, 11

*Shames v. Hertz Corp.,*
  2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) .................................................. 9

*State ex rel. Corbin v. Goodrich*,
    151 Ariz. 118, 726 P.2d 215 (Ct. App. 1986) ............................................................ 14, 17, 18, 20

*State ex rel. Corbin v. Pickrell*,
    136 Ariz. 589, 667 P.2d 1304 (1983) ................................................................................. 14

*Vind v. Prudential Ins. Co. of Am.*,
    2011 WL 13183043 (C.D. Cal. Jan. 10, 2011) ...................................................................... 7

**STATUTES**

15 U.S.C. § 2301 ...................................................................................................................... 3

Alaska Stat. Ann. § 45.50.531 ................................................................................................ 15

Ariz. Rev. Stat. § 44-1521 ...................................................................................................... 13

Ariz. Rev. Stat. § 44-1522 ...................................................................................................... 13

California Business and Professions Code § 17200 ................................................................. 3

California Business and Professions Code § 17500 ................................................................. 3

Colo. Rev. Stat. Ann. § 6-1-113 ............................................................................................. 15

Haw. Rev. Stat. Ann. § 480-13 .............................................................................................. 15

Ind. Code Ann. § 24-5-0.5-1 .................................................................................................. 15

Ind. Code Ann. § 24-5-0.5-4 .................................................................................................. 15

N.H. Rev. Stat. Ann. § 358-A:10 ........................................................................................... 15

Va. Code Ann. § 59.1-204 ...................................................................................................... 15

**RULES**

Fed. R. Civ. P. 23 ............................................................................................................ passim

**OTHER AUTHORITIES**

4 Newberg on Class Actions § 12:35 ...................................................................................... 21

## I.   INTRODUCTION

Plaintiff Yesenia Melgar ("Plaintiff"), through her counsel Bursor & Fisher, P.A. ("Bursor & Fisher"), respectfully submits this memorandum of law in support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

The Stipulation of Settlement states that Defendants will pay $16 million into a Settlement Fund for the benefit of the Settlement Class.  Stipulation of Settlement, Article 2.1, Declaration of Scott A. Bursor ("Bursor Decl.") Ex. 1.  The Stipulation of Settlement defines the Settlement Class to include:

> All purchasers of Zicam RapidMelts Original, RapidMelts Ultra, Oral Mist, Ultra Crystals, Liqui-Lozenges, Lozenges Ultra, Soft Chews, Medicated Fruit Drops, and Chewables in the United States from February 15, 2011 to the date of the order granting preliminary approval of the settlement in this action."

*Id.* ¶ 1.20.  Plaintiff seeks to certify a nationwide class under Arizona law for settlement purposes.

Under the Settlement, Class Members who submit valid claims will recover according to the average manufacturer's suggested retail price ("MSRP") during the Class Period for each of the Zicam Products purchased.  Stipulation of Settlement, Article 2.4(a).  Claims based on purchases of up to five units of the Products will be paid without requiring proof of purchase.  *Id.*, Article 2.5. Claims based on purchases of six or more units of the Products will require proof of purchase.  *Id.* Payment will be adjusted based on the number of claims submitted and the portion of the Settlement Fund available for distribution, and as explained below will likely exceed the product purchase price. This structure will ensure total exhaustion of the Settlement Fund, and could increase or decrease Class Member recoveries.  *Id.*, Article 2.7

This is an excellent result for class members compared to their likely recovery should Plaintiff prevail at trial.  Indeed, Plaintiff calculated recoverable damages on an individual basis to be the purchase price of Zicam Products under a full refund theory.  Motion for Class Certification (Dkt. No. 24) at *9.  A recovery for up to five products without proof of purchase—and unlimited recovery for six or more products with proof of purchase—reaches or exceeds the maximum recovery Ms. Melgar, or any class member, could expect at trial.

---

As in any class action, the proposed Settlement is initially subject to preliminary approval and then to final approval by the Court after notice to the class and a hearing.  Plaintiff now requests that this Court enter an order in the form of the accompanying [Proposed] Order Preliminarily Approving Class Action Settlement, which will:

> (1)   Grant preliminary approval of the proposed Settlement;
>
> (2)   Provisionally certify the Settlement Class on a nationwide basis for the purposes of preliminary approval, designate Plaintiff Melgar as the Class Representative, and Bursor & Fisher, P.A. as counsel for the Settlement Class;
>
> (3)   Establish procedures for giving notice to members of the Settlement Class;
>
> (4)   Approve forms of notice to Settlement Class Members;
>
> (5)   Mandate procedures and deadlines for exclusion requests and objections; and
>
> (6)   Set a date, time and place for a final approval hearing.

The proposed Settlement is fair and reasonable and falls within the range of possible approval.  It is the product of extensive arms-length negotiations between experienced attorneys familiar with the legal and factual issues of this case.  Declaration of Kenneth Feinberg ("Feinberg Decl.") ¶¶ 7-12.  Indeed, settlement was only reached on the eve of trial after four separate mediations.

Additionally, Class Counsel has conducted an extensive investigation into the facts and law relating to this matter through the course of discovery.  Bursor Decl. ¶ 4.  This investigation has included massive discovery efforts including review of more than 140,000 pages of documents.  *Id.* Class Counsel has taken the depositions of six current or former Zicam employees and officers as well as four expert witnesses.  *Id.*  Class Counsel has also interviewed and retained experts, conducted numerous interviews with members of the putative class, and done significant legal research and briefing including successfully seeking class certification, and successfully opposing Defendants' second motion for summary judgment and *Daubert* briefs.  *Id.*  As a result of these efforts, Class Counsel is fully informed of the merits of this action and the proposed settlement.

The proposed Settlement Class meets every element of Rule 23(a) and (b)(3) for settlement purposes.  The Settlement Class is so numerous that the joinder of all members is impracticable; there are questions of law or fact common to the proposed Settlement Class; the proposed Class Representative's claims are typical of those of the Settlement Class; and the proposed Class Representative will fairly and adequately protect the interests of the proposed Settlement Class.  In addition, common issues of law and fact predominate over any questions affecting only individual class members.  In particular, application of Arizona law to a nationwide class is appropriate because Arizona's substantial interest in regulating the conduct of companies based in Arizona outweighs the interests of all other jurisdictions.  Finally, a class action as proposed here is superior to other available methods for the fair and efficient adjudication of the controversy.[2]

## II.    PROCEDURAL BACKGROUND

### A.    Litigation

On January 21, 2014, Plaintiff Yesenia Melgar commenced an action entitled *Melgar v. Zicam LLC, et al* (United States District Court, Eastern District of California, Case No. 2:14-cv-00160-MCE-AC) (the "Action"), as a proposed class action, asserting claims under the Magnuson-Moss Act 15 U.S.C. § 2301, *et seq.*, Civil Code § 1750 *et seq.* (the Consumers Legal Remedies Act or "CLRA"), California Business and Professions Code § 17200 *et seq.* (the Unfair Competition Law or "UCL"), California Business and Professions Code § 17500 *et seq.* (the False Advertising Law or "FAL"), and for Breach of Express Warranty, Breach of Implied Warranty of Merchantability, and Breach of Implied Warranty of Fitness for a Particular Purpose.  Plaintiff alleges, *inter alia*, that Defendants deceived customers by falsely representing that the Zicam Products (defined below) reduce the duration and severity of a cold.

On February 21, 2014, Plaintiff Yesenia Melgar filed a First Amended Complaint ("FAC") asserting the same claims.  Dkt. No. 10.

---

[2] The arguments contained in this brief are made for settlement purposes only.  Defendants have informed Plaintiff that they reserve their right to argue that class certification would be improper if this case proceeded on the merits, and that the elements necessary for class certification are not met in this case.  Defendants have also informed Plaintiff that, although the parties have agreed to propose a settlement on behalf of a nationwide class under Arizona law, Defendants reserve their right to argue that this Court should not preside over a proposed nationwide class for any purpose other than settlement.

Defendants answered the FAC on March 18, 2014, denying liability.  Dkt. No. 11.

The Parties then engaged in extensive discovery, including 18 fact and expert depositions, and the exchange of multiple written discovery responses and tens of thousands of documents.

On April 3, 2015, Plaintiff filed a Motion for Class Certification.  Dkt. Nos. 24, 41. Defendants opposed Plaintiff's Motion.  Dkt. Nos. 30, 39, 93.   On March 31, 2016, the Court granted Plaintiff's motion and certified two classes: (1) Purchasers who bought RapidMelts Original, RapidMelts Ultra, Oral Mist, Ultra Crystals, Liqui-Lozenges, Lozenges Ultra, and Chewables after February 15, 2011 in California, Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia and West Virginia; and (2) All members of the Class who purchased the Products in California.  Dkt. No. 116.

On May 21, 2015, Defendants filed a Motion for Partial Summary Judgment on Plaintiff's claims for injunctive relief.  Dkt. No. 33.  Plaintiff did not oppose Defendants' motion.  Dkt. No. 51. On March 31, 2016, the Court granted Defendants' motion.  Dkt. No. 116.

On July 28, 2015, Defendants filed a Motion to Strike Plaintiff's Supplemental Designation of Experts with an Ex Parte Application for an Order Shortening Time to Hear Defendants' Motion to Strike Plaintiff's Supplemental Expert Designation.  Dkt. Nos. 55, 56, 62, 87.  Plaintiff opposed both Defendants' Motion to Strike and Defendants' Ex Parte Application.  Dkt. Nos. 56, 63, 78.  On July 31, 2015, Magistrate Judge Claire denied Defendants' Ex Parte Application for an Order Shortening Time.  Dkt. No. 64.  On September 9, 2015, Magistrate Judge Claire granted Defendants' motion to strike the supplemental designation of Dr. Edzard Ernst, and denied Defendants' motion to strike the supplemental designation of Dr. Elizabeth Howlett.  Dkt. No. 94.

On August 6, 2015, Defendants filed a Motion for Summary Judgment or in the Alternative Summary Adjudication.  Dkt. Nos. 69, 109.  *See also* Dkt. No. 107 (seeking leave to file second MSJ).  Plaintiff opposed Defendants' motion.  Dkt. No. 99.  On March 31, 2016, the Court denied Defendants' motion.  Dkt. No. 116.  *See also* Dkt. No. 114 (granting leave to file second MSJ).

On August 6, 2015, Defendants filed a Motion to Exclude Opinion Testimony of Designated Expert Noel R. Rose, M.D., Ph.D., and a Motion to Exclude Opinion Testimony of Designated Expert R. Barker Bausell Ph.D.  Dkt. Nos. 70, 71, 110, 111.  Plaintiff opposed Defendants' motions.

1   Dkt. No. 96.  On March 31, 2016, the Court denied Defendants' motions.  Dkt. No. 116.

2       On December 11, 2017, the Parties filed their Joint Pretrial Conference Statement. Dkt No.

3   152.  This was followed shortly by the filing of Plaintiff's Trial Brief (Dkt. No. 154) and Motions in

4   Limine (Dkt. No, 155) and Defendants' Trial Brief (Dkt. No. 158) and Motions in Limine (Dkt. No.

5   157) on December 18, 2017.  On January 11, 2018, the Parties filed oppositions to each other's

6   Motions in Limine.  Dkts. No. 173 and 174.  On January 12, 2018, the Court vacated all pretrial

7   dates and set a status conference regarding trial setting for March 7, 2019.  Dkt. No. 176.

8       **B.       Settlement**

9       Over the course of the litigation, the parties have engaged in extensive settlement

10  negotiations.  The Parties participated in four separate settlement attempts before reaching

11  agreement on this Stipulation.  On October 21, 2014, the Parties attended a settlement conference

12  before Magistrate Judge Kendall J. Newman.  Dkt. No. 20.  On December 16, 2015, the Parties

13  attended a mediation with Justice Fred K. Morrison (Ret.) at JAMS in Sacramento.  On May 17,

14  2017, the Parties attended a mediation with the Honorable Frank Maas (Ret.) at JAMS in New York.

15  Finally, on February 15 and 16, 2018, the parties attended a two-day mediation with renowned

16  mediator Kenneth Feinberg in New York.  *See* Feinberg Decl. ¶ 9.   At this final mediation the

17  parties executed a Class Action Settlement Term Sheet.  *Id*. ¶ 11.  The parties reached agreement on

18  a formal Stipulation of Settlement on May 2, 2018.

19  **III.     THE LEGAL STANDARD FOR PRELIMINARY APPROVAL**

20      Approval of class action settlements involves a two-step process.  First, the Court must make

21  a preliminary determination whether the proposed settlement appears to be fair and is "within the

22  range of possible approval."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal.

23  2007); *Alaniz v. California Processors, Inc.*, 73 F.R.D. 269, 273 (N.D. Cal. 1976), *cert. denied sub*

24  *nom. Beaver v. Alaniz*, 439 U.S. 837 (1978).  If so, notice can be sent to class members and the

25  Court can schedule a final approval hearing where its final review of the settlement terms will take

26  place.  *See Manual for Complex Litigation, 3d Edition*, § 30.41 at 236-38 (hereafter, the "Manual").

27      The purpose of preliminary approval is for the Court to determine whether the parties should

28  notify the putative class members of the proposed settlement and proceed with a fairness hearing.

*See In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1079.  Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *Id.* (*quoting* MANUAL FOR COMPLEX LITIG., SECOND § 30.44 (1985)).  Preliminary approval does not require an answer to the ultimate question of whether the proposed settlement is fair and adequate. That determination occurs only after notice of the settlement has been given to the members of the settlement class.  *See Dunk v. Ford Motor Company*, 48 Cal. App. 4th 1794, 1801 (1996).

Nevertheless, a review of the standards applied in determining whether a settlement should be given *final* approval is helpful to the determination of preliminary approval.  Courts may consider, for example, the strong judicial policy of encouraging compromises, particularly in class actions.  *See In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (citing *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615 (9th Cir. 1982, *cert. denied*, 459 U.S. 1217 (1983)).

> Beginning with the first [pretrial] conference, and from time to time throughout the litigation, the court should encourage the settlement process.  The judge should raise the issue of settlement at the first opportunity, inquiring whether any discussions have taken place or might be scheduled.  As the case progresses, and the judge and counsel become better informed, the judge should continue to urge the parties to consider and reconsider their positions on settlement in light of current and anticipated developments.

*Manual*, § 23.11 at 166.

While the district court has discretion regarding the approval of a proposed settlement, it should give "proper deference to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998).  In fact, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995).  Ultimately, however, the Court's role is to ensure that the settlement is fundamentally fair, reasonable, and adequate.  *See In re Syncor*, 516 F.3d at 1100.

Beyond the public policy favoring settlements, the principal consideration in evaluating the fairness and adequacy of a proposed settlement is the likelihood of recovery balanced against the benefits of settlement.  "[B]asic to this process in every instance, of course, is the need to compare

the terms of the compromise with the likely rewards of litigation." *Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968). That said, "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625.

In preliminarily evaluating the adequacy of a proposed settlement, particular attention should be paid to the process of settlement negotiations. *See, e.g., Vind v. Prudential Ins. Co. of Am.,* 2011 WL 13183043, at *1 (C.D. Cal. Jan. 10, 2011) (noting that the "parties engaged in arm's length settlement negotiations taking place over a period of months before reaching the proposed settlement" in granting preliminary settlement approval). Here, the negotiations were conducted by experienced class action counsel, with significant involvement by renowned mediator Kenneth Fienberg. Thus, counsel's assessment and judgment are entitled to a presumption of reasonableness, and the court is entitled to rely heavily upon their opinion. *Boyd v. Bechtel Corp.*, 485 F. Supp. 610, 622-23 (N.D. Cal. 1979).

## IV.    THE STIPULATION OF SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE

Rule 23(e)(2) provides that "the court may approve [a proposed class action settlement] only after a hearing and on finding that it is fair, reasonable, and adequate." When making this determination, the Ninth Circuit has instructed district courts to balance several factors: (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; and (6) the experience and views of counsel. *Hanlon*, 150 F.3d at 1026;[3] *Churchill Village, L.L.C. v. Gen.*

---

[3] In *Hanlon*, the Ninth Circuit also instructed district courts to consider "the reaction of the class members to the proposed settlement." *Hanlon*, 150 F.3d at 1026. This consideration is more germane to final approval, and will be addressed at the appropriate time.

1  *Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).  Here, the balance of these factors weighs in favor of

2  preliminary approval.

3         **A.**       **Strength of Plaintiff's Case and the Specific Risks of This Litigation**

4         In determining the likelihood of a plaintiff's success on the merits of a class action, "the

5  district court's determination is nothing more than an amalgam of delicate balancing, gross

6  approximations and rough justice." *Officers for Justice*, 688 F.2d at 625 (internal quotations

7  omitted).  The court may "presume that through negotiation, the Parties, counsel, and mediator

8  arrived at a reasonable range of settlement by considering Plaintiff's likelihood of recovery."

9  *Garner v. State Farm. Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010)

10  (citing *Rodriguez v. West Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009)).

11         Plaintiff believes that she could prove to a jury that the Zicam Products are mere placebos.

12  That belief is based on the testimony of Plaintiff's experts, the academic literature, and the discovery

13  taken in this action.  But Plaintiff also understands that proceeding to trial poses serious risks.  Such

14  considerations have been found to weigh heavily in favor of settlement.  *See Rodriguez*, 563 F.3d at

15  966; *Curtis-Bauer v. Morgan Stanley & Co., Inc.*, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22,

16  2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation

17  and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

18         Plaintiff also faces the risk of establishing liability at trial in light of conflicting expert

19  testimony between her own expert witnesses and Defendants' expert witnesses.  In this "battle of

20  experts," it is virtually impossible to predict with any certainty which testimony would be credited,

21  and ultimately, which expert version would be accepted by the jury.  The experience of Plaintiff's

22  counsel has taught them that these considerations can make the ultimate outcome of a trial highly

23  uncertain.  Indeed, a jury in a similar case involving claims that the defendants' cold products were

24  no more effective than a placebo concluded that the plaintiffs had not met their burden of proof and

25  found for defendants on every claim.  *See Allen v. Hyland's Inc.*, Case No. 12-cv-01150-DMG-

26  MAN, Dkt. 426 (Verdict Form); *see also Lewert v. Boiron, Inc.*, 11-cv-10803, Dkt. 447 (Verdict

27  Form).  The results of the *Allen* and *Lewert* trials are sobering.  These examples make clear that a

28  favorable result cannot be guaranteed for the class.  There is no guarantee that the verdict in this

1    action would be any different than the verdict in these trials.  *See Shames v. Hertz Corp.*, 2012 WL

2    5392159, at *6 (S.D. Cal. Nov. 5, 2012) ("Plaintiffs faced significant uncertainty and risk of

3    nonrecovery at trial, making a pre-trial settlement a reasonable tactical choice.").  There is no

4    guarantee that the jury would have been more persuaded by Plaintiff's experts than by Defendants'

5    experts.  There is no guarantee that Plaintiff would have prevailed on her motions *in limine*, or that

6    Plaintiff would have successfully opposed Defendants' motions *in limine*.  There is no guarantee that

7    the Court would have given the jury instructions Plaintiff desired – an issue that would have been

8    highly contentious in this case.  By settling, Plaintiff avoids the risk of trial and guarantees a

9    recovery to the class.  Since the risks of proceeding to trial are substantial, the settlement warrants

10   preliminary approval.  *See e.g.*, *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523,

11   526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the

12   significance of immediate recovery by way of the compromise to the mere possibility of relief in the

13   future, after protracted and expensive litigation. In this respect, 'It has been held proper to take the

14   bird in hand instead of a prospective flock in the bush.'" (citations omitted)).

15          Moreover, even if Plaintiff were to prevail at trial, the class would face additional risks if

16   Defendants appealed or moved for a new trial.  For example, in *In re Apple Computer Sec. Litig.*,

17   1991 WL 238298, at *1 (N.D. Cal. Sept. 6, 1991), the jury rendered a verdict for plaintiffs after an

18   extended trial.  Based on the jury's findings, recoverable damages would have exceeded $100

19   million.  However, weeks later, Judge Ware overturned the verdict, entering judgment

20   notwithstanding the verdict for the individual defendants, and ordered a new trial with respect to the

21   corporate defendant.  *Id*.  By settling here, Plaintiff and the Class avoid these risks, as well as the

22   delays and risks associated with the appellate process.

23          **B.      Risk of Maintaining Class Action Status**

24          In addition to the risks of continuing the litigation, Plaintiff would also face risks in

25   maintaining class status through trial and appeal.  The class could still be decertified at any time.

26   *See In re Netflix Privacy Litig.*, 2013 WL 1120801, at *6 (N.D. Cal. Mar. 18, 2013) ("The notion

27   that a district court could decertify a class at any time is one that weighs in favor of settlement.")

28   (internal citations omitted).  From their prior experience, Plaintiff's counsel anticipates that

1   Defendants would likely move to appeal the Court's class certification decision, and/or move for

2   decertification.  Here, the Stipulation of Settlement eliminates these risks by ensuring class members

3   a recovery that is "certain and immediate, eliminating the risk that class members would be left

4   without any recovery … at all." *Fulford v. Logitech, Inc.*, 2010 U.S. Dist. LEXIS 29042, at *8 (N.D.

5   Cal. Mar. 5, 2010).

6         **C.      The Amount Offered in Settlement**

7         The Stipulation of Settlement states that Defendants will pay $16 million into a Settlement

8   Fund for the benefit of the Settlement Class.  Stipulation of Settlement, Article 2.1, Under the

9   Settlement, Class Members who submit valid claims will recover according to the average

10  manufacturer's suggested retail price ("MSRP") during the Class Period for each of the Zicam

11  Products purchased.  Stipulation of Settlement, Article 2.4(a).  Claims based on purchases of up to

12  five units of the Products will be paid without requiring proof of purchase. *Id.*, Article 2.5.  Claims

13  based on purchases of six or more units of the Products will require proof of purchase *Id.*  Payment

14  will be adjusted based on the number of claims submitted and the portion of the Settlement Fund

15  available for distribution.  This structure will ensure total exhaustion of the Settlement Fund, with

16  every penny going directly to class members (after distribution of costs and fees). *Id.*, Article 2.7

17  Nationally renowned mediator, Kenneth Feinberg, determined that the settlement fell within a

18  reasonable range for a case of this type given the risks associated with attempting to establish and

19  collect on claims through litigation and appeal.  Feinberg Decl. ¶ 12.  Thus, the settlement should be

20  presumed to be in the "reasonable range of settlement." *Garner v. State Farm. Mut. Auto. Ins. Co.*,

21  2010 WL 1687832, at *9 (N.D. Cal. Apr. 22, 2010) (citing *Rodriguez v. West Publ'g Corp.*, 563

22  F.3d 948, 965 (9th Cir. 2009)).

23        **D.      The Extent of Discovery and Status of Proceedings**

24        The Court must also evaluate whether class counsel had sufficient information to make an

25  informed decision about the merits of the case. *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454,

26  459 (9th Cir. 2000).  The settlement was reached on the eve of trial, after four years of discovery and

27  hard-fought litigation.  Given the procedural history of this case, there can be no doubt that Class

28  Counsel had sufficient information to make an informed decision about the merits of this case as

compared to the benefit provided by the proposed settlement.  *See supra* § II.  Additionally, substantial settlement negotiations have taken place between the Parties.  Notably, when a settlement is negotiated at arm's-length by experienced counsel, there is a presumption that it is fair and reasonable.  *See In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378; Feinberg Decl. ¶ 12.  The Parties also worked closely with no less than four separate mediators.  *See supra* § II.B.  Kenneth Fienberg, an experienced mediator, ultimately facilitated the Parties' resolution.  Feinberg Decl. ¶¶ 5, 7-12; *see also In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011) ("[The] presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness.").  The Stipulation of Settlement is plainly the result of fully-informed negotiations.

### E. Experience and Views of Counsel

"The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008).  Deference to Plaintiff's counsel's evaluation of the Settlement is appropriate because "[p]arties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967 (citing *In re Pac. Enters. Sec. Litig.*, 47 F.3d at 378).

Here, the Settlement was negotiated by counsel with extensive experience in consumer class action litigation.  *See* Bursor Decl. Ex. 2 (firm resume of Bursor & Fisher, P.A.).  Based on their collective experience, Class Counsel concluded that the Stipulation of Settlement provides exceptional results for the class while sparing the class from the uncertainties of continued and protracted litigation.

### V. THE COURT SHOULD PROVISIONALLY CERTIFY THE SETTLEMENT CLASS FOR THE PURPOSES OF PRELIMINARY APPROVAL

The Ninth Circuit has recognized that certifying a settlement class to resolve consumer lawsuits is a common occurrence.  *Hanlon*, 150 F.3d at 1019.  A court must determine whether the putative settlement class satisfies the requirements for class certification under Rule 23.  *See* Fed. R. Civ. P. 23(e) ("The claims, issues, or defenses of a certified class may be settled, voluntarily dismissed, or compromised only with the court's approval.").  In assessing those class certification

requirements, a court may properly consider that there will be no trial. *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

### A. Numerosity

In its order granting class certification, the Court found the "class is so numerous that joinder of all members of both classes is impracticable." Order Granting Motion for Class Certification ("Class Cert. Order") (Dkt. No. 116) at *5. The addition of several products and potential class members from additional states across the country to the Settlement Class only buttresses the Court's prior ruling regarding numerosity.

### B. Commonality and Predominance

#### 1. Commonality

Rule 23(a)(2) requires a showing that "there are questions of law or fact common to the class." Likewise, under Rule 23(b)(3), questions common to the class members must predominate over questions affecting only individual class members. Predominance exists "[w]hen common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication." *Hanlon*, 150 F.3d at 1022. As the U.S. Supreme Court has explained, when addressing the propriety of certification of a settlement class, courts take into account the fact that a trial will be unnecessary and that manageability, therefore, is not an issue. *Amchem*, 521 U.S. at 620

In this case, common questions of law and fact exist and predominate over any individual questions. Plaintiff alleges that Defendants uniformly misrepresented that the Products are effective for shortening the duration of cold and treating cold symptoms. The Zicam Products contain substantially similar representations. Class Cert Order at 5-6.

Common evidence would determine whether the Products are nothing more than placebos. As a result, "[e]very class member has the same basic claim: they purchased Defendants' products because of Defendants' statements in advertisements and on the packaging of the products, and those statements were false because the products are no more effective than a placebo." Class Cert. Order

1  at 6.  "Resolution of those common claims depends on a critical common question of fact: whether

2  Defendants' statements were in fact false."  *Id.*  "The answer to that common question is "more

3  prevalent or important" than the individual issues" and thus predominates.  *Id.* at 9.

4         **2.     Predominance**

5         Similarly, common questions of law predominate over individual questions.  The Ninth

6  Circuit recently held that a district court must conduct a choice of law analysis when certifying a

7  class for settlement purposes.  *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 692 (9th Cir.

8  2018).[4]  To conduct this analysis, "[a] federal court sitting in diversity must look to the forum state's

9  choice of law rules to determine the controlling substantive law."  *Mazza v. Am. Honda Motor Co.*,

10  666 F.3d 581, 589 (9th Cir. 2012) (quotation omitted).  California's choice of law rules first require

11  a determination that the application of the proposed law is constitutional.  *Forcellati v. Hyland's,

12  Inc.*, 876 F. Supp. 2d 1155, 1160 (C.D. Cal. 2012); *see also Chavez v. Blue Sky Nat. Beverage Co.*,

13  268 F.R.D. 365, 379 (N.D. Cal. 2010).

14         Here, Plaintiff seeks certification of a nationwide class under the Arizona Consumer Fraud

15  Act, Ariz. Rev. Stat. § 44-1521, *et seq.*, which prohibits "any deceptive or unfair act or practice … in

16  connection with the sale or advertisement of any merchandise."   Ariz. Rev. Stat. § 44-1522.

17  Application of Arizona law poses no constitutional concerns because Defendants are headquartered

18  in Arizona and certain conduct at issue (*e.g.* product formulation, marketing representations)

19  emanated from that state.  In similar circumstances, courts within this Circuit have held that

20  application of the law of the state from which the alleged wrongful activity emanates is

21  constitutional.  *See, e.g.*, *Forcellati v. Hyland's, Inc.*, 2014 WL 1410264, at *2 (C.D. Cal. Apr. 9,

22  2014) (noting that as "Defendants are headquartered in California, we have already held that

23  application of California law 'poses no constitutional concerns' in this case") (quotation omitted).

24

25  _____

26  [4]  In *Hyundai*, the Ninth Circuit held a district court erred when it "did not conduct a choice of law
analysis, and did not apply California law or the law of any particular state in deciding to certify the
[nationwide] class for settlement."  881 F.3d at 702.  "This does not mean that the court is foreclosed

27  from certifying a class (or subclasses) on remand."  *Id.* at 703. While this settlement meets the
standard set forth in *Hyundai*, that case is currently the subject of a request for *en banc* review.

28

Next, under California's choice of law analysis, the court engages in a three-step governmental interest test to determine whether a true conflict of laws exists and if so, which state's interest is greater.  Here, although there are some material differences in the consumer protection laws of the states implicated by this settlement, the application of the Arizona law to a nationwide class would further the stronger interests of Arizona without impairing the lesser interests of other states.

*First*, the Court must determine whether the relevant law of each of the potentially affected jurisdictions is the same or materially different.  *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d at 693.  Here, where the settlement involves a nationwide class, the Ninth Circuit has determined that there are material differences between the consumer protections statutes of the various states.  In *Mazza*, the Ninth Circuit pointed out several material differences in the consumer protection laws of the various states and specifically noted that scienter, reliance, and available remedies were among the material differences that exist between the consumer protection laws nationwide.  *Mazza*, 666 F.3d at 591.

*Second*, because differences exist between the laws of the various states, the court must next examine each affected jurisdiction's interest in the application of its own law under the circumstances of the particular case to determine whether a true conflict exists.  *Id.* at 589.   The Arizona Consumer Fraud Act articulates a substantial and legitimate state interest in regulating a defendant's conduct that deceives consumers in other states.  The Arizona Consumer Fraud Act applies to anyone who has been allegedly victimized by a company doing business in Arizona.  *State ex rel. Corbin v. Goodrich*, 151 Ariz. 118, 726 P.2d 215, 221 (Ct. App. 1986) ("Victims need not be Arizona residents in order for the state to enforce its statutes against a person or persons conducting business within the state.").  Indeed, Arizona has "the legitimate interest in insuring that local business is conducted honestly."  *Id.*; *see also State ex rel. Corbin v. Pickrell*, 136 Ariz. 589, 667 P.2d 1304, 1312 (1983) ("Indeed, it would appear that the state has a legitimate interest in redressing the wrongs committed from within Arizona. There is a moral imperative to provide redress for those injured. Further, when out-of-state investors are swindled by Arizona enterprises, the reputations and businesses of the majority of honest business people within the state are harmed.").  California

choice of law recognizes a state's substantial interest in regulating conduct emanating from such state.  *See Clothesrigger, Inc. v. GTE Corp.*, 191 Cal. App. 3d 605, 616 (1987).

Although incrementally different monetary recoveries might be available under other states' laws as compared to Arizona's,[5] there is no "true conflict" between the states' laws because the intent of these laws is the same as Arizona's.  *See, e.g.*, *Heritage Vill. Owners Ass'n, Inc. v. Golden Heritage Inv'rs, Ltd.*, 89 P.3d 513, 518 (Colo. App. 2004) (Colorado's consumer protection laws are intended "to provide prompt, economical, and readily available remedies against consumer fraud and to promote private enforcement."); *Beerman v. Toro Mfg. Corp.*, 1 Haw. App. 111, 118 (1980) ("the paramount purpose of [consumer protection] statutes is to prevent deceptive practices by businesses that are injurious to other businesses and consumers"); Ind. Code Ann. § 24-5-0.5-1 (stating purpose of Indiana consumer protection statutes is to "protect consumers from suppliers who commit deceptive and unconscionable sales acts; and [] encourage the development of fair consumer sales practices."); *Milford Lumber Co. v. RCB Realty, Inc.*, 147 N.H. 15, 27, 780 A.2d 1259, 1268–69 (2001) (stating that the purpose of New Hampshire's consumer protection act "to regulate business practices for *consumer protection* by making it unlawful for persons engaged in trade or commerce to use various methods of unfair competition and deceptive business practices"); *Holmes v. LG Marion Corp.*, 258 Va. 473, 478 (1999) (noting one of the intentions of the Virginia consumer protection laws is to provide "restitution for damages incurred").  States with consumer protection laws that provide statutory recovery thresholds or treble damages provisions will not be significantly impaired (or impaired at all) if Arizona's consumer protection laws apply to this Settlement. Indeed, consumers are guaranteed full recovery for up to 5 products with no proof of purchase, unlimited recovery for 6 or more products with proof of purchase, and the likelihood of additional pro-rata recovery based on the generous settlement fund and the fact that the settlement is non-reversionary.

---

[5] *See, e.g.*, Va. Code Ann. § 59.1-204 (allowing for statutory damages of $500 if that amount exceeds actual damages and providing for treble damages if defendant's conduct is found to be "willful"); Haw. Rev. Stat. Ann. § 480-13 (providing for an award of "not less than $1,000"); Alaska Stat. Ann. § 45.50.531 (providing for actual damages or "$500, whichever is greater"); Colo. Rev. Stat. Ann. § 6-1-113 (same); Ind. Code Ann. § 24-5-0.5-4 (same); N.H. Rev. Stat. Ann. § 358-A:10 (providing for actual damages, or $1,000, whichever is greater).

1   And class members enjoy these benefits without having to prove the merits of their claims at trial, let

2   alone damages on a classwide basis.

3        Similarly, a foreign state's interest in setting "limitations on liability" also does not create a

4   "true conflict." *Mazza*, 666 F.3d at 590, 593.  While *Mazza* identified this state interest in the

5   context of a contested class certification motion where the defendant sought to avail itself of the

6   greater protection afforded by various states, (*id*.), Defendants here agreed to the application of

7   Arizona law in the settlement context.  There is no legitimate state interest in protecting Defendants

8   from a voluntary waiver of potentially more favorable law in other states.  Accordingly, there is no

9   true conflict between Arizona law and the laws of the various states at issue here.  *Hurtado, v.*

10  *Superior Court*, 11 Cal. 3d 574, 580 (1974) ("Although the two potentially concerned states have

11  different laws, there is still no problem in choosing the applicable rule of law where only one of the

12  states has an interest in having its law applied."); *Chen v. L.A. Truck Centers, LLC*, 7 Cal. App. 5th

13  757, 775 (Ct. App. 2017) (where one state has a strong interest which would be impaired by the

14  application of the law of a state which has no interest, there is no true conflict); *see e.g., Pokorny v.*

15  *Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) (finding no "true conflict" between the interests of

16  the states under the second step of California's governmental interest analysis).

17       *Third*, if the Court here did find that there is a true conflict, it must then compare the nature

18  and strength of the interest of each jurisdiction in the application of its own law to determine which

19  state's interest would be more impaired if its policy were subordinated to the policy of the other

20  state.  The court then ultimately applies the law of the state whose interest would be more impaired

21  if its law were not applied. *Mazza*, 666 F.3d at 590.  Here, Arizona's governmental interests would

22  be directly frustrated if corporations headquartered and actively operating within its borders were not

23  answerable for consumer fraud to the full extent authorized under Arizona law.  *See Clothesrigger,*

24  *Inc.*, 191 Cal. App. 3d at 614 ("California's interest in deterring fraudulent conduct by businesses

25  headquartered within its borders and protecting consumers from fraudulent misrepresentations

26  emanating from California would override any possible interest of any other state in application of

27  its own laws to its residents' claims.").  Conversely, here, the interests of the consumers from states

28  outside of Arizona are well-protected given Arizona's consumer-friendly laws and its strong interest

in protecting consumers from outside the state who do business with Arizona companies. *State ex rel. Corbin*, 726 P.2d at 221.

Accordingly, application of Arizona law to the proposed nationwide Settlement Class is appropriate. Because the laws of a single jurisdiction properly apply to the claims at issue, questions of law predominate.

**C.    Typicality**

"Typicality under Rule 23(a)(3) is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Class Cert. Order at *6. Here, "Plaintiff contends that she purchased one of Defendants' products in California based on Defendants' misrepresentations. That basic claim is sufficiently parallel, and shares common issues of law and fact, to that of the proposed classes of fellow purchasers." *Id.* at *8. Plaintiff's claims are typical of the class because Plaintiff's theory of the case that the products are uniformly ineffective applies equally to both Plaintiff and the Settlement Class Members.

**D.    Adequacy**

The Court already concluded that Plaintiff Melgar "will fairly and adequately protect the interests of the proposed classes.'" Class Cert. Order at *8. Since the Court reached this conclusion, Plaintiff has continued to perform her duties as class representative. *See* Bursor Decl. ¶ 5. For example, Plaintiff was prepared to appear at trial, and consulted with her counsel concerning the proposed settlement to ensure that it was in the best interest of the Settlement Class Members. *Id.* Moreover, as this Court has already found, Plaintiff has no conflicts of interest with the class, has the same interests as the Class Members, and has retained competent counsel. Class Cert Order at *7 ("The Court find that Plaintiff, who has a claim typical of the class, will fairly and adequately protect the interests of the proposed classes."). Thus, Plaintiff has adequately represented the interests of the Class Members, and should be appointed Class Representative of the Settlement Class.

Plaintiff's counsel, Bursor & Fisher, P.A., have also continued to perform their duties as Class Counsel. *See* Bursor Decl. Ex. 2 (firm resume); *see also* Class Cert. Order at *7 ("The Court first finds that class counsel will fairly and adequately protect the interests of the class"). Following class certification, Class Counsel prepared for trial and eventually reached a settlement that provides

potential full refunds to Class Members – the exact relief that Plaintiff sought on behalf of herself and the Class Members.  Therefore, Class Counsel should be appointed to represent the interests of the Settlement Class Members.

### E.      Superiority

Rule 23(b)(3) also requires that "a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy."  In addressing this issue at class certification, the Court concluded that "because it would not be economically feasible to obtain relief for each class members given the small size of each class member's claim and the alternative for class members is no recovery, a class action is unquestionably the superior method of adjudication."  Class Cert. Order at *10.  Class treatment is superior.  As a result, each of the requirements of Rule 23 are met, and the Court should conditionally certify the Settlement Class, for settlement purposes.

### VI.     THE PROPOSED NOTICE PROGRAM PROVIDES ADEQUATE NOTICE AND SHOULD BE APPROVED

Once preliminary approval of a class action settlement is granted, notice must be directed to class members.  For class actions certified under Rule 23(b)(3), including settlement classes like this one, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B).  In addition, Rule 23(e)(1) applies to any class settlement and requires the Court to "direct notice in a reasonable manner to all class members who would be bound by a proposal."   Fed R. Civ. P. 23(e)(1).

When a court is presented with a classwide settlement prior to the certification stage, the class certification notice and notice of settlement may be combined in the same notice.  *Manual*, § 21.633 at 321-22 ("For economy, the notice under Rule 23(c)(2) and the Rule 23(e) notice are sometimes combined.").  This notice allows the settlement class members to decide whether to opt out, participate in the class, or object to the settlement.  *Id.*

The requirements for the content of class notices for (b)(3) classes are specified in Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii).  Each of the proposed forms of notice, including the Long Form and Short Form notices, meet all of these requirements, as detailed in the following table:

| Requirement | Long Form | Short Form |
|---|---|---|
| "The nature of the action." Fed. R. Civ. P. 23(c)(2)(B)(i). | First introductory bullet; Q&A nos. 1 and 2. | Col. 1, ¶ 1. |
| "The definition of the class certified." Fed. R. Civ. P. 23(c)(2)(B)(ii). | Third introductory bullet; Q&A no. 5. | Col. 1, ¶ 2. |
| "The class claims, issues, or defenses." Fed. R. Civ. P. 23(c)(2)(B)(iii). | First introductory bullet; Q&A nos. 1, 2, 3, and 4. | Col. 1, ¶ 1. |
| "That a class member may enter an appearance through an attorney if the member so desires." Fed. R. Civ. P. 23(c)(2)(B)(iv). | Table of "Your Legal Rights and Options;" Q&A no. 13, 14, and 19. | Col. 2, ¶ 4. |
| "That the court will exclude from the class any member who requests exclusion." Fed. R. Civ. P. 23(c)(2)(B)(v). | Table of "Your Legal Rights and Options;" Q&A nos. 3 and 12. | Col. 2, ¶ 3. |
| "The time and manner for requesting exclusion." Fed. R. Civ. P. 23(c)(2)(B)(vi). | Table of "Your Legal Rights and Options;" Q&A no. 8. | Col. 2, ¶ 3. |
| "The binding effect of a class judgment on members under Rule 23(c)(3)." Fed. R. Civ. P. 23(c)(2)(B)(vii). | Table of "Your Legal Rights and Options;" Q&A nos. 9, 10, 12, 15, and 20. | Col. 1, ¶ 5. |

In addition to meeting the specific legal requirements of Fed. R. Civ. P. 23(c)(2)(B)(i)-(vii), the proposed notices are based on the Federal Judicial Center's model forms for notice of pendency of a class action. FJC prepared these models at the request of the Subcommittee on Class Actions of the U.S. judicial branch's Advisory Committee on the Federal Rules of Civil Procedure. *See* www.fjc.gov. The FJC models are designed to illustrate how attorneys and judges might comply with Fed. R. Civ. P. 23(c)(2)(B)'s requirement that class action notices "must concisely and clearly state in plain, easily understood language" specific information about the nature and terms of a class

action and how it might affect potential class members' rights.  *See* www.fjc.gov.  FJC explained its

methodology for preparing these models as follows:

> We began this project by studying empirical research and commentary
> on the plain language drafting of legal documents.  We then tested
> several notices from recently closed class actions by presenting them
> to nonlawyers, asking them to point out any unclear terms, and testing
> their comprehension of various subjects. Through this process, we
> identified areas where reader comprehension was low.  We found, for
> example, that nonlawyers were often confused at the outset by use of
> the terms "class" and "class action."  Combining information from the
> pilot test with principles gleaned from psycholinguistic research, we
> drafted preliminary illustrative class action notices and forms. We then
> asked a lawyer-linguist to evaluate them for readability and redrafted
> the notices in light of his suggestions.

*Id.*  FJC then tested the redrafted model notices "before focus groups composed of ordinary citizens

from diverse backgrounds" and also through surveys "[u]sing objective comprehension measures."

*Id.*

Based on FJC's testing, the Plaintiff and Class Counsel believe that each of the proposed

class notices, which are very closely based on FJC models, with the format and content adopted

almost verbatim in most instances, are accurate, balanced, and comprehensible.

These notices will be disseminated through a media plan developed by RG/2 Claims

Administration LLC ("RG/2"), a firm with experience administering hundreds of settlements, which

has been chosen by the parties as the Settlement Administrator.  *See* Stipulation of Settlement,

Article 1.29, Bursor Decl. Ex. 1; Wickersham Decl. Ex. 1.  RG/2's proposed notice plan includes

individual notice by first class mail and email to more than 158,000 class members who are

identifiable from Defendants' business records, a printed publication in the Wall Street Journal as

well as in Men's Health and Women's Health magazines, creation of a dedicated settlement website,

and an internet banner ad and social media campaign that will reach an estimated 75% of likely class

members on average 1.8 to 2 times each.  Wickersham Decl. ¶¶ 11-30.  RG/2 estimates that its

services in providing notice and claims administration will cost $897,220.  *See* Wickersham

Decl. ¶ 31.

1  This proposed method of giving notice was developed by RG/2, in collaboration with Class

2  Counsel, with the objective of ensuring broad distribution of notice to Class Members in the most

3  simple and expedient manner.  *See, e.g.*, 4 Newberg on Class Actions § 12:35 (5th ed.) ("[A] court's

4  goal in distributing class action damages is to get as much of the money to the class members in as

5  simple a manner as possible."); *see also id.* § 12:15 ("The goal of any distribution method is to get as

6  much of the available damages remedy to class members as possible and in as simple and expedient

7  a manner as possible.").

8  **VII.    CONCLUSION**

9  For the foregoing reasons, Plaintiff respectfully requests that the Court approve the

10  Stipulation of Settlement, provisionally certify the Settlement Class for the purposes of preliminary

11  approval, approve the proposed notice plan, and enter the [Proposed] Order Preliminarily Approving

12  Class Action Settlement, submitted herewith.

13

14  Dated:  May 3, 2018                    **BURSOR & FISHER, P.A.**

15

16                                         By:   /s/ *Scott A. Bursor*
                                                 Scott A. Bursor

17                                         Scott A. Bursor (State Bar No. 276006)

18                                         L. Timothy Fisher (State Bar No. 191626)
                                           Thomas A. Reyda (State Bar No. 312632)

19                                         1990 North California Blvd., Suite 940
                                           Walnut Creek, CA 94596

20                                         Telephone: (925) 300-4455
                                           Facsimile: (925) 407-2700

21                                         E-Mail:  scott@bursor.com
                                                    ltfisher@bursor.com

22                                                    treyda@bursor.com

23                                         *Class Counsel*

24

25

26

27

28