1

**BURSOR & FISHER, P.A.**
Scott A. Bursor (State Bar No. 276006)

2

L. Timothy Fisher (State Bar No. 191626)
Thomas A. Reyda (State Bar No. 312632)

3

1990 North California Blvd., Suite 940
Walnut Creek, CA 94596

4

Telephone: (925) 300-4455
Facsimile: (925) 407-2700

5

E-Mail:  scott@bursor.com

6

       ltfisher@bursor.com
       treyda@bursor.com

7

*Class Counsel*

8

9

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

10

11

12

YESENIA MELGAR, on Behalf of Herself and All Others Similarly Situated,

13

               Plaintiff,

14

   v.

15

16

ZICAM LLC and MATRIXX INITIATIVES, INC.

17

              Defendants.

18

19

Case No. 2:14-cv-00160-MCE-AC

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR AN AWARD OF ATTORNEYS' FEES, COSTS AND EXPENSES, AND INCENTIVE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES**

Date:  November 15, 2018
Time:  2:00 p.m.
Courtroom 7, 14th Floor

Hon. Morrison C. England, Jr.

20

21

22

23

24

25

26

27

28

1

### NOTICE OF MOTION AND MOTION

2

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

3      **PLEASE TAKE NOTICE THAT** on November 15, 2018 at 2:00 p.m., or as soon thereafter

4  as the matter may be heard by the above-captioned Court, located at the Robert T. Matsui United

5  States Courthouse, 501 I Street, 14th Floor, Sacramento, CA 95814, in the courtroom of the

6  Honorable Morrison C. England, Jr., Plaintiff Yesenia Melgar, by and through the undersigned

7  counsel of record, will move and hereby does move, pursuant to Fed. R. Civ. P. 23(h), for entry of

8  the [Proposed] Order for an Award of Attorneys' Fees, Costs and Expenses, and Incentive Award.

9  This motion is based on: (1) this notice of motion and memorandum of points and authorities; (2) the

10  Declaration of L. Timothy Fisher in Support of Motions for Final Approval of Class Action

11  Settlement and for an Award of Attorneys' Fees, Costs and Expenses and Incentive Award; (3) the

12  Declaration of Yesenia Melgar; (4) the Declaration of Tina Chiango Regarding Notice to the Class;

13  (5) the papers and pleadings on file; and (6) the arguments of counsel at the hearing on the motion.

14

15  Dated:  September 19, 2018          **BURSOR & FISHER, P.A.**

16                                            By:  ___*/s/ L. Timothy Fisher*___
                                                      L. Timothy Fisher
17
                                              Scott A. Bursor (State Bar No. 276006)
18                                            L. Timothy Fisher (State Bar No. 191626)
                                              Thomas A. Reyda (State Bar No. 312632)
19                                            1990 North California Blvd., Suite 940
                                              Walnut Creek, CA 94596
20                                            Telephone: (925) 300-4455
                                              Facsimile: (925) 407-2700
21                                            E-Mail:  scott@bursor.com
                                                          ltfisher@bursor.com
22                                                        treyda@bursor.com

23                                            *Class Counsel*

24

25

26

27

28

# TABLE OF CONTENTS

**PAGE(S)**

I.      INTRODUCTION ................................................................................................ 1

II.     BACKGROUND AND PROCEDURAL HISTORY ........................................... 2

    A.      Litigation ................................................................................................ 2

    B.      Discovery ................................................................................................ 3

    C.      Settlement ............................................................................................... 4

III.    CLASS COUNSEL ARE ENTITLED TO AN AWARD OF REASONABLE FEES ................................................................................................................... 4

IV.     CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND REASONABLE ............................................................................... 4

    A.      The Court Should Apply the Percentage of the Benefit Method ............................. 5

        1.      All Relevant Factors Strongly Favor an Upward Departure from The Ninth Circuit's 25% Benchmark to 33.3% ................................... 5

            a.      Class Counsel Achieved Extraordinary Results for the Class ................................................................................... 6

            b.      Plaintiff's Claims Carried Substantial Risk ....................................... 7

            c.      It Took Great Skill to Achieve the Exceptional Results Realized in This Case ............................................................ 8

            d.      Class Counsel Handled This Case on a Contingent Fee Basis and Bore the Financial Burden for More Than Four Years ................................................................................... 9

            e.      Courts Routinely Award 33.3% in Similar Cases .......................... 10

    B.      Class Counsel's Attorneys' Fees Are Reasonable Under a Lodestar Cross-Check ........................................................................................ 12

        1.      Class Counsel Spent a Reasonable Number of Hours on This Litigation at a Reasonable Hourly Rate ....................................... 13

        2.      All Relevant Factors Support Applying a Multiplier to Class Counsel's Lodestar ........................................................................ 14

V.      CLASS COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY  INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE  CLASS ................................................................. 15

VI.     THE REQUESTED INCENTIVE AWARD FOR PLAINTIFF MELGAR IS REASONABLE ............................................................................................ 16

VII.    CONCLUSION ................................................................................................ 17

# TABLE OF AUTHORITIES

**PAGE(S)**

**CASES**

*Adoma v. Univ. of Phoenix, Inc.*,
  913 F. Supp. 2d 964 (E.D. Cal. 2012) .......................................................................... 13

*Aguilar v. Wawona Frozen Foods*,
  2017 WL 2214936 (E.D. Cal. May 19, 2017) ................................................. 11, 14, 15

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) ............................................................ 7, 11, 12, 13

*Bond v. Ferguson Enterprises, Inc.*,
  2011 WL 2648879 (E.D. Cal. June 30, 2011) ............................................................ 17

*Chambers v. Whirlpool*,
  214 F.Supp.3d 877 (C.D. Cal. 2016) .............................................................. 1, 2, 3, 4

*Davis v. Brown Shoe Company, Inc.*,
  2015 WL 6697929 (E.D. Cal. Nov. 3, 2015) ............................................................ 11

*Fischel v. Equitable Life Assur. Soc'y*,
  307 F.3d 997 (9th Cir. 2002) .................................................................................. 4, 15

*Garcia v. Gordon Trucking, Inc.*,
  2012 WL 5364575 (E.D. Cal. Oct. 31, 2012) ................................................... 11, 17

*Glass v. UBS Fin. Servs., Inc.*,
  2007 WL 221862 (N.D. Cal. Jan. 26, 2007) ............................................................ 17

*Graham v. DaimlerChrysler Corp.*,
  34 Cal.4th 553 (2004) .............................................................................................. 10

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ............................................................................ 4, 12

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ...................................................................................... 16

*Harris v. Vector Mktg. Corp.*,
  2012 WL 381202 (N.D. Cal. Feb. 6, 2012) ............................................................ 17

*Hartless v. Clorox Co.*,
  273 F.R.D. 630 (S.D. Cal. Jan. 20, 2011) ................................................................ 13

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .................................................................................................. 14

*In re Equity Funding Corp. Sec. Litig.*,
  438 F. Supp. 1303 (C.D. Cal. 1977) .......................................................................... 8

*In re HPL Techs., Inc. Sec. Litig.*,
  366 F. Supp. 2d 912 (N.D. Cal. 2005) ............................................................... 12, 13

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................................ 8, 9

*In re Pac. Enterprises Sec. Litig.*,
  47 F.3d 373 (9th Cir. 1995) ................................................................................................ 11

*In re Sumitomo Copper Litig.*,
  74 F.Supp.2d 393 (S.D.N.Y.1999) .................................................................................. 10

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
  19 F.3d 1291 (9th Cir.1994) ......................................................................................... 9, 10

*Kerr v. Screen Extras Guild, Inc.*,
  526 F.2d 67 (9th Cir. 1975) .......................................................................................... 12, 15

*Knight v. Red Door Salons, Inc.*,
  2009 WL 248367 (N.D. Cal. Feb. 2, 2009) ...................................................................... 5

*Martin v. AmeriPride Servs., Inc.*,
  2011 WL 2313604 (S.D. Cal. June 9, 2011)..................................................................... 12

*McKeen-Chaplin v. Provident Savings Bank, FSB*,
  2018 WL 3474472 (E.D. Cal. July 19, 2018) ............................................................. 10, 11

*Millan v. Cascade Water Services, Inc.*,
  2016 WL 3077710 (E.D. Cal. May 31, 2016) .................................................................. 11

*Miller v. CEVA Logistics USA, Inc.*,
  2015 WL 4730176 (E.D. Cal. Aug. 10, 2015) ................................................................. 14

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ............................................................................................... 14

*Morris v. Lifescan, Inc.*,
  54 F. App'x 663 (9th Cir. 2003) ....................................................................................... 11

*Paul, Johnson, Alston & Hunt v. Graulty*,
  886 F.2d 268 (9th Cir. 1989) ............................................................................................... 5

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ............................................................................................. 16

*Schiller v. David's Bridal, Inc.*,
  2012 WL 2117001 (E.D. Cal. 2012)................................................................................... 5

*Singer v. Becton Dickinson & Co.*,
  2010 WL 2196104 (S.D. Cal. June 1, 2010)..................................................................... 12

*Six (6) Mexican Workers v. Ariz. Citrus Growers*,
  904 F.2d 1301 (9th Cir. 1990) ............................................................................................. 5

*State of Florida v. Dunne*,
  915 F.2d 542 (9th Cir. 1990) ............................................................................................... 5

*Staton v. Boeing Co.*,
    327 F.3d 938 (9th Cir. 2003) ................................................................. 5, 15

*Steiner v. Am. Broad. Co.*,
    248 Fed. Appx. 780 (9th Cir. 2007) ............................................................ 15

*Taylor v. FedEx Freight, Inc.*,
    2016 WL 6038949 (E.D. Cal. Oct. 13, 2016) ............................................... 14

*Trujillo v. City of Ontario*,
    2009 WL 2632723 (C.D. Cal. Aug. 24, 2009) .............................................. 17

*Turk v. Gale/Triangle, Inc.*,
    2017 WL 4181088 (E.D. Cal. Sept. 21, 2017) ............................................. 17

*Van Lith v. iHeartMedia + Entertainment, Inc.*,
    2017 WL 4340337 (E.D. Cal. Sept. 29, 2017) ............................................... 5

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) ....................................................... 16, 17

*Vasquez v. Coast Valley Roofing, Inc.*,
    266 F.R.D. 482 (E.D. Cal. 2010) ....................................................... 5, 9, 12

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) ......................................................... passim

*Williams v. MGM-Pathe Commc'ns Co.*,
    129 F.3d 1026 (9th Cir. 1997) ................................................................ 11

*Wing v. Asarco Inc.*,
    114 F.3d 986 (9th Cir. 1997) .................................................................. 8

*Zakskorn v. American Honda Motor Co.*,
    2015 WL 3622990 (E.D. Cal. June 9, 2015) ............................................ 13, 14

**STATUTES**

15 U.S.C. § 2301 ................................................................................. 2

**RULES**

Fed. R. Civ. P. 23(h) .......................................................................... i, 4

**OTHER AUTHORITIES**

Alba Conte & Herbert B. Newberg, Newberg on Class Actions § 14:03 (3d ed. 1992) .................... 15

## MEMORANDUM OF POINTS AND AUTHORITIES

Plaintiff Yesenia Melgar ("Plaintiff"), through her Court-appointed counsel Bursor & Fisher, P.A. ("Class Counsel"), respectfully submits this memorandum of points and authorities in support of Plaintiff's Motion for Award of Attorneys' Fees, Costs and Expenses and Incentive Award.

## I.    INTRODUCTION

Plaintiff and Class Counsel have achieved an outstanding and largely unprecedented result in this case.  The $16 million settlement they have negotiated is one of the largest consumer class action settlements ever in a case filed in the Eastern District of California.  It will pay approximately $75-85 to more than 100,000 Zicam purchasers.  That result likely exceeds the recovery that most class members could have reasonably expected had Plaintiff prevailed at trial.  Not surprisingly, the response to the Settlement has been almost entirely positive.  Other than one serial objector[1], no class members have objected and only seven have opted out.  *See* Declaration of Tina Chiango ¶¶ 13-14.

Class Counsel now request that the Court approve an award of attorneys' fees in the amount of $5,333,333.33 or one-third (33.3%) of the Settlement Fund.  Calculating the fee award based on a percentage of the $16 million Settlement Fund is straightforward, fair and strongly supported by Ninth Circuit case law.  *See* Section IV(A) below.  Cross-checking this percentage fee against Class Counsel's lodestar validates the reasonableness of Class Counsel's fee request.  As of September 5, 2018, Class Counsel had worked 4512.2 hours on this case for a total lodestar fee, at current billing rates, of $2,131,037.50.  Declaration of L. Timothy Fisher (the "Fisher Decl.") ¶ 17; *see also id.*, Exh. B (Bursor & Fisher's detailed billing records for this case).  Class Counsel's blended hourly rate of $472.28 is well within the bounds of reasonable hourly rates in this district.  *Id.* ¶ 18; *see also* Section IV(B)(1) below (discussing hourly rates approved in other cases in this district).  A fee

---

[1] One objection has been filed by serial objector Patrick S. Sweeney.  Mr. Sweeney is a well-known gadfly who files "meritless objections" in courts across the country.  *See Chambers v. Whirlpool*, 214 F.Supp.3d 877, 890 n. 7 (C.D. Cal. 2016) (noting that Mr. Sweeney is "prolific in objecting to class action settlements" and "well-known for routinely filing meritless objections to class action settlements for the purpose of extracting a fee rather than to benefit the Class").  Plaintiff will fully respond to Mr. Sweeney's baseless objection in their response to objections due on October 17, 2018.

award of 33.3%, or $5,333,333.33, would represent a multiplier of 2.5 over the base lodestar fee (*see* Fisher Decl. ¶ 17), which is well within the accepted range of multipliers approved by courts in the Ninth Circuit.  *See* Section IV(B)(2) below (discussing the factors supporting the application of a multiplier to Class Counsel's lodestar).

Class Counsel also request reimbursement for $286,526.64 in out-of-pocket expenses.  *See* Fisher Decl. ¶¶ 21-22, Exh. C (an itemized listing of each out-of-pocket expense incurred by Bursor & Fisher in connection with this case).  These expenses were necessary to the prosecution of this case, were carefully and reasonably expended, and should be reimbursed.  *Id.* ¶ 21.

Finally, Plaintiff Melgar requests that the Court award her an incentive award in the amount of $10,000 to account for the significant time and effort she invested in this case on behalf of the Class over the last four years.

Class Counsel respectfully request that the Court grant this motion in full and award them $5,333,333.33 in attorneys' fees, $286,526.64 in expenses and an incentive award in the amount of $10,000 for Plaintiff Melgar.

## II.   BACKGROUND AND PROCEDURAL HISTORY

### A.   Litigation

This case was hotly litigated for more than four years and settled on the eve of trial after the Parties had completed their pre-trial filings.  The case commenced on January 21, 2014 when Plaintiff filed her complaint alleging that Defendants deceived consumers by falsely representing that certain Zicam products reduce the duration and severity of a cold.  Dkt. No. 1.  Plaintiff asserted claims under the Magnuson-Moss Act 15 U.S.C. § 2301, *et seq.*, Civil Code § 1750 *et seq.* (the Consumers Legal Remedies Act or "CLRA"), Business and Professions Code § 17200 *et seq.* (the Unfair Competition Law or "UCL"), Business and Professions Code § 17500 *et seq.* (the False Advertising Law or "FAL"), and for Breach of Express Warranty, Breach of Implied Warranty of Merchantability, and Breach of Implied Warranty of Fitness for a Particular Purpose.  *Id.*  Plaintiff filed her First Amended Complaint on February 21, 2014, asserting the same claims.  Dkt. No. 10. Defendants answered on March 18, 2014, denying liability.  Dkt. No. 11.

Class Counsel filed a motion to be appointed interim class counsel on August 14, 2014.  Dkt.

No. 18.  The Court granted that motion on October 29, 2014.  Dkt. No. 21.

On April 3, 2015, Plaintiff filed a motion for class certification seeking certification of two classes: (1) purchasers who bought RapidMelts Original, RapidMelts Ultra, Oral Mist, Ultra Crystals, Liqui-Lozenges, Lozenges Ultra, and Chewables after February 15, 2011 in California, Delaware, D.C., Kansas, Missouri, New Jersey, Ohio, Utah, Virginia and West Virginia; and (2) all members of the Class who purchased the Zicam Products in California.  Dkt. Nos. 24, 41. Defendants opposed Plaintiff's motion and submitted seven declarations in opposition.  Dkt. No. 30. On March 31, 2016, the Court granted Plaintiff's motion in full.  Dkt. No. 116.

On August 6, 2015, Defendants filed their Motion for Summary Judgment or in the Alternative Summary Adjudication.  Dkt. Nos. 69. Plaintiff opposed Defendants' motion.  Dkt. No. 99.  On March 31, 2016, the Court denied the motion in its entirety.  Dkt. No. 116.

On August 6, 2015, Defendants filed their Motion to Exclude Opinion Testimony of Designated Expert Noel R. Rose, M.D., Ph.D., and their Motion to Exclude Opinion Testimony of Designated Expert R. Barker Bausell Ph.D.  Dkt. Nos. 70, 71, 110, 111.  Plaintiff opposed Defendants' motions.  Dkt. No. 96.  On March 31, 2016, the Court also denied Defendants' motions to exclude in full.  Dkt. No. 116.

On December 11, 2017, the Parties filed their Joint Pretrial Conference Statement.  Dkt No. 152.  This was followed by the filing of Plaintiff's Trial Brief (Dkt. No. 154) and Motions in Limine (Dkt. No, 155) and Defendants' Trial Brief (Dkt. No. 158) and Motions in Limine (Dkt. No. 157) on December 18, 2017.  On January 11, 2018, the Parties filed oppositions to each other's Motions in Limine.  Dkts. No. 173 and 174.  On January 12, 2018, the Court vacated all pretrial dates and set a status conference regarding trial setting for March 7, 2019.  Dkt. No. 176.

**B.   Discovery**

Over the four years that this case was litigated, the Parties engaged in extensive fact and expert discovery.  Fisher Decl. ¶ 8.  They exchanged multiple rounds of written discovery requests and responses.  *Id.*  The Parties also took 20 fact and expert depositions all across the United States and Europe.  *Id.*  Defendants also produced, and Plaintiff reviewed, more than 140,000 pages of documents.  Both fact and expert discovery had closed at the time of settlement, and the Parties were

1  preparing for trial.

2       **C.    Settlement**

3       Over the course of the litigation, the Parties engaged in extensive settlement negotiations.

4  Fisher Decl. ¶ 9.  The Parties participated in four separate settlement meetings before reaching a

5  settlement.  *Id.*  On October 21, 2014, the Parties attended a settlement conference before Magistrate

6  Judge Kendall J. Newman.  Dkt. No. 20.  On December 16, 2015, the Parties attended a mediation

7  with Justice Fred K. Morrison (Ret.) at JAMS in Sacramento.  Fisher Decl. ¶ 9.  On May 17, 2017,

8  the Parties attended a mediation with the Honorable Frank Maas (Ret.) at JAMS in New York.  *Id.*

9  Finally, on February 15 and 16, 2018, the Parties attended a two-day mediation with renowned

10  mediator Kenneth Feinberg in New York.  *Id.*  At this final mediation, the Parties executed a Class

11  Action Settlement Term Sheet settling the claims for a common fund settlement of $16 million.  *Id.*

12  After two additional months of negotiations, the Parties executed a formal Stipulation of Settlement

13  on May 2, 2018, and Plaintiff filed her motion for preliminary approval of the settlement the

14  following day.  Dkt. No. 180.  The Court granted preliminary approval on June 5, 2018.  Dkt. No.

15  185.  The claims administrator RG/2 began disseminating notice on July 5, 2018.  Chiango Decl. ¶¶

16  7-12.  To date, only one class member (and a known serial objector) has objected and only seven

17  have opted out.  *Id.* ¶¶ 13-14.

18  **III.    CLASS COUNSEL ARE ENTITLED TO AN AWARD OF REASONABLE FEES**

19       Fed. R. Civ. P. 23(h) provides that a district court may "award reasonable attorneys' fees and

20  nontaxable costs that are authorized by law or by the parties' agreement."  The Stipulation of

21  Settlement requires Defendants to pay Class Counsel attorneys' fees awarded by the Court up to

22  "one-third of the total $16,000,000 value of the Settlement Fund."  Stipulation of Settlement at § 3.1.

23  As shown below, the Court should award Class Counsel one-third (33.3%) of the $16 million

24  Settlement Fund.

25  **IV.    CLASS COUNSEL'S REQUESTED ATTORNEYS' FEES AWARD IS FAIR AND
         REASONABLE**

26       Under Ninth Circuit standards, a district court may award attorneys' fees under either the

27  "percentage-of-the-benefit" method or the "lodestar" method where a common fund has been

28

---

created.  *Fischel v. Equitable Life Assur. Soc'y*, 307 F.3d 997, 1006 (9th Cir. 2002); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998).  Typically, courts in this district apply the "percentage-of-the-benefit" method in common fund cases.  *Van Lith v. iHeartMedia + Entertainment, Inc.*, 2017 WL 4340337, at *15 (E.D. Cal. Sept. 29, 2017).  Class Counsel's fee request is fair and reasonable under either of these methods.

### A.      The Court Should Apply the Percentage of the Benefit Method

#### 1.      All Relevant Factors Strongly Favor an Upward Departure from The Ninth Circuit's 25% Benchmark to 33.3%

Under the common fund doctrine, courts award attorneys' fees based on a percentage of the total settlement.  *See State of Florida v. Dunne*, 915 F.2d 542, 545 (9th Cir. 1990) ("When a case results in a common fund for the benefit of a plaintiff class, a court may exercise its equitable powers to award plaintiffs' attorneys' fees out of the fund."); *Staton v. Boeing Co.*, 327 F.3d 938, 972 (9th Cir. 2003) ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.").

In the Ninth Circuit, district courts considering an award of attorneys' fees in a common fund case like this one begin their analysis at the 25% benchmark.  *See Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *see also Schiller v. David's Bridal, Inc.*, 2012 WL 2117001, at *16 (E.D. Cal. 2012) ("The typical range of acceptable attorneys' fees under this [percentage-of-recovery] approach in the Ninth Circuit is 20 percent to 33 and 1/3 percent of the total settlement value.").  The 25% benchmark, however, is merely a starting point for the analysis, and a district court may adjust the fee award based on the circumstances in the record.  *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002) ("The 25% benchmark rate, although a starting point for analysis, may be inappropriate in some cases."); *see also Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272-73 (9th Cir. 1989) (explaining that the benchmark should be "adjusted upward or downward" based on the unique circumstances of the case).  However, the exact percentage varies depending on the facts of the case, and in "most common fund cases, the award exceeds that benchmark." *Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491 (E.D.

1  Cal. 2010) (quoting *Knight v. Red Door Salons, Inc.,* 2009 WL 248367, at *6 (N.D. Cal. Feb. 2,

2  2009)).

3       The Ninth Circuit has identified a number of factors that may be relevant in determining if a

4  fee award is reasonable: (1) the results achieved; (2) the risks of litigation; (3) the skill required and

5  the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and

6  (6) the awards made in similar cases. *Vizcaino*, 290 F.3d at 1048–50. Here, each of these factors

7  definitively points to a higher award in this case. An attorneys' fee award of 33.3% of the

8  Settlement Fund is reasonable because Class Counsel's outstanding work secured remarkable results

9  for the Settlement Class in the face of substantial risks to any recovery.

10            **a.    Class Counsel Achieved Extraordinary Results for the Class**

11       This $16 million settlement negotiated by Class Counsel is an exceptional, and largely

12  unprecedented, result in the Eastern District of California. Class Counsel believes that the $16

13  million settlement in this case may be the largest consumer class action settlement ever in a case

14  filed in the Eastern District of California. Fisher Decl. ¶ 31. Class Counsel have not found a larger

15  reported consumer class action settlement in this district. *Id.*

16       In addition, the settlement provides significant relief for individual class members. More

17  than 100,000 class members have submitted claims so far. Chiango Decl. ¶ 15. Plaintiff estimates

18  that each class member who submitted a claim will receive approximately $75-$85 on average

19  depending on the number of claims submitted prior to the October 3 deadline.[2] That is a tremendous

20  recovery for each individual class member because the manufacturer's suggested retail price of the

21  Zicam Products ranged from $6-$12 approximately. *See* Exh. A to Stipulation of Settlement (claim

22  form showing average manufacturer's suggested retail price during the class period as ranging from

23  $6.16 to $11.53). Thus, a class member recovering $75 is receiving the equivalent of a full refund

24  for more than six Zicam Products. Plaintiff sought to recover a full refund for the Zicam Products at

---

25  [2] This amount is calculated as follows: $16,000,000 - $5,333,333.33 (proposed attorneys' fee award)

26  - $897,220 (estimated notice and claims administration expenses) - $286,526.64 (Class Counsel's
costs and expenses) - $10,000 (Plaintiff Melgar's proposed incentive award) = $9,472,920.03. If the

27  total number of valid claims ultimately reaches 120,000, each class member would receive $78.94
on average ($9,472,920.03/120,000). For 110,000 claims, each class member would receive $86.12

28  on average ($9,472,920.03/110,000).

trial.  Instead, this same best-case scenario recovery was made available now, to all Settlement Class Members, without further delay or risk.  The incredible and unprecedented result achieved by Class Counsel strongly supports the fee request and an upward departure from the 25% benchmark.

    **b.**   **Plaintiff's Claims Carried Substantial Risk**

   This case presented tremendous risk at every step.  Class Counsel navigated an array of challenges from Defendants and their counsel that repeatedly imperiled Plaintiff's claims and created a significant risk that the Class and Class Counsel would recover nothing.  Over the last four years, Defendants filed a motion for summary judgment and three motions to exclude Plaintiff's experts.  *See* Dkt. Nos. 61, 69, 70, and 71.  Those motions posed tremendous risk for Plaintiff and Class Counsel.  Fisher Decl. ¶ 27.  Obviously, Defendants' motion for summary judgment placed the entire case in jeopardy.  *Id.*  Defendants' *Daubert* motions also posed a serious threat.  *Id.*  Even if Plaintiff and Class Counsel had defeated Defendants' summary judgment motion, they could have been left without their key expert witnesses if the Court had granted Defendants' *Daubert* motions.  *Id.*  Defendants also vigorously opposed Plaintiff's motion for class certification and supported their opposition with seven declarations including declarations from three expert witnesses.  *Id.*  If Plaintiff and Class Counsel had not "run the table" and prevailed on all of the significant motions, it is likely that there would have been no recovery for the Class.  *Id.*  This case also settled after the Parties had made all of their pre-trial filings and were preparing for trial.  *Id.*  Thus, Plaintiff and Class Counsel still faced the uncertainty of trial and any pre-trial rulings from the Court that might have crippled Plaintiff's case.  *Id.*

   The Court should also not ignore the fact that Defendants were represented by highly skilled and well-paid lawyers from the San Francisco and Los Angeles offices of Drinker, Biddle & Reath, LLP, and the Los Angeles and Chicago offices of Kirkland & Ellis LLP.  These lawyers vigorously represented their clients and continually challenged Plaintiff's claims.  At the time of settlement, Defendants had also assembled a trial team composed of top-flight lawyers from both firms who sought to obtain a defense verdict and deprive the Class of any recovery.  *See* Dkt. Nos. 162 and 163 (notice of appearance for Robyn Bladow from Kirkland & Ellis' office in Los Angeles and *pro hac vice* application of Leslie M. Smith from Kirkland & Ellis' office in Chicago).  "The quality of

1  opposing counsel is important in evaluating the quality of Class Counsel's work." *Barbosa v.*

2  *Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013); *see also Wing v. Asarco Inc.*,

3  114 F.3d 986, 989 (9th Cir. 1997) (affirming fee award and noting that the court's evaluation of class

4  counsel's work considered "the quality of opposition counsel and [defendant's] record of success in

5  this type of litigation"); *In re Equity Funding Corp. Sec. Litig.*, 438 F. Supp. 1303, 1337 (C.D. Cal.

6  1977) ("Moreover, plaintiffs' attorneys in this class action have been up against established and

7  skillful defense lawyers, and should be compensated accordingly.").

8        Defendants had also retained an esteemed cadre of expert witnesses from all over the world

9  to support their defense.  This impressive group of experts included Dr. Harri Hemila from the

10  University of Helsinki in Finland, Dr. Ronald Eccles from Cardiff University in Wales, Dr. Peter

11  Fisher from the Royal Hospital in London, Dr. Sabrina Sobel from Hofstra University in New York,

12  and Dr. David Stewart from Loyola Marymount University in Los Angeles.  Dkt. No. 36.  These

13  experts are well-qualified and highly skilled in their respective fields.  *Id.*  They posed a significant

14  risk to Plaintiff at trial because a jury may have chosen to believe their testimony over the testimony

15  of Plaintiff's experts.

16        Finally, even if Plaintiff and Class Counsel had been able to prevail at trial, they still faced

17  the daunting prospect of affirming any verdict on post-trial motions in this Court and later on appeal.

18  Fisher Decl. ¶ 27.  That process would have taken years and involved tremendous risk that a hard-

19  fought victory could be lost.  *Id.*  There can be no doubt that Class Counsel faced daunting risks in

20  this case that more than justify the fee award sought by Class Counsel

21            **c.    It Took Great Skill to Achieve the Exceptional Results Realized in**
             **This Case**

22

23        The prosecution of a complex, nationwide class action like this one "requires unique … skills

24  and abilities."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (citation

25  and quotation marks omitted).  This was not a garden-variety case where Class Counsel could simply

26  rely upon work from prior similar cases or just cut-and-paste from old briefs.  Fisher Decl. ¶ 28.

27  Instead, Class Counsel had to develop expertise related to several areas outside of the law that were

28  largely new to them.  *Id.*  In particular, this case required Class Counsel to review and understand

complex scientific studies and statistical analyses regarding Defendants' products and other zinc-based cold remedies. *Id.* Class Counsel also had to develop an understanding of epidemiology, the placebo effect and the care and treatment of the common cold. *Id.* This case also required a significant amount of skilled legal work, including: (1) extensive pre-litigation investigation into Defendants' products and their marketing to assist with the drafting of Plaintiff's thorough 43-page complaint; (2) serving multiple rounds of discovery requests on Defendants and seeking discovery from third parties; (3) reviewing more than 140,000 pages of documents produced by Defendants including complex scientific and statistical documents; (4) taking depositions of three of Defendants' experts, six fact witnesses including Defendants' CEO M'lou Walker and Senior Vice President for Research & Development Tim Clarot, and five purportedly "satisfied customer" witnesses procured by Defendants; (5) defending the depositions of Plaintiff Melgar and Plaintiff's four expert witnesses; (6) defeating Defendants' motion for summary judgment and motions to exclude Plaintiff's experts; (7) obtaining class certification; (8) participating in three mediations and a settlement conference; (9) preparing this case for trial and developing a comprehensive trial plan; and (10) negotiating this settlement and managing the dissemination of notice and the claims process. *Id.* The work performed by Class Counsel in this case represents the highest caliber of legal work and strongly supports their requested fee award. *Id.*

> ### d. Class Counsel Handled This Case on a Contingent Fee Basis and Bore the Financial Burden for More Than Four Years

Class Counsel prosecuted this case on a contingency basis for more than four years. That in itself presented considerable risk. *See Vasquez*, 266 F.R.D. at 492. Courts have long recognized that the attorneys' contingent risk is an important factor in determining the fee award and may justify awarding a premium over an attorneys' normal hourly rates. *See In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir.1994). The contingent nature of Class Counsel's fee recovery, coupled with the uncertainty that any recovery would be obtained, are significant. *Id.* at 1300. In *Wash. Pub. Power*, the Ninth Circuit recognized that:

> It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases ... [I]f this 'bonus' methodology did not exist, very few lawyers could take on the representation of a class client given the investment of

substantial time, effort, and money, especially in light of the risks of recovering nothing.

*Id.* at 1299-1300 (citations omitted) (internal quotations marks omitted); *see also McKeen-Chaplin v. Provident Savings Bank, FSB*, 2018 WL 3474472, at *2 (E.D. Cal. July 19, 2018) ("Counsel has not received payment for the vast majority of its time spent on this case over the last five and a half years, and took on significant financial risk by taking on this action on a contingency fee basis."); *Graham v. DaimlerChrysler Corp.,* 34 Cal.4th 553, 580 (2004) ("A contingent fee must be higher than a fee for the same legal services paid as they are performed.  The contingent fee compensates the lawyer not only for the legal services he renders but for the loan of those services.") (internal citations omitted); *In re Sumitomo Copper Litig.,* 74 F.Supp.2d 393, 396–98 (S.D.N.Y.1999) ("No one expects a lawyer whose compensation is contingent on the success of his services to charge, when successful, as little as he would charge a client who in advance of the litigation has agreed to pay for his services, regardless of success.  Nor, particularly in complicated cases producing large recoveries, is it just to make a fee dependent solely on the reasonable amount of time expended.").

Throughout this case, Class Counsel expended substantial time and money to prosecute a class action suit with no guarantee of compensation or reimbursement in the hope of prevailing against sophisticated Defendants represented by high-caliber attorneys from prominent national law firms.  *See* Fisher Decl. ¶ 27.  Class Counsel did not just invest more than 4,500 hours of their time in this case.  They also invested $286,526.64 of their own money to prosecute this action for four years.  If the case had been lost, Class Counsel would never have recouped that time and money.  *Id.* The Court should also note that Class Counsel had no co-counsel in this case, and instead bore all of the financial risk to prosecute this case.  That fact alone supports a finding that Class Counsel's requested fee is fair and reasonable.

### e.    Courts Routinely Award 33.3% in Similar Cases

The fifth factor district courts consider in justifying an upward adjustment to the 25% benchmark is market rates as reflected by awards in similar cases.  *Vizcaino*, 290 F.3d at 1049 ("Fourth, the court found the 28% rate to be at or below the market rate.").  Given the risk and complexity of litigating this case, no lawyer competent to litigate this action would agree to do so for

1  a 25% contingency fee.  *See* Fisher Decl. ¶ 29.  Indeed, given the need to advance expenses totaling

2  $286,526.64 out of pocket, and certainly much more if the case proceeded to trial, it would be

3  difficult to find any lawyer willing to take this case for such a modest fee.  *Id*.  Bursor & Fisher was

4  the only law firm in the United States willing to step forward and commit the resources to bring this

5  case.  *Id*.  And for cases where class members are plentiful and easily identified (*i.e.*, anyone in the

6  United States that purchased Zicam), it is not unusual for numerous firms to file copycat cases and

7  compete for appointment as lead class counsel.  *Id*.  But here, with essentially no barrier to entry, no

8  other law firm in the United States stepped forward.  *Id*.  The absence of any competition for

9  appointment to represent this Class was a function of the perceived difficulty of this case.  *Id*.  These

10  facts reflect that even the 33.3% contingent fee requested is probably below market rates for a case

11  of such complexity, difficulty and risk.  *Id*.

12          Under similar circumstances, the Ninth Circuit and numerous courts in this district have

13  approved a 33.3% fee.  *See In re Pac. Enterprises Sec. Litig.*, 47 F.3d 373, 378–79 (9th Cir. 1995)

14  (affirming attorneys' fee of 33.3% of the recovery); *Williams v. MGM-Pathe Commc'ns Co.*, 129

15  F.3d 1026, 1026 (9th Cir. 1997) (reversing order refusing to award 33.3% of total fund); *Morris v.*

16  *Lifescan, Inc.*, 54 F. App'x 663, 664 (9th Cir. 2003) (affirming fee award of 33.3% of the recovery);

17  *McKeen-Chaplin*, 2018 WL 3474472, at *2 ("The Court also approves Plaintiffs' Counsel's request

18  for attorney's fees in the amount of $591,666.67 or one-third of the total settlement amount.");

19  *Aguilar v. Wawona Frozen Foods*, 2017 WL 2214936, at *5 (E.D. Cal. May 19, 2017) (awarding

20  33.3% of a common fund settlement and holding that "[t]hese considerations support an above

21  benchmark attorney fee award in this case"); *Millan v. Cascade Water Services, Inc.*, 2016 WL

22  3077710, at *10-11 (E.D. Cal. May 31, 2016) (awarding 33.3% of the common fund because of the

23  "excellent results achieved, the favorable reaction of the class, [and] that class counsel litigated this

24  matter on contingency for near four years"); *Davis v. Brown Shoe Company, Inc.*, 2015 WL

25  6697929, at *8 (E.D. Cal. Nov. 3, 2015) ("Empirical studies show that, regardless whether the

26  percentage method or the lodestar method is used, fee awards in class actions average around one-

27  third of the recovery.") (citation omitted); *Barbosa*, 297 F.R.D. at 450 ("Although Class Counsel's

28  requested fees exceed the 25 percent benchmark under federal law, the Court finds sufficient reasons

---

1  to exceed that marker considering the risk of the litigation, the contingent nature of the work, the

2  favorable reaction of the class, and the fee awards in other wage-and-hour cases."); *Garcia v.*

3  *Gordon Trucking, Inc.*, 2012 WL 5364575, at \*7-\*10 (E.D. Cal. Oct. 31, 2012) (awarding 33.3% of

4  a common fund); *Vasquez*, 266 F.R.D. at 492 (citing to five recent class actions in this district where

5  courts approved attorney fee awards ranging from 30% to 33.3%); *Martin v. AmeriPride Servs., Inc.*,

6  2011 WL 2313604, at \*8 (S.D. Cal. June 9, 2011) (noting that "courts may award attorneys fees in

7  the 30%-40% range in … class actions that result in recovery of a common fun[d] under $10

8  million"); *Singer v. Becton Dickinson & Co.*, 2010 WL 2196104, at \*8 (S.D. Cal. June 1, 2010)

9  (approving attorney fee award of 33.3% of the common fund and holding that award was similar to

10 awards in three other cases where fees ranged from 33.3% to 40%).  The Court should grant Class

11 Counsel's request for 33.3% of the $16 million Settlement Fund.

12 **B.     Class Counsel's Attorneys' Fees Are Reasonable Under a Lodestar Cross-Check**

13 Courts in the Ninth Circuit often examine the lodestar calculation as a cross-check on the

14 percentage fee award to ensure that counsel will not receive a "windfall."  *Vizcaino*, 290 F.3d at

15 1050.  The cross-check analysis is a two-step process.  First, the lodestar is determined by

16 multiplying the number of hours reasonably expended by the reasonable rates requested by the

17 attorneys.[3]  *See Barbosa*, 297 F.R.D. at 451.  Second, the court cross-checks the proposed percentage

18 fee against the lodestar.  *Id.*  "Three figures are salient in a lodestar calculation: (1) counsel's

19 reasonable hours, (2) counsel's reasonable hourly rate and (3) a multiplier thought to compensate for

20 various factors (including unusual skill or experience of counsel, or the *ex ante* risk of nonrecovery

21 in the litigation)."  *Id.* (citing *In re HPL Techs., Inc. Sec. Litig.*, 366 F. Supp. 2d 912, 919 (N.D. Cal.

22 2005).  Here, the lodestar cross-check confirms the reasonableness of Class Counsel's requested fee.

23

24

---

25 [3] Where a court is calculating a fee award based solely on counsel's lodestar, the lodestar figure may

26 be adjusted upward or downward by use of a multiplier to account for factors including, but not limited to: (i) the quality of the representation; (ii) the benefit obtained for the class; (iii) the

27 complexity and novelty of the issues presented; and (iv) the risk of nonpayment.  *Hanlon*, 150 F.3d at 1029; *see also Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975) (identifying

28 twelve factors courts may consider in analyzing the reasonableness of an attorneys' fee request).

---

1.   **Class Counsel Spent a Reasonable Number of Hours on This Litigation at a Reasonable Hourly Rate**

Class Counsel worked very efficiently.  A single law firm, Bursor & Fisher, served as Class Counsel and handled all of the work in the case.  There was no duplication of effort as often occurs in multi-firm cases.  Class Counsel have submitted their detailed daily billing records showing what work was done and by whom as Exhibit B to Mr. Fisher's declaration.  Those records confirm Bursor & Fisher's efficient billing.  Bursor & Fisher strives to assign as much work as possible to junior lawyers who bill at lower hourly rates.  Fisher Decl. ¶ 18.  In this case, 70.8% of the hours (3194 hours) were billed by associates.  *Id.*  Bursor & Fisher partners billed only 23.6% of the hours (1065 hours), primarily on developing the litigation strategy, taking key depositions, editing briefs on dispositive motions, and negotiating the settlement.  *Id.*  This is highly efficient billing and strongly supports the reasonableness of the Class Counsel's fee request.

Likewise, the blended hourly rate for Bursor & Fisher's work of $472.28 is quite reasonable.  *See id.* ¶ 18.  And the hourly rates for each of the lawyers who staffed the case, which are set forth in the Fisher Declaration and exhibits thereto, are also reasonable and amply supported by the evidentiary material submitted with the Fisher Declaration.  *See id.* ¶¶ 15-19 and Exhs. B, D-M.  Rates are "reasonable where they [are] similar to those charged in the community and approved by other courts."  *Hartless v. Clorox Co.*, 273 F.R.D. 630, 644 (S.D. Cal. Jan. 20, 2011).  However, this is not an absolute rule because "[t]o insist on awarding significantly-lower hourly rates in the Eastern District than those in the other judicial districts in California would discourage attorneys from bringing meritorious lawsuits in this district."  *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 984 (E.D. Cal. 2012); *see also Zakskorn v. American Honda Motor Co.*, 2015 WL 3622990, at *14 (E.D. Cal. June 9, 2015) (same).  Defendants were represented by expensive lawyers from prominent law firms in San Francisco, Los Angeles and Chicago.  *See* Exhs. L-M to the Fisher Decl. (2016 Wall Street Journal article stating that "Kirkland & Ellis LLP's top hourly billing rate is now $1,445" and a 2018 New York Times article stating that Kirkland & Ellis lawyers "were charging as much as $1,745 an hour" in the Toys R Us bankruptcy case).  This case was litigated on the national and international stage.  For example, depositions took place in Arizona, Arkansas, California (Los

1   Angeles, San Francisco, and Palm Springs), Maryland, Minnesota, New York, Oregon, Cardiff

2   (Wales), and Helsinki (Finland).  The last two mediations were conducted in New York.  Only one

3   hearing, one unsuccessful mediation and one unsuccessful settlement conference took place in

4   Sacramento.

5   Regardless, courts within this district have repeatedly held rates commensurate with Class

6   Counsel's rates to be fair and reasonable.  *See Barbosa*, 297 F.R.D. at 452 (awarding between $280

7   and $560 per hour for attorneys with two to eight years of experience, and $720 per hour for attorney

8   with 21 years of experience); *Aguilar*, 2017 WL 2214936, at *6 ("This court has previously accepted

9   as reasonable for lodestar purposes hourly rates of between $370 and $495 for associates, and $545

10  and $695 for senior counsel and partners."); *Taylor v. FedEx Freight, Inc.*, 2016 WL 6038949, at *7

11  (E.D. Cal. Oct. 13, 2016) (finding class counsel rates of $525/hour for senior associates and

12  $700/hour for the senior partner in this district reasonable); *Miller v. CEVA Logistics USA, Inc.*,

13  2015 WL 4730176, at *9 (E.D. Cal. Aug. 10, 2015) (approving hourly rates of $525/hour for

14  associates and $700/hour for partners); *Lambert v. Buth-Na-Bodhaige, Inc.*, E.D. Cal. Case No. 2:14-

15  cv-00514-MCE-KJN (E.D. Cal. Nov. 20, 2015), Dkt. No. 34 (order from this Court approving a fee

16  award where plaintiffs' counsel's rates were $800/hour for partners and $450/hour for associates –

17  *see* Dkt. Nos. 30-1 and 30-2).

18  Indeed, courts within this district have previously found the rates of Class Counsel fair and

19  reasonable.  *See Zakskorn*, 2015 WL 3622990, at *13–15 (2015 order from Judge Mueller approving

20  a fee request where Bursor & Fisher submitted hourly rates of up to $850 per hour for partners and

21  $450 per hour for associates); *Dei Rossi v. Whirlpool*, 2:12-cv-00125-TLN-CKD, Dkts. No. 181-1

22  and 188 (2017 order from Judge Nunley approving fee request where Bursor & Fisher submitted

23  hourly rates of up to $875 per hour for partners and $450 per hour for associates).  In performing its

24  cross-check analysis, the Court should find Class Counsel's hours and rates reasonable.

25  **2.    All Relevant Factors Support Applying a Multiplier to Class Counsel's Lodestar**

26

27  The lodestar analysis is not limited to the initial mathematical calculation of Class Counsel's

28  base fee.  *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996).  Rather, Class

---

1   Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed

2   within the initial calculation of hours reasonably expended at a reasonable rate." *Hensley v.*

3   *Eckerhart*, 461 U.S. 424, 434 n. 9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364.  In

4   considering the reasonableness of attorneys' fees and any requested multiplier, the Ninth Circuit has

5   directed district courts to consider the time and labor required, the novelty and complexity of the

6   litigation, the skill and experience of counsel, the results obtained, and awards in similar cases.

7   *Fischel*, 307 F.3d at 1007, n. 7; *see also Kerr*, 526 F.2d at 70.  Class Counsel discussed most of these

8   factors above and all weigh heavily in favor of a multiplier and the requested fee award in this

9   action.  *See* Sections IV(A)(1)(a-3) above (discussing the factors justifying an upward adjustment

10  from the 25% benchmark).

11          A fee award of 33.3%, or $5,333,333.33, would represent a multiplier of 2.5 over the base

12  lodestar fee of $2,131,037.50.  *Id.* ¶ 17.  In a historical review of numerous class action settlements,

13  the Ninth Circuit found that lodestar multipliers normally range from 0.6 to 19.6, with most (83%)

14  falling between 1 and 4, and a bare majority (54%) between 1.5 and 3.  *See Vizcaino*, 290 F.3d at

15  1051 n. 6 (finding no abuse of discretion in awarding a multiplier of 3.65); *see also Steiner v. Am.*

16  *Broad. Co.,* 248 Fed. Appx. 780, 783 (9th Cir. 2007) (affirming award with multiplier of 6.85);

17  *Aguilar*, 2017 WL 2214936, at *6 (noting that "courts typically approve percentage awards based on

18  lodestar cross-checks of 1.9 to 5.1 or even higher"); Alba Conte & Herbert B. Newberg, *Newberg on*

19  *Class Actions* § 14:03 (3d ed. 1992) (recognizing that multipliers of 1 to 4 are frequently awarded).

20  Thus, even if the Court somehow finds the hours spent by Class Counsel or their hourly rates

21  excessive, the 33.3% fee award would be justified by a larger multiplier within the normal 1 to 4

22  range approved by the Ninth Circuit.  The Court should find that the lodestar cross-check strongly

23  supports the requested fee award.

24  **V.      CLASS COUNSEL'S EXPENSES ARE REASONABLE AND NECESSARILY**

25  **         INCURRED TO ACHIEVE THE BENEFIT OBTAINED ON BEHALF OF THE**
    **         CLASS**

26          To date, Class Counsel has incurred out-of-pocket costs and expenses in the amount of

27  $286,526.64 in prosecuting this litigation on behalf of the class.  Fisher Decl. ¶¶ 21-22.  The

28  expenses are itemized in Exhibit C to the Fisher Declaration submitted to the Court herewith.

The Ninth Circuit allows recovery of pre-settlement litigation costs in the context of a class action settlement. *See Staton v. Boeing Co.*, 327 F.3d 938, 974 (9th Cir. 2003). Class Counsel is entitled to reimbursement for standard out-of-pocket expenses that an attorney would ordinarily bill a fee-paying client. *See, e.g., Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994). The incurred expenses include expert fees ($84,742.30), class notice and litigation support services ($68,901.12), filing and court reporter fees ($48,007.48), mediation expenses ($46,938.30), travel costs ($31,394.48), and other related litigation costs and expenses. *See* Exh. C to the Fisher Decl. Each of these expenses was necessarily and reasonably incurred to bring this case to a successful conclusion, and they reflect market rates for the various categories of costs incurred. Fisher Decl. ¶ 21.

## VI.   THE REQUESTED INCENTIVE AWARD FOR PLAINTIFF MELGAR IS REASONABLE

In recognition of her efforts on behalf of the Class, and subject to the approval of the Court, Plaintiff Melgar seeks a $10,000 incentive award as appropriate compensation for her time and effort serving as the Class Representative in this litigation.

Service awards "are fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009). Such awards "are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958–59. Service awards are committed to the sound discretion of the trial court and should be awarded based upon the court's consideration of, *inter alia*, the amount of time and effort spent on the litigation, the duration of the litigation and the degree of personal gain obtained as a result of the litigation. *See Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995).

The requested amount of $10,000 for Plaintiff Melgar reflects her significant involvement and dedication to the case for more than four years. Ms. Melgar's involvement in this action was critical to the ultimate success of the case. Class Counsel consulted with Ms. Melgar throughout the investigation, filing, prosecution and settlement of this litigation. Fisher Decl. ¶ 36; Melgar Decl. ¶¶ 3-5. As such, Ms. Melgar was actively involved in the litigation and devoted substantial time and

1  effort to the case. *Id.* She consulted with Class Counsel frequently and reviewed a wide variety of

2  documents related to this case. *Id.* She was also deposed for nearly five hours on March 6, 2015

3  and was prepared to testify at trial. *Id.* Ms. Melgar was prepared to "go the distance" in this

4  litigation to continue to represent the Class and fight to obtain significant relief on their behalf.

5  Fisher Decl. ¶ 37; Melgar Decl. ¶ 3. Her actions and dedication played a significant role in this case

6  and helped achieve the exceptional settlement that will benefit more than 100,000 class members.

7  *Id.* Accordingly, a $10,000 incentive award for Ms. Melgar is fair and reasonable.[4]

8  **VII.    CONCLUSION**

9       After more than four years of litigation, Class Counsel were able to obtain an exceptional and

10  unprecedented settlement that provides significant relief to more than 100,000 class members. This

11  Settlement is the culmination of the determined and skilled work of Class Counsel. As a result,

12  Plaintiff and Class Counsel respectfully request that this Court award the following:

13       •    $5,333,333.33 in attorneys' fees;

14       •    $286,526.64 in costs and expenses; and

15       •    $10,000 as an incentive award to Plaintiff Melgar.

16       The requests are reasonable and appropriate in light of the tremendous results achieved in

17  this case.

18

19

20

21

---

22  [4] The payment of an incentive award to Plaintiff Melgar is appropriate and the amount of $10,000 is

23  undoubtedly reasonable when compared to other service awards. *See Turk v. Gale/Triangle, Inc.*, 2017 WL 4181088, at *5 (E.D. Cal. Sept. 21, 2017) (approving $10,000 incentive award to plaintiff

24  who "has been involved in every step of the litigation, has been cooperative and helpful in gathering facts"); *Garcia*, 2012 WL 5364575, at *11 (approving $15,000 incentive awards to four plaintiffs);

25  *Bond v. Ferguson Enterprises, Inc.*, 2011 WL 2648879, at *15 (E.D. Cal. June 30, 2011) (approving service awards of $11,250); *Van Vraken*, 901 F. Supp. at 299-300 (approving incentive award of

26  $50,000); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16–17 (N.D. Cal. Jan. 26, 2007), *aff'd*, 331 F. App'x 452 (9th Cir. 2009) (N.D. Cal. Jan. 26, 2007) (awarding $100,000 divided

27  among four plaintiffs); *Harris v. Vector Mktg. Corp.*, 2012 WL 381202, at *8 (N.D. Cal. Feb. 6,

28  2012) (awarding $12,500 service award); *Trujillo v. City of Ontario*, 2009 WL 2632723, at *5 (C.D. Cal. Aug. 24, 2009) (approving service awards of $30,000).

---

1   Dated:  September 19, 2018          **BURSOR & FISHER, P.A.**

2

3                                      By:  _/s/ L. Timothy Fisher_
                                            L. Timothy Fisher

4                                      Scott A. Bursor (State Bar No. 276006)
                                       L. Timothy Fisher (State Bar No. 191626)
5                                      Thomas A. Reyda (State Bar No. 312632)
                                       1990 North California Blvd., Suite 940
6                                      Walnut Creek, CA 94596
                                       Telephone: (925) 300-4455
7                                      Facsimile: (925) 407-2700
                                       E-Mail:  scott@bursor.com
8                                               ltfisher@bursor.com
                                                treyda@bursor.com
9
                                       *Class Counsel*
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

---